# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| THOMAS U. KENNEY, on Behalf of Himself and a Class of Persons Similarly Situated, | : : : : | |
| Plaintiff, | : | 1:09-cv-10750 (PBS) |
| v. | : : | |
| STATE STREET CORPORATION; NORTH AMERICA REGIONAL BENEFITS COMMITTEE OF STATE STREET CORPORATION; ALISON QUIRK; PAMELA GORMLEY; ROSS MCLELLAN; DAVID O'LEARY; SKIP CURTRELL; JAYNE DONAHUE; DAVID GUTSCHENRITTER; JAMES MALERBA; STATE STREET CORPORATION INVESTMENT COMMITTEE; and JOHN DOES 1-10 | : : : : : : : : : : : : | |
| Defendants. | : | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF SUBPOENAED DOCUMENTS

Plaintiff Thomas U. Kenney ("Plaintiff"), by his attorneys, submits this memorandum in support of his motion for an order requiring non-party Ernst & Young LLP ("Ernst & Young") to produce subpoenaed documents.

## I.   BACKGROUND

In this action, Plaintiff, a participant in the State Street Salary Savings Plan ("the Plan") who had a significant portion of his retirement savings invested in State Street's Employee Stock Ownership Plan ("ESOP"), has brought claims against State Street Corporation, the Benefits and Investment Committees of its Board of Directors, and the individual members thereof (collectively, "Defendants" or "State Street") for negligently misrepresenting and failing to disclose critical aspects of State Street's financial condition during a class period running from January 3, 2008, to January 20, 2009.  During that time, Defendants exposed the company to over $9 billion in potential losses through high-risk assets held in its investment portfolio and asset-backed commercial paper conduits, which led to a massive decline in State Street's stock value (for example a 60% one-day decline when significant acceleration of the unrealized losses was announced).  It is Plaintiff's contention that Defendants mismanaged Plan assets and breached their ERISA duties of prudence and loyalty by continuing to maintain Plan funds in State Street stock or continuing to permit Plan funds to be invested in State Street stock.  Additionally, Plaintiff contends that the individual defendants breached their duty of loyalty by failing to act solely in the Plan participants' interests and that State Street failed to appoint, monitor, and inform the committees and their members so as to ensure adequate management of the Plan.

Defendants moved to dismiss Plaintiff's claims, but on March 15, 2010, the Court denied Defendants' motion to dismiss with respect to Plaintiff's claim against Defendants for negligently misrepresenting the quality and riskiness of its conduits and investment portfolio assets in State

Street's October 15, 2008, Form 8-K and Press Release.  The remaining claims were dismissed without prejudice. *Kenney v. State Street Corp.*, 2010 U.S. Dist. LEXIS 24035 (D. Mass. March 15, 2010).

On April 15, 2010, Plaintiff served a subpoena on non-party Ernst & Young for the production of documents relevant and material to Plaintiff's claims, a copy of which is attached to Plaintiff's motion as Exhibit A.

This motion is made on the ground that Plaintiff served a subpoena upon Ernst & Young for production of the above mentioned documents, and Ernst & Young initially categorically refused to produce any of the documents requested by Plaintiff (a copy of Ernst & Young's written objections to the subpoena is attached as Exhibit B).  Ernst & Young also objected to production in a meeting and conference with Plaintiff's counsel by telephone on May 3, 2010.  On the telephone conference Ernst & Young took the position that: (1) it should not be required to produce documents because Plaintiff should await production from Defendants to see if Defendants provide the information that is needed; and (2) in any event, it was unlikely that it had any documents related to the creation of the October 15, 2008 press release.  Subsequent to the initial telephone call, Plaintiff's counsel attempted by e-mail communication to again seek the cooperation of Ernst & Young in producing subpoenaed documents.  That resulted only in Ernst & Young agreeing to produce documents directly related to the October 15, 2008 press release.  Eventually Ernst & Young agreed to also produce work-papers in connection with the 2007 year end audit of State Street.  Following an e-mail communication from Plaintiff as to why that proposal was inadequate, Ernst & Young instead proposed that it would produce (in addition to any documents related to the October 15, 2008 press release work papers related to the year end 2008 audit of State Street (but not for the 2007 year end audit).  Plaintiff believes that efforts to reach an agreement on production pursuant to subpoena have

been exhausted despite efforts in an ongoing dialogue.

Plaintiff understands that Ernst & Young intends to take its original position that it should not be required to produce any documents at this time without exhausting attempts to obtain the same information from State Street. Even if Ernst & Young takes the position that it should not be compelled to produce documents other than related to the October 15, 2008 press release, Plaintiff does not believe that is a satisfactory excuse for not producing (or even searching for) relevant documents because the scope of appropriate discovery should not be limited to Ernst & Young's role, if any, in the creation of the October 15, 2008 press release, but rather Ernst & Young's knowledge and input regarding the conduits, including, but not limited to, the unrealized losses, actual or potential consolidation of the conduits on State Street's financial statements, documents concerning the quality of the conduits, market and trend analyses, forecasts and the losses associated with the consolidation.

## II.   ARGUMENT

### A.   STANDARD

Federal district courts possess broad discretionary power to manage pretrial discovery in the cases before them. *Tyler v. Suffolk County*, 256 F.R.D. 34, 37 (D. Mass. 2009) (citing *Poulin v. Greer*, 18 F.3d 979, 986 (1st Cir. 1994)). Federal Rule of Civil Procedure 26(b)(1) permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense."

In the event the parties cannot informally resolve a discovery dispute, Rule 37 provides a vehicle for the aggrieved party to request an order compelling discovery. Under Fed. R. Civ. P. 37(a), "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Moreover, under Fed. R. Civ. P. 45 (c)(2)(B), if, as is the case here, an objection is made by a person commanded by a subpoena to produce documents, "[a]t any time, on

notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection." *See also In re Neurontin Mktg.*, 245 F.R.D. 55, 57 (D. Mass. 2007) (non-parties compelled to comply with subpoena). Despite good faith efforts, as set forth above, the Plaintiff and the subpoenaed non-party have been unable to resolve the discovery dispute.

## B.   PROBLEMS CREATED BY ERNST & YOUNG'S REFUSAL TO PRODUCE DOCUMENTS

The documents requested by Plaintiff are likely to contain relevant and material information in this action and their production is necessary for Plaintiff to prepare for trial. It is reasonable to believe that providing the documents requested will provide Plaintiff with material information as to State Street's financial condition and the actual and anticipated impact of the conduits on State Street's financial condition in October 2008. Even a production limiting the production of documents in Ernst & Young's files to those related to its role, if any, in creating the October 15, 2008 press release is unlikely to provide the necessary information because it assumes that Ernst & Young would have reviewed or generated all information in its custody reflecting on State Street's financial condition in October 15, 2008 when performing whatever activities it did, if any, in connection with that press release. It ignores the fact that the press release was issued in the fourth quarter of 2008 and that in early 2009 Ernst & Young audited State Street's financial statements for the entire year 2008 which included October 2008 at which time it likely reviewed in some fashion the conduits, the assets comprising the conduits, the unrealized losses with respect to the conduits and more. It ignores the likelihood that in performing a review on State Street's financial statements for the quarter ended September 30, 2008, it was performing some work related to the conduits.[1] It

---

[1] After all, it signed a review of State Street's quarterly financial statements on November 3, 2008, little more than two weeks after the October 15, 2008 press release, which was included in State Street's third quarter 2008 Form 10-Q,

ignores the fact that Judge Saris took note of the fact that the apparent turn around in State Street's fortunes between the positive press release of October 15, 2008 and the magnified unrealized losses announced in January, 2009 suggested that the October 15, 2008 press release was misleading, making it necessary to understand exactly what was occurring during that period that might support or refute that the decline in fortunes could not have happened overnight.

Plaintiff also believes that it would be important to learn of facts through Ernst & Young's documents, if any, regarding the actual consolidation of the conduits in May 2009 which resulted in State Street reporting a loss for the second quarter of 2009 of over $7.00 per share after reporting quarter after quarter of significant profits.

According to State Street's SEC Form 10-Ks for the fiscal years ended December 31, 2007 and 2008, Ernst & Young LLP "audited and reported on the consolidated financial statements contained in [ ] [State Street's] Form 10-K." According to State Street's SEC Form 10-Qs for the quarterly periods in 2008 and 2009, Ernst & Young LLP provided a review on State Street's quarterly financial statements. As such, it is reasonable to assume that Ernst & Young had to be aware of the conduits and the accounting treatment of the conduits, had information about their risk and had input into the issue of whether it was necessary to consolidate them into State Street's financial statements. It is also likely that Ernst & Young would have performed tests and analyses on the risks associated with the conduits, the results of which could shed light on whether or not the optimistic statements contained in the October 15, 2008 press release were materially true and correct. The fact that the relevant period contained in the subpoena begins several months before the October 15, 2008 press release and continues for several months thereafter is appropriate to assess trends and put the information available in October 2008 in context. Moreover, it is reasonable to believe that Ernst & Young's actual input and knowledge may not have occurred exactly in October

2008 but may have occurred before or after.  Because the conduits were actually consolidated on

State Street's financial statements in May 2009, four months after the announcement of the

significant increase in unrealized losses, it is reasonable to believe that work performed around that

time would have looked back at information becoming available for a period of months before,

certainly during the October 2008 to January 2009 time frame. [2]

As such, Ernst & Young has not provided a sufficient basis to avoid producing the

subpoenaed documents

**III.**   **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court to compel non-party

Ernst & Young to produce to Plaintiff the documents subpoenaed on April 15, 2010.

Dated:  May 25, 2010

Respectfully Submitted:

**TODD & WELD LLP**
Kevin T. Peters (BBO #550522)
28 State Street
Boston, MA 02109
Telephone: (617) 720-2626
Facsimile:  (617) 227-5777

---

[2] Plaintiff also believes it would be appropriate to compel Ernst & Young to produce documents from the period including and following its audit of State Street's financial statements for the year ended December 31, 2007 which was conducted in early 2008 at which time Ernst & Young would likely have participated in assessing the conduits.  Production of such earlier material would help put the material from the October 2008 time period in context.

**STULL, STULL & BRODY**
By:/s/ Mark Levine
Edwin J. Mills
Mark Levine
James Henry Glavin IV
Michael J. Klein
6 East 45th Street
New York, NY 10017
Telephone: (212) 687-7230
Facsimile:  (212) 490-2022

**MAJOR KHAN, LLC**
1120 Avenue of the Americas
Suite 4100
New York, NY 10036
Tel: (646) 546-5664
Fax: (646) 546-5755

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I, Mark Levine, hereby certify that a copy of the foregoing document, filed through the

EDF system on May 25, 2010, was sent electronically on that date to the registered participants

as identified in the Notice of Electronic Filing

A copy of the foregoing was also served on the following counsel for non-party Ernst &

Young by overnight delivery.

      Thomas J. Dougherty, Esq.
      Kara E. Fay, Esq.
      Skadden Arps, Slate, Meagher
          & Flom LLP
      One Beacon Street
      Boston, MA 02108

      Steven Weiser, Esq.
      Associate General Counsel
      Ernst & Young LLP
      5 Times Square
      New York, NY 10036

Dated May 25, 2010

                    /s/ Mark Levine_____

8