# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| THOMAS U. KENNEY, on Behalf of Himself and a Class of Persons Similarly Situated, | : : : : | |
| Plaintiff, | : : | 1:09-cv-10750 (PBS)(JGD) |
| v. | : : | |
| STATE STREET CORPORATION; NORTH AMERICA REGIONAL BENEFITS COMMITTEE OF STATE STREET CORPORATION; ALISON QUIRK; PAMELA GORMLEY; ROSS MCLELLAN; DAVID O'LEARY; SKIP CURTRELL; JAYNE DONAHUE; DAVID GUTSCHENRITTER; JAMES MALERBA; STATE STREET CORPORATION INVESTMENT COMMITTEE; and JOHN DOES 1-10 | : : : : : : : : : : : | |
| Defendants. | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO COMPEL DEFENDANTS TO PRODUCE DOCUMENTS RESPONSIVE TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS WITH <u>RESPECT TO THE APPROPRIATE RELEVANT TIME PERIOD</u>**

Plaintiff Thomas U. Kenney ("Plaintiff"), by his attorneys, submits this memorandum of law in support of his motion for an order requiring Defendants to produce certain documents pursuant to Plaintiff's First Request for Production of Documents to All Defendants ("Plaintiffs' Document Request").

## I.  BACKGROUND

In this action, Plaintiff, a participant in the State Street Salary Savings Plan ("the Plan") who had a significant portion of his retirement savings invested in State Street's Employee Stock Ownership Plan ("ESOP"), has brought claims against State Street Corporation, the Benefits and Investment Committees of its Board of Directors, and the individual members thereof (collectively, "Defendants" or "State Street") for negligently misrepresenting and failing to disclose critical aspects of State Street's financial condition during a class period running from January 3, 2008, to January 20, 2009.  During that time, Defendants exposed the company to over $9 billion in potential losses through high-risk assets held in its investment portfolio and asset-backed commercial paper conduits, which led to a massive decline in State Street's stock value (for example a 60% one-day decline when significant acceleration of the unrealized losses was announced).  It is Plaintiff's contention that Defendants mismanaged Plan assets and breached their ERISA duties of prudence and loyalty by continuing to maintain Plan funds in State Street stock or continuing to permit Plan funds to be invested in State Street stock. Additionally, Plaintiff contends that the individual defendants breached their duty of loyalty by failing to act solely in the Plan participants' interests and that State Street failed to appoint, monitor, and inform the committees and their members so as to ensure adequate management of the Plan.

Defendants moved to dismiss Plaintiff's claims, but the Court, in its  March 15, 2010

Memorandum and Order (Docket No. 56), denied Defendants' motion to dismiss with respect to Plaintiff's claim regarding a statement about the quality State Street's conduits portfolio assets in its October 15, 2008, Form 8-K and Press Release. The remaining claims were dismissed without prejudice.

On March 18, 2010, Plaintiff served Plaintiff's Documents Request upon Defendants. A copy of Plaintiffs' Document Request is attached as Exhibit A to the accompanying Declaration of Mark Levine In Support of Plaintiff's Motion to Compel Defendants to Produce Documents Responsive to Plaintiff's First Request for Production of Documents With Respect to the Appropriate Relevant Time Period ("Levine Declaration"). On April 21, 2010, Defendants served their responses and objections to Plaintiffs' Document Request. A copy of Defendants' Response to Plaintiffs' First Request for Production of Documents is attached as Exhibit B to the Levine Declaration.

As set forth in the accompanying Motion to Compel, the parties engaged in an in-person "meet and confer" with Defendants' counsel on April 26, 2010 to discuss Defendants' objections. Defendants were objecting to several categories of requests for various reasons including the ruling of the Court on Defendants' Motion to Dismiss and the resulting current modification of the scope of the case. The parties recognized that such requests would be subject to further discussion. Areas such as treatment of electronic discovery are presently the subject of ongoing discussion between the parties who are working to develop mutually acceptable protocols. Many of the areas that are the subject of objections by Defendants may become mooted after the Plaintiff moves to amend his complaint if the Court grants that motion.

The parties, however, agree that despite good faith discussion, they are at an impasse regarding Defendants' objections to the Relevant Time Period covered by Plaintiff's document

request. Plaintiff is seeking documents generated or involving the time period from January 1, 2008 through May 22, 2009, yet Defendants are only willing to produce documents generated or relating to the time period from October 1, 2008 through January 20, 2009.[1] As such, this motion is made on the ground that the Defendants have refused to produce documents generated in or referring to the entire time period that is relevant to the claim in this action, even to the extent that the Court's ruling may have, at least at the present time, narrowed the claim.

## II. ARGUMENT

### A. STANDARD

Federal district courts possess broad discretionary power to manage pretrial discovery in the cases before them. *Tyler v. Suffolk County*, 256 F.R.D. 34, 37 (D. Mass. 2009) (citing *Poulin v. Greer*, 18 F.3d 979, 986 (1st Cir. 1994)). Federal Rule of Civil Procedure 26(b)(1) permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense."

In the event the parties cannot informally resolve a discovery dispute, Rule 37 provides a vehicle for the aggrieved party to request an order compelling discovery. Under Fed. R. Civ. P. 37(a), "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Despite good faith efforts, as set forth above, the Plaintiff and Defendants have been unable to resolve the discovery dispute.[2]

---

1 On April 9, 2010, by letter to Defendants' counsel, Plaintiff modified the end date of the "Relevant Time Period" set forth in Plaintiff's Document Request from March 30, 2009 to December 31, 2009. A copy of that letter is attached as Exhibit C to the Levine Declaration. Plaintiff is willing to end the Relevant Time Period for purposes of this motion at May 22, 2009 when State Street issued a Form 8-K announcing the sale of common stock which brought in about $2.23 billion into State Street's coffers.

2. Because discussions are ongoing, this motion to compel is limited to the issue of determining what the Relevant Time Period should be for the documents that Defendants are required to produce. Should the parties not be able to resolve issues with respect to the rest of Plaintiff's Document Request, Plaintiff reserves the right to move to further compel.

3

**B.   DEFENDANTS SHOULD BE COMPELLED TO PROVIDE DOCUMENTS REFERENCING OR GENERATED FROM JANUARY 1, 2008 THROUGH MAY 22, 2009**

While Plaintiffs are seeking documents generated or involving the time period from January 1, 2008 through May 22, 2009, Defendants, as per their objections, are only willing to produce documents generated or relating to the time period from October 1, 2008 through January 20, 2009.[3] Plaintiff believes that Defendants' view of the Relevant Time Period falls well short of what is appropriate under the circumstances. The starting point for consideration of the Relevant Time Period is, at the very least, the portion of the Amended Complaint that was sustained by the Court. Although Defendants will probably take the position that the Court sustained one statement from October 15, 2008 and thus documents generated around a narrow time frame are appropriate, careful consideration of the Court's opinion and the relevant facts of this case suggest that a broader application of the Relevant Time Period would be more appropriate.

In its opinion dated March 15, 2010, the Court, in sustaining the claim based on Defendants' October 15, 2008 press release, stated:

> Here, however, the sanguine statement that the asset quality "remained high" turned out to be misleading. Within months, in the fourth quarter of 2008, the net unrealized losses of the investment portfolio and conduits increased from an aggregate of $5.4 billion to an eye-popping $9.1 billion! State Street's overnight holdings of the conduits' commercial paper peaked at $8.9 billion in that quarter. This information prompted a massive decline in State Street's stock in January 2009 and criticism from an experienced banking analyst that State Street had not been more

---

[3]. Although it appeared that Defendants were willing to broaden the period slightly at one point, that offer did not nearly cover the time period required, and in any respect, it is not clear if that offer is still on the table.

4

       forthcoming.

March 15, 2010 Opinion at p. 25.

    Of particular importance, to the Relevant Time Period, are the following phrases from the Court's opinion: "remained high," and "[w]ithin months." *Id*. Whether or not the asset quality of the conduits "<u>remained high</u>" as of October 15, 2008 is a relative consideration that must take into account the asset quality before October 15, 2008. A comparison to the months leading up to that October 15, 2008 statement is therefore not only relevant but, by it terms, is probably necessary. Hence, production of documents concerning the asset quality of the conduits in the nine months leading up to the October 15, 2008 press release is reasonably calculated to lead to the discovery of admissible evidence and, thus, Defendants should produce those documents.

    Similarly, the Court found it significant that, "<u>within months</u>" of the October 15, 2008 press release, the net unrealized losses of the investment portfolio and conduits increased from an aggregate of $5.4 billion to an "eye-popping" $9.1 billion. (March 15, 2010 Opinion at p. 25). Hence, Plaintiff's request for documents concerning the quality of the conduits in the months following the October 15, 2008 press release is reasonably calculated to lead to the discovery of admissible evidence.

    In selecting the appropriate end date, it is logical to end the period no earlier than May, 2009 because that is the time when the massive unrealized losses announced in January, 2009 (and some additional unrealized losses) were brought onto State Street's financial statements and actual losses were recognized to such an extent that State Street, which had previously been reporting quarter after quarter of significant positive earnings, reported a loss of about $7.10 per share. A copy of the May 18, 2009 Form 8-K regarding the consolidation of the conduits is attached to the Levine Declaration as Exhibit E, and State Street's July 21, 2009 press release

5

disclosing that loss is attached as Exhibit F.

Furthermore, when State Street consolidated its conduits in May 2009, State Street's Tangible Common Equity ratio ("TCE ratio") was reported by Janney Montgomery Scott to have fallen dangerously low to about 2.2% after consolidation. A ratio of about 3.0 is the minimum ratio considered acceptable for banks by U.S. regulators. Soon after falling to 2.2%, State Street announced a $2.23 billion common stock offering which increased the TCE ratio to 3.3%, just barely more than the minimum acceptable standard (A copy of the May 22, 2009 Form 8-K in which State Street announced its common stock offering is attached to the Levine Declaration as Exhibit D). The timing of State Street's common stock offering indicates that the offering is related to the conduit losses and State Street may have done the offering in order to drive up its TCE ratio which had been battered by the conduits. Hence, a Relevant Time Period ending on May 22, 2009 is reasonably calculated to lead to the discovery of admissible evidence.

In additional to plain language of Federal Rule of Civil Procedure 26(b)(1), which permits discovery into "any non-privileged matter that is relevant to any party's claim or defense," the First Circuit maintains that "[t]he scope of discovery is broad, and 'to be discoverable, information need only appear to be "reasonably calculated to lead to the discovery of admissible evidence."'" *Remexcel Managerial Consultants, Inc. v. Arlequin*, 583 F.3d 45, 52 (1st Cir. 2009) (citing *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 716 n.5 (1st Cir. 1998) (quoting Fed. R. Civ. P. 26(b)(1)). Defendants' objection to producing documents generated or relating to the time period beyond October 1, 2008 through January 20, 2009 simply does not comport with Federal Rule of Civil Procedure 26(b)(1) nor the First Circuit precedent applying that Rule.

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court to compel Defendants to produce to Plaintiff relevant documents generated or involving the time period from January 1, 2008 through May 22, 2009.

Dated: June 18, 2010

Respectfully Submitted:

**TODD & WELD LLP**
Kevin T. Peters (BBO #550522)
28 State Street
Boston, MA 02109
Telephone: (617) 720-2626
Facsimile: (617) 227-5777

**STULL, STULL & BRODY**

By: /s/ Mark Levine
Edwin J. Mills
Mark Levine
James Henry Glavin IV
Michael J. Klein
6 East 45th Street
New York, NY 10017
Telephone: (212) 687-7230
Facsimile: (212) 490-2022

**MAJOR KHAN, LLC**
1120 Avenue of the Americas
Suite 4100
New York, NY 10036
Tel: (646) 546-5664
Fax: (646) 546-5755

*Counsel for Plaintiff*

CERTIFICATE OF SERVICE

I, Mark Levine, hereby certify that a copy of the foregoing document, filed through the ECF system on June 18, 2010, was sent electronically on that date to the registered participants as identified in the Notice of Electronic Filing

Dated June 18, 2010

/s/ Mark Levine_____