**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| THOMAS U. KENNEY, on Behalf of Himself and a Class of Persons Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> STATE STREET CORPORATION; NORTH AMERICA REGIONAL BENEFITS COMMITTEE OF STATE STREET CORPORATION; ALISON QUIRK; PAMELA GORMLEY; ROSS MCLELLAN; DAVID O'LEARY; SKIP CURTRELL; JAYNE DONAHUE; DAVID GUTSCHENRITTER; JAMES MALERBA; STATE STREET CORPORATION INVESTMENT COMMITTEE; and JOHN DOES 1-10 <br><br> Defendants. | 1:09-cv-10750(PRS)(JGD) <br><br> **Leave to File Granted on June 23, 2010** |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF SUBPOENAED DOCUMENTS**

Plaintiff submits this reply memorandum in further support of his motion to compel non-party Ernst & Young LLP ("E&Y") to produce documents pursuant to subpoena.

**I. PRELIMINARY STATEMENT**

In its opposition papers, although attempting to minimize its role, E&Y concedes it was "involv[ed] with both the [State Street] conduits and the [State Street] October 15, 2008 press release." Non-Party Ernst &Young LLP's Opposition to Plaintiff's Motion to Compel Production of Subpoenaed Documents (Docket Entry 70) (the "E&Y Response") at 3 (emphasis added). As both the conduits and the October 15, 2008 press release are central to the present claim that the Court sustained in Plaintiff's action, E&Y's documents regarding such fall under Federal Rule of Civil

Procedure 26(b) (1), which permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense" and it should be compelled to produce the subpoenaed documents.

## II. RELEVANT FACTS

E&Y states that it engaged in telephone and email discussions with Plaintiff's counsel. It did as this process was instituted by Plaintiff's counsel. While Plaintiff has no reason to believe that E&Y was not acting in good faith during that process, (E&Y Response at 2), E&Y has submitted no facts suggesting that the good faith was not mutual. In fact, while E&Y tries to emphasize that the subpoena contained "twenty broad categories of documents" over a "more than two and a half year period", the discussion of the scope of the subpoena was much more focused and E&Y would have learned through the process that Plaintiff was willing to accept a handful of items over less than a one and a half year period and in this response is willing to cut that down further.

On the other hand, in its response, E&Y also discussed a May 11, 2010 email from Plaintiff's counsel but did not give a full enough description of the email resulting in a possible impression that Plaintiff's focus was narrower than it actually was. (*See* May 11, 2010 email exchange attached as Exhibit A to the accompanying Delcaration of Mark Levine in Support of Plaintiff's Motion to Compel Ernst & Young LLP to Produce Subpoenaed Documents). E&Y refers only to a reference in the May 11, 2010 email of the Court's statement (in its opinion deciding the motion to dismiss, Docket Entry 56, 3/15/10) focusing on the statement by State Street in its October 15, 2008 press release that the assets (the conduits) were "high quality."[1] E&Y then quoted part of the May 11,

---

[1] Although the May 11, 2010 email to E&Y's counsel used the term "high quality" in regard to the assets, the Court, in its opinion on the motion to dismiss (Docket Entry 56) actually used broader terminology based on the relevant press release that the "asset quality 'remained high'" implying that not only was the quality of the assets high in an absolute sense but that it was also high compared to what it had been at an earlier period. That alone would justify production of documents for a time period starting at some point earlier than October 15, 2008, the date of the press release, or September 30, 2010, the date as of which the press released spoke. Thus, clearly there would be

2

2010 email as stating that Plaintiff took the position that he was entitled to "documents that would reflect on asset quality generated from October 2008 until the announcement of the significant increase in unrealized losses in January 2009." E&Y Response at 3.  While E&Y correctly quoted from the email, by not discussing certain other parts of the email, it attempts to give the impression that it had offered the documents complying with Plaintiff's request.  But the email also referenced the fact that the conduits were consolidated on State Street's financial statements in May 2009 and that Plaintiff, in the May 11, 2010 email, sought production of documents related explicitly to that consolidation which is really the end point of a series of events that had begun prior to January 2009 as the unrealized losses began to mount.  E&Y never offered to produce any of these documents.

E&Y also ignores that the May 11, 2010 email also addressed documents relating to any work performed by E&Y in connection with its Third Quarter review of State Street's financial statements (for the quarter ended September 30, 2008, the date of which the October 15, 2008 press release speaks).  E&Y never offered to produce these documents even conditionally.

Similarly, E&Y ignores that the May 11, 2010 email also specifically requested the production of documents that were not generated in connection with a technical review but which addressed asset quality or the accounting for the off-balance sheet assets (i.e. conduits). Communications between an auditor and its client on accounting issues are not necessarily addressed only at the time of or in connection with an audit or review.

---

relevance to documents addressing the asset quality at an earlier time period.

3

### III. ERNST & YOUNG SHOULD BE COMPELLED TO
### PRODUCE THE SUBPOENAED DOCUMENTS

#### A. Whether or Not E&Y Audited the Financial Statements of the Conduits Is Irrelevant to the Appropriate Scope of Production of Documents Pursuant to the Subpoena

E&Y implies that it is an important fact cutting against production of documents that it did not audit the conduits or the October 15, 2008 press release. E&Y response at 3. First, it would perhaps be a novel engagement for a Big Four auditor to be hired to audit a press release. Plaintiff did not know whether or not E&Y had done any work related to the October 15, 2008 press release, and it would not have been surprising either way. And if E&Y did perform work on the press release it would not have been surprising to find out that it just read a draft and possibly provided some comments which may or may not have been substantive and may or may not have addressed anything having to do with the quality of the conduit assets. If that what this subpoena was principally about, it would have hardly been worth the effort to serve it. The meaningful documents clearly would be expected to have been the documents generated by E&Y in connection with audits, reviews and in general consultations with State Street about the conduits, their losses, accounting treatment, potential consolidation <u>and</u> consolidation which all relate to the underlying asset quality.

Second, E&Y makes the statement that it did not audit the conduits. E&Y Response at 3. E&Y states, similarly to what its counsel stated in an email during discussion about the scope of the subpoena that, "Plaintiff's counsel apparently was not aware, when subpoenaing E&Y, that the off-balance sheet conduits were audited by another accounting firm, not E&Y." E&Y Response at 3. The implied suggestion is that Plainitff's counsel obviously did not know that it was subpoenaing the wrong party -- as if it were the subpoena of the conduits' auditor, not State Street's auditor that

would have relevant information.[2] E&Y was served with a subpoena with full knowledge by Plaintiff's counsel that it was State Street's auditor because it is as State Street's auditor (not the conduit's auditor) that it would have knowledge of issues related to the asset quality of the conduits (and related issues). E&Y's patronizing suggestion that Plaintiff's counsel must have been under a misunderstanding because it did not audit the conduits is plainly insulting.[3]

      **B.    Ernst & Young Should Be Compelled to Produce Work Papers Relating to the October 2008 Press Release and the 2008 Year-End-Audit**

In its response, E&Y states that it "agreed to produce: (a) any E&Y work papers relating to the October 2008 press release, and (b) any E&Y work papers analyzing conduits in connection with the year-end 2008 audit." E&Y Response at 4.[4] Plaintiff agrees that E&Y should produce those documents as they are unquestionably relevant to Plaintiff's claim. Hence, there appears to be no dispute amongst Plaintiff and E&Y here. However, as set forth below, E&Y's offer, now

---

[2] For an all too obvious reason, E&Y states that, "plaintiff has not sought the only theoretically relevant third party discovery - -from the conduit's auditor." Perhaps there is some relevance in subpoenaing these entities, most of which are located in Australia, making it a nightmare to serve subpoenas. The most important thing about E&Y's comments here is this is just another attempt to throw the Court off the scent of the fox, so to speak, E&Y, which is the obvious source of relevant information.

[3]    It is similarly insulting to suggest, as E&Y states, that it had "limited involvement with the conduits", which is another side of the same tactic as used by E&Y in suggesting that the audit of the conduits are the real source of relevant information. It would truly be shocking if in fact State Street, which had billions and billions of dollars at risk with respect to the conduits, did not have E&Y in the loop all the way on such issues as the asset quality of the conduits, whether it was appropriate to keep the assets off of the financial statements and a host of other related issues.

[4]    Plaintiff was surprised to read that E&Y stated that it had "agreed" to produce those documents. In a series of emails between counsel for Plaintiff and counsel for E&Y, in response to an e-mail from Plaintiff's counsel demanding that E&Y produce additional documents counsel for E&Y would not agree to produce those additional documents which Plaintiff believed were necessary and represented that if Plaintiff moved to compel production E&Y was withdrawing its offer to produce those documents. Thus, Plaintiff understands E & Y's position at this time to be that it will produce no documents.

withdrawn, does not adequately respond to Plaintiff's request even as modified during discussions.

### C.     **E&Y Should Be Compelled to Produce Other Highly Relevant Documents**

E&Y should produce <u>all documents related to Plaintiff's claim</u>, not just documents in connection with the October 2008 press release and 2008 year-end audit.  There is no reason why E&Y should be allowed to withhold from Plaintiff and the Court its other relevant documents such as those related to its Third-Quarter 2008 Review of State Street's financial statements, the documents surrounding the consolidation of the conduits onto State Street's financial statements (or consideration of consolidation occurring at any time in 2008) and any documents representing any consultation, even if not in the context of a review, audit or the May, 2009 consolidation, in which the issue of the conduits was involved.[5]  Such documents fall squarely within Federal Rule of Civil Procedure 26(b) (1).

### D.     **Ernst & Young Should Be Compelled to Produce Documents in Connection with the Third Quarter 2008 Review**

E&Y issued a Review report on State Street's financial statements for the quarter ended September 30, 2008.  The Review opinion was signed by E&Y on November 3, 2008.  Thus, the date of the actionable document, October 15, 2008 fell in the middle of the period between the end date of the third quarter and the date on which E&Y presumably completed its Review. It is reasonable to assume that E&Y was involved in the actual review of State Street's third quarter financial statements during the time frame September 30, 2008 and November 3, 2008.  Thus, at the time of the October 15, 2008 announcement, E&Y was clearly reviewing State Street's financial

---

[5] Although Plaintiff believes that they are relevant, Plaintiff is willing to defer, for purposes of this motion, documents related to the 2007 year end audit, first quarter 2008 review and second quarter 2010 review reserving the right to revisit this issue if and when the Court grants Plaintiff's anticipated motion requesting permission to file a Second Amended Complaint which would reallege a prudence claim which would include the year end of 2007 and at least the entire year of 2008 and would allege other misrepresentations during 2008.

statements and was likely performing some kind of work with respect to the conduits. The October 15, 2008 press release, which is an actionable document, as determined by the Court, was the press release in which State Street announced its earnings for the third quarter ended September 30, 2008. Thus, although the press release is dated October 15, 2008, it is looking back on the entire period from July 1, 2008 through an end date of September 30, 2008, the date to which the E&Y's Third Quarter Review speaks. Thus, working on the third quarter review, it is very likely that E&Y generated work papers or other documents concerning the conduits during that time frame that would not appear in a file designated to any work on the October 15, 2008 press release. There may have been contemporaneous interviews with members of management regarding the conduits and those interviews may be reflected in documents contained in the third quarter review file. Moreover, in its opinion, the Court refers to certain disclosures that defendants made which they have asserted negate any inference that any statements they made were false or misleading or omitted any material information. In its opinion, the Court referred to these as "lengthy turgid disclosures in the SEC filings, [that did not] clearly explain the risks posed by 'first loss' notes, 'monoline insurance', the 'financial models' or the 'off balance sheet' assets." (Docket Entry 56, March 15, 2010 Opinion at 25). Some of these terms appear in the Third Quarter 2008 Form 10-Q containing the financial statements that E&Y reviewed. It is reasonable to believe that there may be work papers commenting on at least some of these terms.

     E.    **Ernst & Young Should Be Compelled to Produce Documents Concerning the Consolidation of the Conduits**

In May 2009, State Street announced that with respect to the conduits for which it announced massive unrealized losses in January 2009, it was going to consolidate the conduits which would result in a massive loss to State Street for the quarter ended June 30, 2009. Clearly this was a very significant event for State Street and was the next significant step which to a large extent was an

extension of the unrealized losses announced in January, 2009. For some reason unknown to Plaintiff, State Street did not consolidate the conduits in its year end 2008 financial statements and delayed it until the second quarter of 2009. There clearly would have been a significant analysis conducted at State Street and it is reasonable to believe that E&Y either assisted in that analysis and created related documentation or that E&Y conducted its own independent analysis, or perhaps even provided the impetus for State Street to consolidate. Because this consolidation is just another chapter of the same book that also reported the massive January 2009 unrealized losses, the relevant documents should be produced so that Plaintiff can truly understand the whole story behind the events related to the conduits.

### F.  Ernst & Young Should Be Compelled to Produce Other Documents Related to Conduits

It is reasonable to believe that in addition to more formal work performed by E&Y in terms of a formal review and audit and in connection with the consolidation of the conduits in May 2009, E&Y may have been consulted on a more *ad hac* basis concerning the conduits during the relevant time period. There is no logical reason to exclude any such document(s) from production.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court to compel non-party E &Y to produce to Plaintiff the documents subpoenaed on April 15, 2010 as modified in accordance with this memorandum. The Court should not direct Plaintiff or his counsel to pay any of E & Y's attorneys fees on this motion.

Dated:  June 25, 2010

    Respectfully Submitted:

**TODD & WELD**
Kevin T. Peters
28 State Street
Boston, MA 02109
Telephone: (617) 720-2626
Facsimile:  (617) 227-5777

**STULL, STULL & BRODY**

By:/s/ Mark Levine
Edwin J. Mills
Mark Levine
James Henry Glavin IV
Michael J. Klein
6 East 45th Street
New York, NY 10017
Telephone: (212) 687-7230
Facsimile:  (212) 490-2022

**MAJOR KHAN, LLC**
1120 Avenue of the Americas
Suite 4100
New York, NY 10036
Tel: (646) 546-5664
Fax: (646) 546-5755

*Counsel for Plaintiff*

CERTIFICATE OF SERVICE

I, Mark Levine, hereby certify that a copy of the foregoing document, filed through the ECF system on June 25, 2010, was sent electronically on that date to the registered participants as identified in the Notice of Electronic Filing.

A copy of the foregoing document was also served on the following counsel for non-party Ernst & Young LLP by First Class Mail:

Steven Weiser, Esq.
Associate General Counsel
Ernst & Young LLP
5 Times Square
New York, NY 10036

Dated: June 25, 2010

                                                /s/Mark Levine
                                                Mark Levine