```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

|                                              |                   |
|----------------------------------------------|-------------------|
| THOMAS U. KENNEY, on Behalf of Himself and a Class of Persons Similarly Situated, |                   |
| Plaintiff,                                   |                   |
| v.                                           | 1:09-CV-10750-PBS |
| STATE STREET CORPORATION; NORTH AMERICA REGIONAL BENEFITS COMMITTEE OF STATE STREET CORPORATION; ALISON QUIRK; PAMELA GORMLEY; ROSS MCLELLAN; DAVID O'LEARY; SKIP CURTRELL; JANYNE DONAHUE; DAVID GUTSCHENRITTER; JAMES MALERBA STATE STREET CORPORATION INVESTMENT COMMITTEE; and JOHN DOES 1-10, |                   |
| Defendants.                                  |                   |

## **MEMORANDUM AND ORDER**

December 9, 2010

Saris, U.S.D.J.

### I. INTRODUCTION

In its March 15, 2010 Memorandum and Order, Kenney v. State Street Corp., 694 F.Supp.2d 67 (D. Mass. 2010)("March 15, 2010 Order"), this Court dismissed all of plaintiff's claims except for a claim of negligent misrepresentation arising from an October 15, 2008, Form 8-K and Press Release by State Street. In his deposition, plaintiff Kenney revealed that he had never read

the Form 8-K containing the alleged misrepresentation.  Now State Street has moved for summary judgment on the remaining claim.  Defendant's Motion for Summary Judgment is **ALLOWED** [Docket No. 78].

## II. BACKGROUND

Plaintiff Thomas U. Kenney ("Kenney"), a former State Street employee, brought this action for breach of fiduciary duty under Sections 502(a)(2) and 502(a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461, on behalf of himself and a class of similarly situated participants in the State Street Salary Savings Plan ("the Plan") who chose to invest their retirement savings in State Street's Employee Stock Ownership Plan ("ESOP"), a "defined contribution" or "individual account" plan within the meaning of ERISA § 3(34).

Kenney alleged that losses to his retirement account were caused by State Street's breach of fiduciary duties relating to its management of the Plan.  Among other things, plaintiff claimed that State Street imprudently invested Plan funds in State Street Stock and made negligent misrepresentations that concealed the risks posed by the various financial instruments held by the Plan.

This Court dismissed all of the plaintiff's claims except for one, which arose from an October 15, 2008, Form 8-K and Press Release. March 15, 2010 Order at 79.  The Press Release stated

the following:

> Due to the unprecedented market illiquidity in the third quarter, the unrealized after-tax mark-to-market losses at quarter end on State Street's investment portfolio have increased to $3.3 billion and in the asset-backed commercial paper conduits to $2.1 billion. However, as we have said in the past, the asset quality of both our investment portfolio and the conduit program remains high.

Id. at 78 (citations omitted). The Court found the assertion that the "asset quality of both our investment portfolio and the conduit program remain[ed] high" to be misleading. Id. Despite this assurance, "[w]ithin months, in the fourth quarter of 2008, the net unrealized losses of the investment portfolio and conduits increased from an aggregate $5.4 billion to an eye-popping $9.1 billion!" Id. Thus, the Court held: "[W]ith all inferences drawn in plaintiff's favor, he has stated a claim that State Street negligently misrepresented the quality and riskiness of its conduits and investment portfolio assets in the October 15 statement." Id.

On April 26, 2010, defendant State Street deposed the plaintiff. (Perla Aff. at 2.) At the deposition counsel asked Kenney: "Did you read that 8-K?" referring to the October 15, 2008 Press Release and 8-K. The plaintiff responded: "Absolutely not."[1] Following this disclosure, the defendant moved for

---

[1] This exchange was not included in the excerpted pages of the deposition provided to the Court. However, the plaintiff does not dispute that it is a direct and accurate quote from Mr. Kenney's deposition. (Pl.'s Resp. to Def.'s SOF at 3.)

summary judgment on the remaining claim, arguing that the plaintiff's failure to read the document at issue means that he cannot prove he relied on the statement, and, thus, his negligent misrepresentation claim centering on this communication fails as a matter of law.

### III. STANDARD

Summary judgment is appropriate when "the pleadings, depositions, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant . . . would permit a rational fact finder to resolve the issue in favor of either party."  Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (internal citations omitted).  A material fact is one that has the "potential to affect the outcome of the suit under the applicable law."  Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (internal citations and quotation omitted).  In order to defeat the entry of summary judgment, the nonmoving party must submit "sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial."  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (internal citations and

quotations omitted). In evaluating motions for summary judgment, however, the Court will not consider "conclusory allegations, improbable inferences, and unsupported speculation." Galloza v. Foy, 389 F.3d 26, 28 (1st Cir. 2004) (internal citation omitted).

## IV. DISCUSSION

Although plaintiff did not read the October 15, 2008 statement, he argues that the Court should not allow summary judgment because he does not need to prove individualized reliance to establish his claims on behalf of himself, the Class and the Plan.

In order to establish that State Street breached its fiduciary duties under ERISA by negligently misrepresenting information about the plan, the plaintiff must prove "significant or reasonable reliance" on these misrepresentations. See Mauser v. Raytheon Co. Pension Plan for Salaried Employees, 239 F.3d 51, 54-56 (1st Cir. 2001) (in an action alleging inadequate disclosures in the summary plan, agreeing that plaintiff "could not demonstrate the requisite level of reliance when he did not read the Plan Summary"); Merck & Co., Inc. Sec., Derivative & "ERISA" Lit., MDL No. 1658 (SRC), 05-1115 (SRC), 05-2369 (SRC), 2009 WL 331426, at * 6 (D.N.J. Feb. 10, 2009)("[A]ll evidence supports requiring individual detrimental reliance to be proven for misrepresentation claims under § 502(a)(2)."); In Re Computer Sciences Corp. Erisa Litigation, 635 F.Supp.2d 1129, 1132 (C.D.

Cal. 2009); <u>Davis v. First Union Corp. Long Term Disability Plan</u>, 213 F.Supp.2d 29, 35 (D. Mass. 2002). Due to the Plaintiff's recent admission that he did not even read the October 15, 2008 communication, his negligent misrepresentation claims derived from this communication fail as a matter of law.

Although the plaintiff claims to be seeking "plan-wide" relief, he must prove that he individually relied on State Street's misrepresentations. The plan at issue in this litigation is a "defined contribution plan." "[A] 'defined contribution plan' . . . promises the participant the value of an individual account at retirement, which is largely a function of the amounts contributed to that account and the investment performance of those contributions. A 'defined benefit plan,' generally promises the participant a fixed level of retirement income." <u>LaRue v. DeWolff, Boberg & Assoc.'s, Inc.</u>, 552 U.S. 248, 250 n.1 (2008); <u>see</u> <u>id.</u> at 255 (pointing out that "[d]efined contribution plans dominate[]the retirement plan scene today."). The Supreme Court has held that claims brought by defined benefit plan participants for breaches of fiduciary duties must be brought on behalf of the "entire plan," for generally, any individual defined benefit plan participant will receive the same benefit even if the plan itself has been partially depleted by fiduciary misconduct. <u>See</u> <u>Larue</u>, 552 U.S. at 254-55 (citing <u>Massachusetts Mutual Life Ins. Co. v. Russell</u>, 473 U.S. 134, 136-37, 141 (1985)). Defined contribution plan participants, on the other

6

hand, experience a more individual harm, and in LaRue the Supreme Court held that § 502(a)(2) allows defined contribution plan beneficiaries to "recover[] for fiduciary breaches that impair the value of plan assets in a[n] . . . individual account." Id.[2] Thus, even if a defined contribution plan participant casts his suit against a plan fiduciary as a claim on behalf of the entire plan, it is primarily concerned with individual injury. As this court has held, "One defined contribution plan participant has no pecuniary interest in the accounts of another" and, thus, must allege individual injury in order to have standing to sue under ERISA. See Bendaoud v. Hodgson, 578 F.Supp.2d 257, 266 (D. Mass. 2008)(Gertner, J.)(holding that if "a defined contribution plan participant sues for breach of fiduciary duty, his financial recovery must be entirely and only, to his own accounts.") Without showing that he individually relied on the misrepresentations, the plaintiff here, who is a defined

---

[2] The fact that the Plaintiff also seeks equitable relief under §502(a)(3) does not change the analysis. Prior to LaRue, in Varity, the Supreme Court held that individual plan participants can bring suits on their own behalf under § 502(a)(3). See Varity Corp. v. Howe, 516 U.S. at 515. Presumably, then, it would be even harder for participants in defined contribution plans to describe their § 502(a)(3) claims as claims on behalf of the entire plan in order to avoid having to prove individual reliance. See Merck, 2009 WL 331426 at *6 (citing Third Circuit precedent in holding that "[i]t is clear that claims for a b[r]each of fiduciary duty by misrepresentation under § 502(a)(3) require proof of detrimental reliance," and then reasoning from LaRue that the same rule should apply in §502(a)(2) claims brought by defined contribution plan participants).

contribution plan participant, cannot prove a breach of fiduciary duty even though he casts this claim as one made on behalf of the entire plan.

The plaintiff also finds no refuge in the fact that he brings his claim as a class action. Named plaintiffs in a class action must be able to make out an individual claim. See Lewis v. Casey, 518 U.S. 343, 357 (1996)("[N]amed plaintiffs who represent a class must allege and show that they personally have been injured. . . ." (internal quotation marks omitted)). Here, even if the plaintiff could show that some members of the class did, in fact, rely on the misrepresentation, the claim fails because there is no genuine issue of material fact about whether he relied on it. In fact, individual issues of reliance often present a bar to class certification. See, e.g., In re PolyMedica Corp. Sec. Litig., 432 F.3d 1, 6-7 (1st Cir. 2005); Merck, 2009 WL 331426, at *5.

Plaintiff also attempts to circumvent the requirement to prove detrimental reliance by recasting his claim as one for nondisclosure. In Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 153-54 (1972), a securities case brought against the United States under Rule 10b-5, the Supreme Court held that "[in cases] involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to discovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them

8

important in the making of this decision." Id.  More recently, the Supreme Court expounded further on this rule and held that "if there is an omission of a material fact by one with a duty to disclose, the investor to whom the duty was owed need not provide specific proof of reliance." Stoneridge Investment Partners, LLC, v. Scientific-Atlanta, Inc., 552 U.S. 148, 158 (describing the Affiliated Ute presumption as a "rebuttable presumption of reliance"); cf. Basic Inc. v. Levinson, 485 U.S. 224, 248 (1988) (describing how a presumption of reliance based on a "fraud-on-the-market" theory in securities law is rebutted by "any showing that severs the link between the alleged misrepresentation and. . .the price received (or paid) by the plaintiff. . . ."). It is unclear whether this holding extends to the ERISA context, compare In re Tyco Int'l, Lt., No. MD-02-1335, 2006 WL 2349338, at *8 (Aug. 15, 2006, D.N.H.)("[T]he logic of Affiliated Ute lends itself equally well to a claim like plaintiffs' misrepresentation count because it would be 'practically impossible' for plaintiffs to prove that they relied on information that was never provided to them."), with Merck, 2009 WL 331426, at *5 ("In the absence of controlling authority, this Court is not persuaded that principles of securities law apply in ERISA cases"), but even if it did, it would provide no support for the plaintiff in regard to the only claim remaining after this Court's March 15, 2010 Order.  The claim arising from the October 15, 2008 communication is concerned primarily with an

affirmative misrepresentation on which the plaintiff must prove he relied.

Moreover, the fact that the plaintiff did not read the October 15, 2008 communication rebuts the presumption of reliance regarding State Street's nondisclosures by suggesting that he would not have read this information if it had been disclosed.

## V.    CONCLUSION

State Street's Motion for Summary Judgment [Docket No. 78] is allowed with regard to the negligent misrepresentation claim arising from State Street's October 15, 2008 press release and 8-K.

/s/PATTI B. SARIS
PATTI B. SARIS
United States District Judge