# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| THOMAS U. KENNEY, *on Behalf of Himself and a Class of Persons Similarly Situated*, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Civ. Action No. 1:09-cv-10750-DJC |
| v. | ) ) | |
| STATE STREET CORPORATION, et al. | ) ) | |
| Defendants. | ) ) | |

_____)

## DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO AMEND AND ALTERNATIVE MOTION FOR CERTIFICATION OF AN IMMEDIATE APPEAL

Jeffrey B. Rudman (BBO No. 433380)
William H. Paine (BBO No. 550506)
John J. Butts (BBO No. 643201)
Timothy Perla (BBO No. 660447)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000
(617) 526-5000 (facsimile)

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND .........................................................................................................................3

    A.    State Street's ESOP and Its Record Financial Results.............................................3

    B.    The Conduits ........................................................................................................4

ARGUMENT ..............................................................................................................................7

I.      PLAINTIFF'S FIRST CLAIM FAILS TO STATE A PLAUSIBLE ENTITLEMENT
      TO RELIEF.........................................................................................................................7

    A.    The Second Amended Complaint, Like Its Predecessor, Fails Plausibly To
          Plead That the ESOP Was an Imprudent Investment. ............................................7

          1.    Plan Structure...............................................................................................8

          2.    Disclosure to Plan Participants ...................................................................9

          3.    Stock Price ...................................................................................................9

          4.    The Nature and Extent of the Challenges Facing the Company...............10

    B.    The Presumption of Prudence Defeats Plaintiff's Claim.....................................12

          1.    Employer Stock Held in an ESOP Is Presumed To Be Prudent. ..............13

          2.    Plaintiff Cannot Overcome the Presumption of Prudence Because
              State Street Was (and Remains) a Strong, Viable Company....................17

II.    In the Alternative, the Court Should Certify This Case for Immediate Appeal ...............18

CONCLUSION..........................................................................................................................20

# TABLE OF AUTHORITIES

Federal Cases

*Brown v. Medtronic, Inc.*,
   628 F.3d 451, 460 (8th Cir. 2010) ........................................................ 15

*Bunch v. W.R. Grace & Co.*,
   555 F.3d 1, 10 (1st Cir. 2009)..................................................... 14, 15, 17

*Carr v. Int'l Game Tech.*,
   --- F. Supp. 2d ----, 2011 WL 923944, at *10 (D. Nev. Mar. 16, 2011)................................ 16

*Crocker v. KV Pharmaceutical Co.*,
   --- F. Supp. 2d ----,  2010 WL 1257671, at *19 (E.D. Mo. Mar. 24, 2010) ........................... 16

*Dahl v. Bain Capital Partners, LLC*,
   597 F. Supp. 2d 211, 213 (D. Mass. 2009) ................................................ 16

*Dudenhoeffer v. Fifth Third Bancorp*,
   757 F. Supp. 2d 753, 2010 WL 4970767, at *5 (S.D. Ohio Nov. 24, 2010) ........................... 16

*Edgar v. Avaya, Inc.*,
   503 F.3d 340, 347–48 (3d Cir. 2007)................................................. 15, 18

*Fisher v. JP Morgan Chase & Co.*,
   703 F. Supp. 2d 374, 383 (S.D.N.Y. 2010)................................................ 16

*Fulmer v. Klein*,
   2011 WL 1108661, at *5 (N.D. Tex. Mar. 16, 2011) ........................................ 16

*Gearren v. McGraw-Hill Cos.*,
   690 F. Supp. 2d 254, 270 (S.D.N.Y. 2010)................................................ 15, 16

*Griffin v. Flagstar Bancorp, Inc.*,
   2011 WL 1261196, at *12 (E.D. Mich. Mar. 31, 2011) ....................................... 16

*Halaris v. Viacom, Inc.*,
   2008 WL 3855044, at *2 (N.D. Tex. Aug. 19, 2008)........................................ 16

*In re Am. Express Co. ERISA Litig.*,
   --- F. Supp. 2d ----, 2010 WL 4371434, at *10 n.2 (S.D.N.Y. Nov. 2, 2010) ........................ 16

*In re Avon Prods., Inc. Sec. Litig.*,
   2009 WL 848083, at *10–11 (S.D.N.Y. Mar. 3, 2009) ....................................... 16

*In re Bank of Am. Corp. Sec. Litig.*,
   2010 WL 3448197, at *20–21 (S.D.N.Y.  Aug. 27, 2010)..................................... 18

*In re Bausch & Lomb Inc. ERISA Litig.*,
 2008 WL 5234281, at *6 (W.D.N.Y. Dec. 12, 2008)........................................................ 14, 16

*In re Bear Stearns Cos.*,
 --- F. Supp. 2d ----, 2011 WL 223540, at *133 (S.D.N.Y. Jan. 19, 2011)................................ 16

*In re Citigroup ERISA Litig.*,
 No. 07 -9790, 2009 WL 2762708, at *16 (S.D.N.Y. Aug. 31, 2009)................................. 15, 16

*In re Constellation Energy Group, Inc.*,
 738 F. Supp. 2d 602, 612 (D. Md. 2010) ................................................................................ 10

*In re Dell, Inc. ERISA Litig.*,
 563 F. Supp. 2d 681, 694 (W.D. Tex. 2008)........................................................................ 14, 16

*In re Ford Motor Co. ERISA Litig.*,
 590 F. Supp. 2d 883, 893 n. 1 (E.D. Mich. 2008)..................................................................... 16

*In re Harley-Davidson, Inc., Sec. Litig.*,
 660 F. Supp. 2d 953, 965 n. 5 (E.D. Wis. 2009)...................................................................... 16

*In re Huntington Bancshares Inc. ERISA Litig.*,
 620 F. Supp. 2d 842, 851-53 (S.D. Ohio 2009) ................................................................... 8, 10

*In re Lehman Bros. Sec. & ERISA Litig.*,
 683 F. Supp. 2d 294, 302–03 (S.D.N.Y. 2010).......................................................................... 16

*In re McKesson HBOC, Inc. ERISA Litig.*,
 391 F. Supp.2d 812, 830-33 (N.D. Cal. 2005)........................................................................... 18

*In re RadioShack Corp. ERISA Litig.*,
 547 F. Supp. 2d 606, 614 (N.D. Tex. 2008) ............................................................................. 16

*In re SLM Corp. ERISA Litig.*,
 2010 WL 3910566, at *7 (S.D.N.Y. Sept. 24, 2010)................................................................ 16

*In re UBS AG ERISA Litig.*,
 2011 WL 1344734, at *6 (S.D.N.Y. Mar. 24, 2011) ................................................................ 16

*Johnson v. Radian Group, Inc.*,
 2009 WL 2137241, at *17 (E.D. Pa. July 16, 2009).................................................................. 16

*Johnson v. Radian Group, Inc.*,
 2010 WL 2136562, at *10–11 (E.D. Pa. May 26, 2010) ........................................................... 18

*Jones v. MEMC Elec. Material, Inc.*,
 2010 WL 4065202, at *2 (E.D. Mo. Oct. 18, 2010) .................................................................. 16

*Kirschbaum v. Reliant Energy, Inc.*,
 526 F.3d 243, 256 (5th Cir. 2008) ................................................................ 15, 16

*Klinghoffer v. S.N.C. Achille Lauro*,
 921 F.2d 21, 25 (2d Cir. 1990) ................................................................................. 19

*Kuper v. Iovenko*,
 66 F.3d 1447, 1459 (6th Cir. 1995) ......................................................... 15, 18

*LaLonde v. Textron, Inc.*,
 369 F.3d 1, 6 (1st Cir. 2004) ................................................................................. 14

*Lawson v. FMR LLC*,
 724 F. Supp. 2d 167, 169 (D. Mass. 2010) ............................................... 19, 20

*Martin v. Feilen*,
 965 F.2d 660, 665 (8th Cir. 1992) .................................................................... 13

*Moench v. Robertson*,
 62 F.3d 553, 568 (3d Cir. 1995) ...................................................... 13, 14, 17

*Morrison v. MoneyGram Int'l, Inc.*,
 607 F. Supp. 2d 1033, 1051 (D. Minn. 2009) ............................................ 16

*Muniz v. Winn*,
 462 F. Supp. 2d 175, 185 (D. Mass. 2006),
 *rev'd on other grounds by* 517 F.3d 29 (1st Cir. 2008) ............................ 20

*Nelson v. Ipalco Enters., Inc.*,
 480 F. Supp. 2d 1061, 1064 (S.D. Ind. 2007) ............................................. 18

*Pedraza v. Coca-Cola Co.*,
 456 F. Supp. 2d 1262, 1276 (N.D. Ga. 2006) ............................................. 16

*Philip Morris Inc. v. Harshbarger*,
 957 F. Supp. 327, 330 (D. Mass.), *aff'd by* 122 F.3d 58 (1st Cir. 1997) ............. 19, 20

*Pugh v. Tribune Co.*,
 521 F.3d 686, 700 (7th Cir. 2008) .............................................. 12, 15, 18

*Quan v. Computer Scis. Corp.*,
 623 F.3d 870, 882 (9th Cir. 2010) ............................................ 14, 15, 17

*Smith v. Delta Air Lines, Inc.*,
 422 F. Supp. 2d 1310, 1314 (N.D. Ga. 2006) ............................................. 18

*Summers v. State Street Bank & Trust Co.*,
 453 F.3d 404, 410 (7th Cir. 2006) ................................................................... 13

*Wright v. Medtronic, Inc.*,
    2011 WL 31501, at *3 (D. Minn. Jan. 5, 2011) ........................................................................ 16

*Wright v. Oregon Metallurgical Corp.*,
    360 F.3d 1090, 1098–99 (9th Cir. 2004) ............................................................................... 18

*Yates v. Dilday*,
    2011 WL 797366, at *2 (S.D. Ill. Feb. 28, 2011) .................................................................... 8

<u>Federal Statutes</u>

28 U.S.C. § 1292(b) ................................................................................................................. 1, 18

Pub. L. No. 94-455, 90 Stat. 1590 (1976) ................................................................................. 13

<u>Federal Rules</u>

Fed. R. Civ. P. 72(b)(2) ................................................................................................................ 1

Defendants respectfully submit, pursuant to Fed. R. Civ. P. 72(b)(2), their objections to Chief Magistrate Judge Dein's Report and Recommendation on Plaintiff's Motion For Leave to Amend ("R&R").  Defendants endorse the majority of Judge Dein's R&R and object only to her recommendation that the Court allow Plaintiff to assert his First Claim, which alleges that State Street's Employee Stock Ownership Plan ("ESOP") was an imprudent investment.  Defendants also, in the alternative, seek leave under 28 U.S.C. § 1292(b) to file an immediate appeal on the narrow legal question of whether a well recognized and dispositive presumption of prudence applies to Plaintiff's claim.

## PRELIMINARY STATEMENT

In this putative class action, Plaintiff, a former State Street employee, opportunistically seizes upon a temporary drop in the price of State Street common stock to claim that the fiduciaries of the State Street Salary Savings Program ("the Plan") violated their duties under ERISA.  Purporting to sue on behalf of all Plan participants who allocated funds to State Street's ESOP, Plaintiff now seeks to revive claims that Judge Saris dismissed long ago, including the First Claim of his proposed Second Amended Complaint (the "Complaint") that Defendants violated their duty of prudent plan management by allowing participants to contribute additional funds to the ESOP, an investment option he claims in hindsight was imprudent because of the risks posed to State Street by its asset-backed commercial paper conduit program.  Plaintiff also asserts other claims in the Complaint, including claims that Defendants violated a fiduciary duty of diversification by not forcing participants to sell their pre-class period ESOP investments and that Defendants violated a duty of disclosure by failing to adequately disclose the company's conduit-related risks.

Judge Dein recommended that the Court reject all of Plaintiff's claims because they fail to state a plausible claim for relief, with the lone exception of Plaintiff's First Claim.  Although

she repeatedly expressed skepticism about that claim based on State Street's extensive conduit disclosures, the Company's record financial results and the comparatively strong performance of State Street's stock during the global recession, Judge Dein recommended that Plaintiff be allowed to take discovery on that claim.  Defendants respectfully submit that this recommendation is mistaken.

First, Judge Dein's recommendation departs from Judge Saris's earlier decision dismissing Plaintiff's prudence claim because it failed to state a plausible entitlement to relief as required under *Twombly*.  Plaintiff's amended prudence claim is no more plausible than the first. Indeed, the facts properly before the Court establish that State Street enjoyed *record* financial results during the putative class period, including net income in 2008 of more than $1.8 *billion*, and the company's stock performed consistently with the S&P 500 and better than the S&P Financial Index.  Moreover, State Street made detailed disclosures about its business, including the conduits, that, consistent with the Plan's design, empowered participants to make their own investment decisions based on their own financial goals, risk tolerance, and retirement horizon. Plaintiff's claim that Defendants should have paternalistically taken the ESOP option from participants is inconsistent with the design of a participant-directed plan.

Second, Judge Dein should have taken into consideration the presumption of prudence that legions of courts have put in place to further Congress's policy goal of encouraging employers to offer ESOPs.  More particularly, courts have reduced the possibility that fiduciaries will be constantly second-guessed in hindsight by the plaintiffs' bar by holding that ESOP investments are presumed to be prudent unless a company is on the brink of collapse—a position that Plaintiff concedes State Street was never in.  Even though she recognized that the First Circuit has not "foreclosed" application of the presumption, Judge Dein declined to apply it

largely because the First Circuit expressed a preference for record development in 2004 when it declined to adopt the presumption given that, in the First Circuit's view, the law at that time was "neither mature nor uniform."  Seven years later, especially after the Supreme Court's landmark decisions in *Twombly* and *Iqbal*, the law has matured and now the overwhelming majority of courts—including every circuit court to have ruled on the merits of this issue (*i.e.*, the Third, Fifth, Sixth, Seventh, and Ninth Circuits) and a large number of district courts—hold that the presumption of prudence applies at the pleading stage.  It should be applied to Plaintiffs' claim.

In the alternative, in the event that the Court accepts Judge Dein's recommendation on Plaintiff's First Claim, Defendants respectfully request that the Court certify an immediate appeal of the narrow question of whether district courts in the First Circuit should apply the presumption of prudence applied elsewhere.  If this Court should decline to apply the presumption, this case would easily satisfy the standard in 28 U.S.C. § 1292 because:  (i) application of the presumption is a controlling question of law; (ii) there would be, at the very least, substantial grounds for disagreement as to whether it applies; and (iii) resolution of the question in the affirmative would conclude the litigation.

## BACKGROUND

### A.    State Street's ESOP and Its Record Financial Results

The Plan is a self-directed defined-contribution retirement plan created for the benefit of State Street employees.  R&R at 6.  Participants are allowed to choose how to invest their retirement funds among a wide array of investment options, including directing up to 25% of the balance of their Plan account to an ESOP fund that is "invested primarily in State Street stock." Butts Aff. Ex. A (Summary Plan Description dated June 10, 2008, § 1.1) (Plan "contains a stock bonus feature consisting of an employee stock ownership plan" which "will be invested primarily in State Street stock"); R&R at 7.  Participants are warned that:

> The value of the [ESOP] Fund will fluctuate depending on State Street's
> performance, stock market fluctuations and general economic conditions.
> Because the Fund invests in the common stock of only one company, it is *the*
> *most risky* of the Funds offered through the [Plan].

R&R at 7 (quoting the Summary Plan Description ("SPD")) (emphasis added).

Plaintiff's claim focuses on the period from August 28, 2007 to January 20, 2009—a period he selected in hindsight that coincides with the recent global recession. In the First Claim, he contends that State Street was such a risky investment that the Plan's fiduciaries were duty-bound to bar further contributions to the ESOP. The record, however, does not support his claim because State Street was remarkably successful during this period of market turmoil. Between 2006 and 2007, State Street's net income grew from $1.106 billion to $1.261 billion, and its revenue shot up more than 33%, from $6.311 billion to $8.396 billion. *See* R&R at 30. In 2008, the company reported *record* net income of $1.8 billion, *record* revenue of $10.7 billion, and *record* assets in excess of $173.6 billion. Aff. Ex. R at 31 (Form 10-K filed Feb. 27, 2009). In 2007, State Street paid a substantial dividend worth $320 million; in 2008, it paid an even larger one of $400 million. *Id.* at 66.

### B.     The Conduits

Although State Street is a diversified, global financial services company, Plaintiff has focused in isolation on one small part of its business, the conduit program. R&R at 8. Conduits are separate legal entities that exist to sell high-quality commercial paper (*i.e.*, a short-term debt instrument), which institutional investors often use to help manage their cash. R&R at 8. A conduit uses the proceeds of commercial paper sales to purchase longer-term debt securities. R&R at 8, 9. Because long-term debt securities generally pay higher interest than short-term commercial paper, conduits earn income on the difference. R&R at 9; *see, e.g.*, Aff. Ex. G at 11

(Form 10-K filed Feb. 15, 2008) ("The conduits strive to maintain a positive margin between the rate of return on their longer term assets and the short-term cost of funding.").

State Street received a fee for managing the conduits, but it did not own them and it did not originate the debt securities the conduits purchased.  R&R at 8–9; *see, e.g.*, Aff. Ex. R at 105 (Form 10-K filed Feb. 27, 2009).  State Street's contractual duties in managing the conduits included providing liquidity as necessary—*i.e.*, purchasing the conduits' commercial paper, making loans to the conduits, or purchasing conduit assets at set prices.  R&R at 10–11.

Although, consistent with the accounting rules, the conduits were not consolidated on State Street's balance sheet during the putative class period,[1] State Street made detailed disclosures about the conduits and the risks they posed to the company.  *See* R&R at 10 n.2 ("State Street did make a great number of disclosures concerning the conduits . . . ." ); R&R at 4 ("State Street regularly issued statements about the conduit business in its SEC filings."); R&R at 18 ("[T]he filings disclose the liquidity, credit and consolidation risks described above with respect to the conduits . . . .").  In fact, at the end of every quarter during the putative class period, State Street issued a Form 8-K containing a PowerPoint presentation that provided easily digestible information about the conduits, including the market value of their assets as compared to the prior period, the number of asset defaults (which was always zero), insurance coverage against defaults, and changes in the assets' credit ratings over time.  *See, e.g., Aff. Ex. E at Ex. 99.2 (8-K filed Oct. 16, 2007); Aff. Ex. J at Ex. 99.2 (8-K filed Apr. 15, 2008); Aff. Ex. P at Ex. 99.2 (8-K filed Oct. 15, 2008).

---

[1]      The relevant rule is Financial Accounting Standards Board Interpretation No. 46(R) ("FIN 46(R)").  *See* Ex. G at 103.  Under FIN 46(R), only a "primary beneficiary" of a "variable interest entity" (such as a conduit) is required to consolidate that entity's financial statements. *See* FIN 46(R).  A primary beneficiary is the party that would "absorb the majority of the [conduit's] expected losses," or receive a majority of its expected residual returns. *See id.*  Consistent with FIN 46(R), in order to determine whether it was a primary beneficiary of the conduits, State Street used a financial model that simulated hundreds of thousands of probability-weighted loss scenarios and performed stress tests and sensitivity analyses in order to predict "expected losses" (as defined by FIN 46(R)).  *See, e.g.,* Ex. G at 46–48.  Based on the model, during the Class Period State Street concluded that it was not a primary beneficiary of the conduits and therefore consolidation was not required.  *See, e.g., id.* at 86.

Plaintiff ignores these disclosures but for one of them.  State Street disclosed each quarter in the PowerPoint and elsewhere the conduits' *unrealized* losses (that is, the difference between their assets' purchase prices and current market value), which grew from approximately $215 million at the end of third quarter of 2007 to $3.6 billion as the recession peaked in the first quarter of 2009.  *See* R&R at 12 (State Street "repeatedly described the potential magnitude of any such losses").  These unrealized losses are not economic losses.  State Street disclosed the conduits' unrealized losses while at the same time disclosing that if State Street became required under the accounting rules to consolidate the conduits' assets onto State Street's balance sheet, State Street would take a charge to earnings in this amount.  As State Street also disclosed, any such amount would be recouped over time if, as anticipated, the conduits held their securities to maturity and the securities did not default.  *See, e.g.*, Aff. Ex. I at 34 (10-Q filed May 9, 2008).

Although Plaintiff does not dispute that consolidation was not required during the putative class period, he contends that the growth in unrealized losses coupled with the mere possibility of consolidation rendered State Street's stock an imprudent investment.  He further contends that Plan participants were harmed by alleged imprudence on January 20, 2009, when the price of State Street's stock dropped after State Street announced (among other things) that the conduits' unrealized losses had increased from $2.14 to $3.56 billion over the fourth quarter of 2008.  *See* Compl. ¶ 1.  On that day, State Street's stock price fell from $36.35 to $14.89 per share.  R&R at 20.[2]  Plaintiff does not, however, grapple with the fact that within approximately three months of the announcement, State Street's stock price *fully* recovered.  *See* Defs.' Sur-Reply in Opp. to Mot. to Amend App. Ex. 2.

---

[2]      Defendants dispute that this drop was due to the conduit announcement.

**ARGUMENT**

I.   **PLAINTIFF'S FIRST CLAIM FAILS TO STATE A PLAUSIBLE ENTITLEMENT TO RELIEF.**

   A.   **The Second Amended Complaint, Like Its Predecessor, Fails Plausibly To Plead That the ESOP Was an Imprudent Investment.**

Judge Dein should have dismissed Plaintiff's prudence claim under a straightforward application of *Twombly*, as Judge Saris did.  *See* Mem. and Order on Mot. to Dismiss, Docket No. 56, at 17 (Mar. 15, 2010) (Saris, J.) ("Saris Dismissal Order").  Judge Saris considered the same prudence claim now before the Court.  *See id.* at 15 (describing First Amended Complaint: "Plaintiff has alleged that the plummeting stock value, combined with high risk investments, would have led a reasonable fiduciary to believe that continued investment in the company stock was imprudent.").  She correctly dismissed because Plaintiff could not plausibly articulate why the ESOP was an imprudent investment.  *Id.* at 17 ("Conclusory allegations of riskiness will not suffice.  The Court dismisses the imprudence claim without prejudice.").

Nothing of consequence has changed.  The dispositive record facts remain that (i) State Street achieved record financial results during the putative class period, (ii) State Street's stock paid substantial dividends, (iii) State Street passed the Federal Reserve's stress tests, (iv) State Street's stock matched the S&P 500 and beat the S&P Financial Index, and (v) State Street made exemplary disclosures about its conduits and other risks.  *See id.* at 16 (citing portions of record concerning earnings and financial results).  This just was not an imprudent investment, regardless of the disclosed risks that State Street faced.

If anything, the record supporting dismissal of the Amended Complaint is stronger.  Although Judge Saris allowed for the possibility of improper accounting, the propriety of State Street's accounting treatment is now clear.  *Compare id.* at 17 ("It is unclear whether the continued off-balance sheet treatment of conduits is an overly aggressive accounting gimmick or

a prudent investment strategy."), *with* R&R at 20 n.4 ("Plaintiff does not allege that the timing of the consolidation was inappropriate under applicable accounting standards.").  Judge Dein did not explain why she recommended departing from Judge Saris's analysis, and there was no reason to depart.

Although Judge Dein recognized that Plaintiff's "ability to prove his case may turn out to be impossible," she recommended that Plaintiff have the opportunity to take discovery.  R&R at 37.  This was error because, notwithstanding the lure of record development, *Twombly* demands well pleaded factual allegations indicating a plausible entitlement to relief before allowing a plaintiff to embark on costly discovery.  *See Yates v. Dilday*, 2011 WL 797366, at *2 (S.D. Ill. Feb. 28, 2011) (record development could yield evidence to support plaintiff's claims, but *Twombly* compelled dismissal); *In re Huntington Bancshares Inc. ERISA Litig.*, 620 F. Supp. 2d 842, 852 (S.D. Ohio 2009) (dismissing claim for breach of duties of prudence and loyalty where plaintiffs' theory was "conceivable" but not plausible under *Twombly*).

The Second Amended Complaint, like its predecessor, falls short of *Twombly's* standard regardless whether the Court applies the presumption of prudence, *see infra* Part I(B), or the "totality of circumstances" test that Judge Dein instead applied.  Plaintiff concedes that he cannot overcome the presumption of prudence.  Nor can Plaintiff show imprudence under the "totality of the circumstances" test, which as applied by Judge Dein considers: (i) the plan's structure and aims, (ii) the disclosures made to participants, (iii) the stock price, and (iv) the nature and extent of challenges facing the company that would have an effect on its stock price.  *See* R&R at 26.

### 1. Plan Structure

The Summary Plan Description ("SPD") explains the Plan's structure and aims, including that it is "a tax qualified plan with an employee stock ownership feature."  Aff. Ex. A at 1.  It also shows that participants had more than twenty investment options to choose from, including

(i) a self-directed brokerage option that made thousands more investments available and (ii) an ESOP option to which participants could transfer up to 25% of their Plan account balance from other investment options (direct contributions were not permitted). *Id.* at 17, 20-21. The SPD also contained a prominent warning:

> **Investment Decisions Are Your Responsibility**
>
> Under U.S. Department of Labor regulations, the [Plan] qualifies as a Section 404(c) plan, and neither State Street nor the Plan fiduciaries are responsible for the consequences of your investment decisions.

*Id.* at 16 (emphasis in original).

### 2. Disclosure to Plan Participants

As Judge Dein recognized, State Street's risk disclosures were extensive and detailed. *See supra* at 5–6 (disclosures cited in R&R). To begin with, State Street warned participants that, because the ESOP Fund "invests in the common stock of only one company, it is the most risky of the Funds offered through the [Plan]." Ex. A (last page) (ESOP Fund Fact Sheet); R&R at 7. State Street also disclosed its conduit-related risks, including the size of unrealized losses, the risk that losses would grow, and the effect of consolidation. *See* R&R at 4, 10 n.2, 11, 12, 15, 16, 18, 41 n.6; *see supra* at 5–6.

### 3. Stock Price

State Street's stock prices are before the Court and no additional record development will change them. *See* Defs.' Sur-Reply App. Exs. 1 & 2. As detailed above, State Street's stock at all times remained a prudent long-term investment. Indeed, even in the short term, it outperformed the S&P Financial Index and performed consistently with the S&P 500. *See* Aff. Ex. Z at 30 (chart comparing cumulative returns); Defs.' Sur-Reply App. Exs. 1 & 2. While Plaintiff focuses myopically on a temporary price drop in January 2009, he cannot change the fact that State Street's stock price fully recovered—and then some—within only three months. It

is for this reason that courts appropriately discount short-term price drops.  *See, e.g., In re Huntington Bancshares Inc. ERISA Litig.*, 620 F. Supp. 2d at 852 n.8 (significant drop in stock price did not indicate imprudence, especially where stock had subsequently increased by more than 46 percent); *In re Constellation Energy Group, Inc.*, 738 F. Supp. 2d 602, 612 (D. Md. 2010) (stock declines do not trigger a duty to divest because "one cannot expect the defendants to have had the foresight to predict" financial events affecting stock performance and to divest).

### 4.       The Nature and Extent of the Challenges Facing the Company

Like other companies navigating a global recession, State Street faced numerous challenges—including challenges posed by the conduits.  But the conduits "represented only a portion of State Street's business" (R&R at 30), whereas the prudence inquiry focuses on the company as a whole.  *See, e.g.*, *In re Huntington Bancshares Inc.*, 620 F. Supp. 2d at 851–53 (dismissing claim premised on company's subprime mortgage exposure, which represented 3.9% of its loans and 2.8% of its total assets); *accord* R&R at 31 (relevant question concerns "the entire operation").  Here, it cannot be disputed that State Street delivered *record* financial results or that its stock performance tracked the S&P 500 and beat the S&P Financial Index.  *See supra* at 4.

Also, throughout the putative class period, State Street maintained its status as a "well-capitalized" financial institution under the Federal Reserve's regulations.  *See* Aff. Ex. Z at 31 (10-K filed Feb. 22, 2010) (showing ratios over the last four years ranging from 11.2% to 20.03%); 12 C.F.R. § 225 App. A (identifying regulatory guidelines).  Indeed, in May 2009, State Street passed the Federal Reserve's so-called "stress test," which assessed selected banks' abilities to withstand a more severe recession than anticipated.  *See* Aff. Ex. W at 26–27 (8-K filed May 18, 2009) (reporting Federal Reserve's findings); Aff. Ex. FF at 2 (Supervisory Capital Assessment Program Report) (calling test "deliberately stringent" to ensure bank holding

companies "will have adequate capital" even if "the economy weakens more than expected").

The stress test expressly considered the conduit risks in reaching this conclusion.  *Id.*

Presented with these dispositive facts, Judge Dein need not have accepted several of

Plaintiff's implausible assertions concerning why the conduits supposedly made State Street an

imprudent investment.  *First*, Plaintiff argues implausibly that State Street faced an excessive

risk because, if it had been required to consolidate the conduits, the company's so-called tangible

common equity (TCE) ratio would have fallen below 3%.  R&R at 31.  In fact, however, banks

are not required to maintain a 3% TCE ratio, and State Street would have remained well

capitalized under the Federal Reserve's regulations regardless of whether it consolidated the

conduits. *See* Defs.' Opp. to Mot. to Amend at App. Ex. 2.  The stress test concluded that State

Street was well capitalized even assuming that the conduits had been consolidated.  Aff. Ex. Y at

Ex. 99.1 at 7.  Moreover, Plaintiff does not dispute that State Street was not required to

consolidate the conduits during the class period, so there can be no dispute that State Street's

TCE ratio never dropped below 3%.  Thus, Plaintiff in effect claims that State Street stock was

too risky because of a hypothetical risk that did not come to pass during the putative class period.

*Second*, Judge Dein should not have accepted Plaintiff's conflation of *unrealized* losses

with actual economic loss (*i.e.,* non-payment of principal and interest on conduit debt securities).

*See* R&R at 32 (concluding that State Street might "suffer severe losses from its exposure to the

conduit business," and "was facing the prospect of significant losses"); *supra* at 6 (describing

unrealized losses).  Unrealized losses are paper losses (the difference between par value and

market value) that need not ever be realized.  Just as the conduits could continue to hold debt

securities that they could not sell for the price paid until the principal was repaid with interest, so

could State Street if it took the assets onto its balance sheet.  As State Street repeatedly disclosed,

if consolidation was necessary, it would record an unrealized loss on the conduits, but would not lose *a penny* unless any conduit debt security defaulted. *See, e.g.*, Aff. Ex. I at 34 (10-Q filed May 9, 2008). Because the record reveals that not a single one of the more than 700 debt security assets held by the conduits defaulted during the class period, this disclosed risk did not plausibly make State Street stock an imprudent investment. *See, e.g.*, Aff. Ex. P at Ex. 99.4 at 4.

*Finally*, Judge Dein correctly required Plaintiff to plead the existence of "red flags," but shied away from determining that he had not done so. R&R at 35. She focused on two news articles from August 2007, neither of which supports the idea that Defendants should have prevented further ESOP contributions. One article quoted a securities analyst as saying, "*I don't think people should be selling [State Street's] stock* because they think there's going to be some blowup in the conduits." Aff. Ex. CC (emphasis added). The other states only that State Street had "exposure to [conduits], the off-balance sheet vehicles that have caused severe problems *for rivals* in recent weeks amid turmoil in credit markets." (Compl. ¶ 66.) That article is not a red flag that "investing in company stock may be imprudent," *Pugh v. Tribune Co.*, 521 F.3d 686, 700 (7th Cir. 2008). State Street's conduits were considerably stronger than its peers (*see, e.g.*, Aff. Ex. E. at Ex. 99.2 at 1) and there were no defaults or realized losses, *see supra* at 6.[3]

### B.   The Presumption of Prudence Defeats Plaintiff's Claim.

Although this Court should, consistent with the earlier decision of Judge Saris, deny Plaintiff's motion as futile because the Complaint does not satisfy *Twombly*'s pleading standards, there is no doubt that dismissal is warranted if the Court applies the presumption of prudence. Despite the development in the law since the First Circuit declined to apply the presumption, and

---

[3]      Judge Dein also erred in concluding that the articles "combined with the Company's own public disclosures regarding the increasing liquidity risk and growth in unrealized losses from the conduits during a time of turmoil in the commercial paper market" constitute a red flag. R&R at 35–36. Unrealized losses associated with the conduits steadily increased throughout the class period, but a reasonable and prudent fiduciary would understand that the conduit assets would be held to maturity, with all principal and interest paid.

despite Judge Dein's correct observation that the law of the First Circuit does not foreclose its application, neither Judge Dein nor Judge Saris applied the presumption. Because application of the presumption is both permissible and consistent with the many cases from other jurisdictions that do apply it, the Court should apply the presumption and deny the motion to amend.

### 1.       Employer Stock Held in an ESOP Is Presumed To Be Prudent.

State Street's ESOP was designed to give the Plan's participants the opportunity to become owners in the company and to share directly in its financial performance. *See* Aff. Ex. A (Summary Plan Description dated June 10, 2008, last page). This is consistent with Congressional policy "to give employees . . . a larger stake in [their employer's] fortunes, in hopes of broadening ownership of capital within a capitalist system." *See Summers v. State Street Bank & Trust Co.*, 453 F.3d 404, 410 (7th Cir. 2006) (quotations omitted); *see also* Tax Reform Act of 1976, Pub. L. No. 94-455, § 803(h), 90 Stat. 1590 (1976) (ESOPs are intended to "strengthen[] the free private enterprise system [and] . . . solve the dual problems of securing capital funds for necessary capital growth and of bringing about stock ownership by all corporate employees"). To advance this policy, and better align employees' interests with their employer and its shareholders, Congress enacted laws "to encourage employers to set up ESOPs." *Moench v. Robertson*, 62 F.3d 553, 568 (3d Cir. 1995) ("the concept of employee ownership constitute[s] a goal in and of itself"); *see Martin v. Feilen*, 965 F.2d 660, 665 (8th Cir. 1992) (highlighting provisions in ERISA and the Internal Revenue Code intended to promote and subsidize ESOPs).

Courts have implemented Congress's goal of encouraging ESOPs by insulating fiduciaries from the risk of lawsuits—in particular, by establishing a presumption that employer stock held in an ESOP is a prudent investment. *See Moench*, 62 F.3d at 571 ("an ESOP fiduciary who invests the [plan's] assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision"). To overcome that presumption, a plaintiff

must plead facts showing some set of dire circumstances that called the employer's viability into question. *See, e.g.*, *Quan v. Computer Scis. Corp.*, 623 F.3d 870, 882 (9th Cir. 2010) (allegations must "clearly implicate[ ] the company's viability as an ongoing concern") (quotations omitted); *In re Dell, Inc. ERISA Litig.*, 563 F. Supp. 2d 681, 693–94 (W.D. Tex. 2008) (plaintiff must allege "persuasive and analytically rigorous facts" indicating that company's "survival" was threatened or its "stock was in danger of becoming worthless"); *In re Bausch & Lomb Inc. ERISA Litig.*, 2008 WL 5234281, at *6 (W.D.N.Y. Dec. 12, 2008) ("*Moench* and its progeny have established that the presumption of prudence is rebutted only when a company's overall viability appears to be in jeopardy.").

Judge Dein chose not to apply this presumption because, in 2004, the First Circuit elected not to decide whether to adopt the presumption reasoning, at that time, that the law was neither "mature nor uniform." R&R at 28 (*citing LaLonde v. Textron, Inc*., 369 F.3d 1, 6 (1st Cir. 2004)). More recently, however, the First Circuit indicated support for its application in this context. In *Bunch v. W.R. Grace & Co.*, 555 F.3d 1, 10 (1st Cir. 2009), the First Circuit addressed the presumption in a different setting. There, the *plaintiff* invoked it to challenge a fiduciary's decision to liquidate an ESOP. The First Circuit declined to adopt the presumption as an offensive tactic, but its opinion reflected support for use of the presumption as a shield in the circumstances presented in this case. *Id.* (describing the presumption as something "afforded fiduciaries when they decide to retain an employer's stock in falling markets"). Given the development of the law outside this Circuit, and this Circuit's opinion in *Bunch*, the Court should apply the presumption to dismiss the Complaint.

Judge Dein recognized that the First Circuit has not "foreclosed the possibility of applying" the presumption, and that it is "not yet the law of this Circuit." R&R at 28, 34 n.5.

Nevertheless, there is little reason to think that the First Circuit will not follow the other Circuits who have applied the presumption in the seven years since *LaLonde*. Five courts of appeals have now adopted the presumption, and none have rejected the presumption on its merits. *See Quan*, 623 F.3d at 880 (9th Cir. 2010) (adopting presumption and noting that "[n]o federal appellate court has rejected the *Moench* presumption on its merits."); *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 256 (5th Cir. 2008); *Kuper v. Iovenko*, 66 F.3d 1447, 1459 (6th Cir. 1995); *Pugh*, 521 F.3d at 701–02 (7th Cir. 2008); *Edgar v. Avaya, Inc.*, 503 F.3d 340, 347–48 (3d Cir. 2007); *Brown v. Medtronic, Inc.*, 628 F.3d 451, 460 (8th Cir. 2010) ("We are unable to identify any circuit that has expressly rejected the presumption on its merits").

In addition, particularly after the Supreme Court's decisions in *Twombly* and *Iqbal*, district courts have adopted the presumption in droves and applied it at the pleading stage. *See In re Citigroup ERISA Litig.*, 2009 WL 2762708, at *16 (S.D.N.Y. Aug. 31, 2009) (presumption, especially after *Twombly*, "regularly applied . . . at the motion-to-dismiss stage."); *Morrison v. MoneyGram Int'l, Inc.*, 607 F. Supp. 2d 1033, 1051 (D. Minn. 2009) (presumption "is just another way of saying that plaintiffs must allege . . . that they have a non-speculative claim that the fiduciary . . . acted in a manner that would overcome the *Moench* presumption"); *Gearren v. McGraw-Hill Cos.*, 690 F. Supp. 2d 254, 270 (S.D.N.Y. 2010) ("At least post-*Iqbal,* it is not enough simply to make a conclusory allegation that the defendants breached their fiduciary duties . . . . When the presumption applies, the factual allegations in the complaint must make it plausible that the defendants could not have reasonably believed that continued adherence to the terms of the plan was in keeping with the settlor's expectations of how a prudent trustee would operate.") (quotation marks omitted).[4]

---

[4]     *See, e.g., Carr v. Int'l Game Tech.*, --- F. Supp. 2d ----, 2011 WL 923944, at *10 (D. Nev. Mar. 16, 2011); *In re Bear Stearns Cos.*, --- F. Supp. 2d ----, 2011 WL 223540, at *133 (S.D.N.Y. Jan. 19, 2011); *Gearren*, 690 F.

Courts apply the presumption of prudence because, without it, ESOP sponsorship will be untenable.  If the law may damn fiduciaries equally for action or inaction, their ability to avoid costly lawsuits would depend on the impossible—successfully timing the securities market by dumping an ESOP at the top of the market and getting right back in at the bottom.  *See, e.g.*, *Kirschbaum*, 526 F.3d at 256 (absent presumption, the plaintiffs' bar will use stock price swings to put ESOP fiduciaries in "the untenable position of having to predict the future of the company stock's performance"); *Bunch*, 555 F.3d at 3 (after employer emerged from bankruptcy and stock price increased, fiduciaries sued for liquidating ESOP during bankruptcy); *Pedraza v. Coca-Cola Co.*, 456 F. Supp. 2d 1262, 1276 (N.D. Ga. 2006) ("fiduciary who decides to scrap the ESOP is just as apt to be sued as he would be if he enforced the plan provisions").  Avoiding this outcome is critical to implementing Congress's policy of encouraging employers to offer ESOPs:

> We adopt the *Moench* presumption because it provides a substantial shield to fiduciaries when plan terms require or encourage the fiduciary to invest primarily in employer stock. . . . . [T]he 'long-term horizon of retirement investing' requires protecting fiduciaries from pressure to divest when the company's stock drops.  The *Moench* presumption should also make it less likely that a plan fiduciary would be tempted to use insider information to divest the plan from company stock, since continued investment in the plan will be presumed prudent.

*Quan*, 623 F.3d at 881–82 (emphasis added) (quoting *Kirschbaum*, 526 F.3d at 254).

---

Supp. 2d at 269-70; *Fisher v. JP Morgan Chase & Co.*, 703 F. Supp. 2d 374, 383 (S.D.N.Y. 2010); *In re Lehman Bros. Sec. & ERISA Litig.*, 683 F. Supp. 2d 294, 302–03 (S.D.N.Y. 2010); *Dudenhoeffer v. Fifth Third Bancorp*, 757 F. Supp. 2d 753, 2010 WL 4970767, at *5 (S.D. Ohio Nov. 24, 2010); *In re Am. Express Co. ERISA Litig.*, --- F. Supp. 2d ----, 2010 WL 4371434, at *10 n.2 (S.D.N.Y. Nov. 2, 2010); *Crocker v. KV Pharmaceutical Co.*, --- F. Supp. 2d ----,  2010 WL 1257671, at *19 (E.D. Mo. Mar. 24, 2010); *Morrison v. MoneyGram Int'l, Inc.*, 607 F. Supp. 2d 1033, 1051, 1053 (D. Minn. 2009); *In re Harley-Davidson, Inc., Sec. Litig.*, 660 F. Supp. 2d 953, 965 n. 5 (E.D. Wis. 2009); *In re Dell, Inc. ERISA Litig.*, 563 F. Supp. 2d 681, 693 (W.D. Tex. 2008); *In re RadioShack Corp. ERISA Litig.*, 547 F. Supp. 2d 606, 614 (N.D. Tex. 2008); *In re Ford Motor Co. ERISA Litig.*, 590 F. Supp. 2d 883, 893 n. 1 (E.D. Mich. 2008); *Griffin v. Flagstar Bancorp, Inc.*, 2011 WL 1261196, at *12 (E.D. Mich. Mar. 31, 2011); *In re UBS AG ERISA Litig.*, 2011 WL 1344734, at *6 (S.D.N.Y. Mar. 24, 2011); *Fulmer v. Klein*, 2011 WL 1108661, at *5 (N.D. Tex. Mar. 16, 2011); *Wright v. Medtronic, Inc.*, 2011 WL 31501, at *3 (D. Minn. Jan. 5, 2011); *Jones v. MEMC Elec. Material, Inc.*, 2010 WL 4065202, at *2 (E.D. Mo. Oct. 18, 2010); *In re SLM Corp. ERISA Litig.*, 2010 WL 3910566, at *7 (S.D.N.Y. Sept. 24, 2010); *In re Citigroup ERISA Litig.*, 2009 WL 2762708, at *16 (Aug. 31, 2009); *Johnson v. Radian Group, Inc.*, 2009 WL 2137241, at *17 (E.D. Pa. July 16, 2009); *In re Avon Prods., Inc. Sec. Litig.*, 2009 WL 848083, at *10–11 (S.D.N.Y. Mar. 3, 2009); *In re Bausch & Lomb ERISA Litig.*, 2008 WL 5234281, at *5 (W.D.N.Y. Dec. 12, 2008); *Halaris v. Viacom, Inc.*, 2008 WL 3855044, at *2 (N.D. Tex. Aug. 19, 2008).

Indeed, this case is another example of the risk of ESOP sponsors being sued no matter what the market does. State Street's stock price quickly rebounded following the January 2009 drop. If Defendants had prohibited participants from contributing to the ESOP in this period, as Plaintiff insists Defendants were required to do, participants would have lost out on a ***278% gain*** over the next few months. As Judge Dein explained, that would have exposed Defendants to an ERISA claim for failing to comply with the Plan's clear desire to offer an ESOP option— something she noted "illustrates one of the reasons why some courts have concluded that fiduciaries of an employer stock plan must be given a presumption of prudence." *See* R&R at 34 n.5.[5] Any such outcome is antithetical to Congress's goal of encouraging ESOPs: "why would an employer establish an ESOP if its compliance with the purpose and terms of the plan could subject it to strict judicial second-guessing?" *Moench*, 62 F.3d at 570.

### 2. Plaintiff Cannot Overcome the Presumption of Prudence Because State Street Was (and Remains) a Strong, Viable Company.

Plaintiff cannot overcome the presumption of prudence, which only allows a claim to proceed if a company is in danger of imminent collapse. The Complaint does not allege anything close—nor could it. Even Plaintiff concedes that "State Street was not . . . teetering on the edge of going off in abyss." *See* Nov. 12, 2009 Hearing Tr., Dkt. No. 37, at 31. Indeed, notwithstanding the severity of the recent global recession, State Street has remained a thriving, multi-billion dollar company. *See, e.g.*, R&R at 30 (significant increases in net income, revenue, and assets during class period). State Street also consistently paid a dividend during the class period, and stockholders enjoyed cumulative returns that substantially outperformed the S&P Financial Index and were consistent with the S&P 500 Index. In situations like this, courts have

---

[5] Judge Dein incorrectly noted that Defendants made this argument without citing to support in the record for the fact that State Street's stock increased 278% in the four months after the end of the proposed class period. The record support can be found in Appendix Ex. 2 to Defendants' Sur-Reply in Opposition to Plaintiffs' Motion to Amend.

not hesitated to dismiss prudence claims.  *See, e.g., Wright v. Oregon Metallurgical Corp.*, 360

F.3d 1090, 1098–99 (9th Cir. 2004) (no claim where company was "profitable and paying

substantial dividends"); *Johnson v. Radian Group, Inc.*, 2010 WL 2136562, at *10–11 (E.D. Pa.

May 26, 2010) (company was profitable and was not facing a "monumental liquidity crisis").[6]

## II.   IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY THIS CASE FOR IMMEDIATE APPEAL

If the Court accepts Judge Dein's recommendation on Plaintiff's First Claim, Defendants

request that the Court certify an immediate appeal of the narrow question of whether the

presumption of prudence is applicable in this Circuit, given the development in the law outside

of this Circuit.  The Court has the discretion to do so under 28 U.S.C. § 1292(b), which provides:

> When a district judge, in making in a civil action an order not otherwise
> appealable under this section, shall be of the opinion that such order involves a
> controlling question of law as to which there is substantial ground for difference
> of opinion and that an immediate appeal from the order may materially advance
> the ultimate termination of the litigation, he shall so state in writing in such order.

This case satisfies that standard.

First, application of the presumption of prudence "involves a controlling question of

law."  *See Philip Morris Inc. v. Harshbarger*, 957 F. Supp. 327, 330 (D. Mass.) (question of law

is "controlling" if reversal of the district court's decision would end the litigation), *aff'd by* 122

F.3d 58 (1st Cir. 1997).  As detailed above, if the presumption applies, the Complaint does not

survive because Plaintiff does not dispute that State Street was never on the brink of collapse.

---

[6]     That State Street's stock price dropped in January 2009 does not rebut the presumption of prudence.  Stock price fluctuations, "even those that trend downward significantly," are by themselves never enough to rebut the presumption of prudence.  *Wright*, 360 F.3d at 1099; *see Pugh*, 521 F.3d at 702 (finding stock drop decline to be insufficient to allege imprudence); *Edgar*, 503 F.3d at 348–49 (same).  In fact, courts have dismissed numerous prudence claims involving substantially more significant declines.  *See, e.g., Kuper v. Iovenko*, 66 F.3d 1447, 1451, 1459–60 (6th Cir. 1995) (80% drop); *Wright*, 360 F.3d at 1096, 1099 (75%); *Nelson v. Ipalco Enters., Inc.*, 480 F. Supp. 2d 1061, 1064 (S.D. Ind. 2007) (90%); *Smith v. Delta Air Lines, Inc.*, 422 F. Supp. 2d 1310, 1314 (N.D. Ga. 2006) (92%); *In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp.2d 812, 830–33 (N.D. Cal. 2005) (75%); *In re Bank of Am. Corp. Sec. Litig.*, 2010 WL 3448197, at *20–21 (S.D.N.Y.  Aug. 27, 2010) (83%).  This makes particular sense, as here, given a long-term investment (*i.e.*, retirement funds) that fully rebounded within months.

Second, if the Court does not dismiss the case, there would exist, at the very least, substantial grounds for difference of opinion concerning whether the presumption of prudence applies. *See Philip Morris*, 957 F. Supp. at 330 (quoting *McGillicuddy v. Clements*, 746 F.2d 76, 76 n. 1 (1st Cir. 1984)); *see also Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990) (finding "substantial ground for difference of opinion" where the "issues are difficult and of first impression"). As Judge Dein recognized, this Circuit has not foreclosed application of the presumption (R&R at 27–28), and the clear trend of other circuits is to apply it. *See Lawson v. FMR LLC*, 724 F. Supp. 2d 167, 169 (D. Mass. 2010) (prong satisfied where "a different view about the applicability question has been stated in a number of judicial and administrative cases"); *Muniz v. Winn*, 462 F. Supp. 2d 175, 185 (D. Mass. 2006) ("To satisfy the requirement that there be 'substantial ground for a difference of opinion,' this Court points to the disagreement within the District, already highlighted above. This issue is 'not settled by controlling authority.'"), *rev'd on other grounds by* 517 F.3d 29 (1st Cir. 2008).

Finally, an immediate appeal would materially advance the ultimate termination of the litigation because, if the presumption applies, this case is over. *See Dahl v. Bain Capital Partners, LLC*, 597 F. Supp. 2d 211, 213 (D. Mass. 2009) (prong met because district court's order denied a motion to dismiss, and a contrary "appeals court decision could dismiss this matter").[7] Further, even if the First Circuit decides not to apply the presumption at this stage, the appellate process is likely to provide important guidance to the rest of this case that will make discovery more efficient (*e.g.*, should the focus be on company viability, or something else?), guide summary judgment (*e.g.*, does the presumption apply then?), and guide trial (*e.g.*, what

---

[7]    The applicability of the presumption of prudence is also a question of broader importance. For instance, very recently, the exact same issue arose in another case pending before this Court. *See* Nos. 09-12146, 10-10184, *Hill v. State Street Corp.*, Dkt. Nos. 72, 81, 87 (parties briefing *Moench* issue in connection with pending motion to dismiss). It is likely to come up in a number of other cases.

must the Plaintiff prove?).  *See Lawson*, 724 F. Supp. 2d at 169 (prong met because, "if

certification results in reversal, these cases are concluded and the question is resolved," but if

"certification results in affirmance," additional proceedings "will be highly fact intensive but

with certain boundaries framed by the appellate holding").[8]

### CONCLUSION

For these reasons, Defendants respectfully request that the Court adopt Judge Dein's

Report and Recommendation, except for her recommendation on Plaintiff's First Claim, and that

the Court deny the Motion to Amend.  In the alternative, Defendants ask the Court to enter a

written finding that application of the presumption of prudence presents a "controlling question

of law as to which there is substantial ground for difference of opinion and that an immediate

appeal from the order may materially advance the ultimate termination of the litigation."

**DEFENDANTS**,

By their attorneys,

 */s/ Jeffrey B. Rudman*
Jeffrey B. Rudman (BBO No. 433380)
William H. Paine (BBO No. 550506)
John J. Butts (BBO No. 643201)
Timothy Perla (BBO No. 660447)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
E-mail:  jeffrey.rudman@wilmerhale.com

---

[8]      It is therefore not significant that, if Plaintiffs prevail on appeal, the litigation will continue.  *See Philip Morris*, 957 F. Supp. at 330 (certification is appropriate where "the affirmance of this Court's decision will probably not advance the termination of this litigation, but a reversal would").

**CERTIFICATE OF SERVICE**

I, Jeffrey Rudman, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) dated June 1, 2011.

/s/  *Jeffrey Rudman*
Jeffrey Rudman