# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| THOMAS U. KENNEY, on Behalf of Himself and a Class of Persons Similarly Situated, | X : : : : | |
| Plaintiff, | : | 1:09-cv-10750 (DJC) |
| v. | : : | |
| STATE STREET CORPORATION; NORTH AMERICA REGIONAL BENEFITS COMMITTEE OF STATE STREET CORPORATION; ALISON QUIRK; PAMELA GORMLEY; ROSS MCLELLAN; DAVID O'LEARY; SKIP CURTRELL; JAYNE DONAHUE; DAVID GUTSCHENRITTER; JAMES MALERBA; STATE STREET CORPORATION INVESTMENT COMMITTEE; and JOHN DOES 1-10 | : : : : : : : : : : : : : | |
| Defendants. | : X | |

## PLAINTIFF'S [CORRECTED] RESPONSE TO DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO AMEND AND ALTERNATIVE MOTION FOR CERTIFICATION OF AN IMMEDIATE APPEAL

**MAJOR KHAN, LLC**
1120 Avenue of the Americas
Suite 4100
New York, NY 10036
Tel: (646) 546-5664
Fax: (646) 546-5755
*Counsel for Plaintiff*

**TODD & WELD LLP**
Kevin T. Peters (BBO #550522)
28 State Street
Boston, MA 02109
Telephone: (617) 720-2626
Facsimile:  (617) 227-5777

**STULL, STULL & BRODY**
Mark Levine
Patrick K. Slyne
6 East 45th Street
New York, NY 10017
Telephone: (212) 687-7230
Facsimile:  (212) 490-2022

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ........................................................................... 1

II.     THE RECOMMENDATION THOROUGHLY AND PROPERLY ANALYZED
        PLAINTIFF'S WELL PLED PRUDENCE CLAIM ......................................................... 2

III.    DEFENDANTS' OBJECTIONS TO RECOMMENDATION ......................................... 6

        A.    Defendants Improperly Characterized Judge Dein's Impression of Plaintiff's
              Second Amended Complaint ................................................................... 6

        B.    Defendants' Cherry Picked Portrayal of Facts Fails to Warrant Overturning the
              Recommendation ...................................................................................... 7

        C.    Defendants Incorrectly Object to Judge Dein's Findings that the Second Amended
              Complaint Plausibly Pleads that State Street Stock was an Imprudent Investment 7

IV.     DEFENDANTS ARE NOT ENTITLED TO A PRESUMPTION OF PRUDENCE ....... 13

        A.    Even if *Moench* Applies It Should Provide Limited Protection to Defendants.... 13

        B.    The *Moench* Presumption Is Never Warranted.................................................. 15

        C.    The *Moench* Presumption Is Not Appropriate at the Pleading Stage .................. 16

        D.    Plaintiff Has Alleged Facts that Are Sufficient to Rebut the Presumption if this
              Court Rules that it Applies...................................................................... 18

V.      THE COURT SHOULD NOT CERTIFY THIS CASE FOR IMMEDIATE APPEAL .. 19

VI.     CONCLUSION............................................................................................... 21

# TABLE OF AUTHORITIES

## Cases

*Arizona v. California*, 460 U.S. 605 (1983) .................................................................................. 1

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ..................................................................................... 2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................. 2, 11

*Braden v. Wal-mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009) .................................................. 11

*Bunch v. W.R. Grace & Co.*, 555 F.3d (1st Cir. 2009) ................................................................. 3

*Camacho v. P.R. Ports Auth.*, 369 F.3d 570 (1st Cir. 2004) ...................................................... 20

*Dahl v. Bain Capital Partners, LLC*, 597 F. Supp. 2d 211 (D. Mass. 2009) .............................. 20

*Delta Traffic Serv., Inc. v. Transtop, Inc*, 902 F.3d 101 (1st Cir. 1990) ..................................... 15

*Donovan v. Bierwirth*, 680 F.2d 263 (2d Cir. 1982) ................................................................... 11

*Edgar v. Avaya, Inc*, 503 F.3d 340 (3d Cir. 2007) ................................................................ 15, 18

*Evans v. Akers*, 534 F.3d 65 (1st Cir. 2008) ............................................................................... 10

*Gearren v. McGraw-Hill Co*, Nos. 10-792-cv, 10-934-cv (2d Cir.)(amicus brief) ..................... 15

*Hocking v. United States*, 2011 U.S. Dist. LEXIS 35926 (D. Mass. April 11, 2011) ................... 1

*In re Ford Motor Co. ERISA* Litig, 590 F. Supp. 2d 883 (E.D. Mich. 2008) .............................. 19

*In re Goodyear Tire & Rubber Co. ERISA Litig.*, 438 F.Supp.2d 783 (N.D. Ohio 2006*) ...... 17, 19

*In re Huntington Bancshares, Inc. ERISA Litigation*, 620 F. Supp. 842 (S.D. Ohio) ........... 10, 11

*In re Sears Roebuck & Co., ERISA Litig*,
     2004 U. S. Dist LEXIS 3241 (N.D. Ill. March 3, 2004) ........................................................ 18

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) .......................................................... 19

*Kenney v. State Street Corp.,* 694 F. Supp. 2d 67 (D. Mass. 2010) .............................................. 3

*Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243 (5th Cir. 2008 ............................................. 15

*Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir. 1995) ........................................................................ 18

*Lalonde v. Textron, Inc.,* 369 F.3d 1 (1st Cir. 2004)) ................................................................... 3

*Lawson v. FMR LLC*, 724 F. Supp. 2d 167 (D. Mass. 2010)........................................................ 20

*Matamoros v. Starbucks Corporation*,
   2011 U.S. Dist. LEXIS 60946 (D. Mass. May 27, 2011) ........................................................ 20

*McGillicuddy v. Clements*, 746 F.2d 76 (1st Cir. 1984) ................................................................ 20

*Merck & Co., Inc. Vyoterin ERISA Litig.*,
   2009 U.S. Dist. LEXIS 78681 (D.N.J. Sept. 1, 2009) ........................................................... 18

*Moench v. Robertson,* 62 F.3d 553 (3d Cir. 1995) ....................................................................... 1

*Muniz v. Winn*, 462 F. Supp. 2d 175 (D. Mass. 2006).................................................................. 20

*Quan v. Computer Sciences Corp.,* 623 F.3d (9th Cir. 2010)........................................................ 16

*Rodriguez-Ortiz v. Margo Careibe, Inc.*, 490 F.3d 92 (1st Cir. 2007) .......................................... 2

*Taylor v. KeyCorp*, 678 F. Supp. 2d 633 (N.D. Ohio 2009)......................................................... 19

*United Airlines v. Gregory*, 716 F. Supp. 2d 79 (D. Mass. 2010) ................................................ 20

*United States v. Moran*, 393 F.3d 1 (1st Cir. 2004)...................................................................... 1

*Yates v. Dilday*, 2011 WL 797366 (S.D. Ill. Feb. 28, 2011)........................................................ 11

## Statutes

(H.R. 90-1867) (1968) .................................................................................................................. 13

28 U. S. C. § 1292(b) ..................................................................................................................... 2

29 U.S. C. § 1104(a)(2).................................................................................................................. 16

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 2

Plaintiff Thomas U. Kenney ("Plaintiff"), by his attorneys, responds to Defendants' Objections to Report and Recommendation on Plaintiff's Motion to Amend and Alternative Motion for Certification of an Immediate Appeal.

## I.   PRELIMINARY STATEMENT

Defendants object to the Report and Recommendation of May 18, 2011 ("Recommendation"), which found, among other things, that Plaintiff had adequately alleged a lack of prudence claim.[1]  The keystone of Defendants' objection is that this Court should apply the presumption of prudence first applied by the Third Circuit in *Moench v. Robertson,* 62 F.3d 553, 571 (3d Cir. 1995).  Defendants disingenuously try to wish away the fact that the First Circuit has considered the *Moench* presumption and has declined to adopt it.  Defendants try to divert the Court's attention by implying that adoption of the *Moench* presumption is a trend of which the Court should jump on the bandwagon.  Defendants ignore that Judge Dein's ruling based on a thorough analysis of the binding precedent in this Court, and that Judge Saris had also engaged in a thorough analysis of the binding law and held that the *Moench* presumption does not apply, at least at the pleading stage.  There have been no binding legal developments that justify overturning Judge Saris's decision,   the law of this case.[2]

Defendants also suggest that even if the *Moench* presumption is not applicable, Plaintiff still does not meet the pleading standard (Defs. Obj. at 17-18).  They ignore the proposed Second

---

[1] Judge Dein recommended that Plaintiff not be permitted to proceed with the other proposed claims. Certain of those recommendations are subject to objections filed by Plaintiff.

[2] Under law of the case doctrine "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Hocking v. United States*, 2011 U.S. Dist. LEXIS 35926 at, *12-13 (D. Mass. April 11, 2011), (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).  "[A] legal decision made at one stage of a criminal or civil proceeding should remain the law of that case throughout the litigation, unless and until the decision is modified or overruled by a higher court," and "binds . . . a successor trial judge who

Amended Complaint's enhanced allegations that carry Plaintiff far over the threshold.

Finally, in a desperate measure to delay facing responsibility for their cavalier handling of the retirement savings of [present and past] State Street employees, Defendants suggest that if all of their other arguments fail, the Court should certify this action for immediate appeal pursuant to 28 U. S. C. § 1292(b).  (Defs. Obj. at 18-20).  There is no sound reason for the First Circuit to be burdened with revisiting a legal issue it has already addressed twice in the past seven years and made its intentions known with respect to the application of *Moench* at the pleading stage.

## II. THE RECOMMENDATION THOROUGHLY AND PROPERLY ANALYZED PLAINTIFF'S WELL PLED PRUDENCE CLAIM

The Recommendation thoroughly analyzed the relevant factors that need to be considered in the context of a motion to amend.  The Court acknowledged the discretionary nature of its authority, the mandate to freely grant such amendment and that "futility", the only factor asserted by Defendants which could defeat the motion, is governed by the standards for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  Recommendation at 22.  It also acknowledged the latest authority regarding a motion to dismiss, *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), noting that allegations that are "mere conclusory statements" are not entitled to "an assumption of truth" and that the complaint must state "a plausible claim for relief".  *Ashcroft*, 129 S. Ct. at 1950. The Recommendation also cited the binding authority in stating that "an amendment will not be deemed futile unless the well-pleaded facts, taken as true and viewed in favor of the plaintiff, fail to support 'a plausible entitlement to relief.'" *Rodriguez-Ortiz v. Margo Careibe, Inc.*, 490 F.3d 92, 95 (1st Cir. 2007) (quoting, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007)).

---

steps in to complete a pending case." *United States v. Moran*, 393 F.3d 1, 7 (1st Cir. 2004).

The Recommendation set forth the correct standard for the conduct of ERISA fiduciaries, that they are required to "use the 'care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.'" *Bunch v. W.R. Grace & Co.*, 555 F.3d 1, 7 (1st Cir. 2009).  The Recommendation, citing the relevant First Circuit authority, stated that Defendants' conduct must be evaluated considering the "totality of the circumstances" and not whether "[t]he odds of plaintiffs succeeding on their breach of fiduciary claims against the  . . . defendants might be very long," Recommendation at 4, (citing, *Bunch,* 555 F.3d at 7; *Lalonde v. Textron, Inc.,* 369 F.3d 1, 7 (1st Cir. 2004)).

The Recommendation provided a thorough analysis of whether the *Moench* presumption should apply at this stage of the litigation, including discussion regarding the various circuits that have "followed the Third Circuit in adopting the *Moench* presumption."  Recommendation at 27.  The Recommendation pays considerable attention both to Judge Saris' previous analysis of the issue and to the First Circuit's previous consideration of *Moench*, particularly in its application at the pleading stage and that the First Circuit continues to emphasize "further record development [as] . . . essential to a reasoned elaboration of that which constitutes a breach of fiduciary duty in this context." *Kenney v. State Street Corp.,* 694 F. Supp. 2d 67, 74 (D. Mass. 2010) ("Kenney I")*,* (quoting, *Lalonde,* 369 F.3d at 6*).*  Judge Dein noted a key fact distinguishing *Moench* that it "arose in the context of a motion for summary judgment.[3]  Recommendation at 28.

The Recommendation addressed the issue of how the size of the conduit operation compared to the rest of the Company impacts whether Plaintiff should be able to bring the

---

[3] That *Moench* arose in the context of summary judgment should at least make the issue of the *Moench* presumption moot at this point, subject to a revisitation at summary judgment stage.

prudence claim (Recommendation at 30) and discussed the import of the Tangible Common

Equity ratio or ("TCE")[4] and how it would have been affected if State Street had consolidated

the conduits, but determined that such issues as "the financial health of the entire operation can

only be resolved after further development of the factual record."  Recommendation at 31.

The Recommendation also addressed Defendants' assertions that "the risks associated

with the conduits cannot support an imprudence claim because State Street's sponsorship of the

conduits was a business strategy that had been part of the Company's ongoing operation for

years."  Recommendation at 31.  The Recommendation explained that the question is not

whether it was prudent for State Street to sponsor the conduits but whether Defendants' conduct

was appropriate with  respect to their role as fiduciaries to Plan members (citing *In re Am. Int'l*

*Group, Inc. ERISA Litig., II*, 2011 WL 1226459, at * 7 (S.D. N.Y. Mar. 31, 2011)).

Importantly, the Recommendation discussed the plausibility of Plaintiff's allegations and

that the plausibility of the complaint does not depend upon showing that State Street should have

consolidated the conduits earlier. Recommendation at 32, (quoting Def. Opp. Mem. at 26-27).

The Recommendation sets the record straight that Plaintiff is not asserting that State Street

should have consolidated the conduits sooner but rather that because State Street was exposed to

potentially huge losses if consolidation occurred, the defendants knew or should have known that

it was no longer prudent for the Plan to invest in the Company's stock.   Recommendation at 33.

 The Recommendation noted that the stock drop rather than being "the "basis for the claim of

imprudence, as Defendants characterize plaintiff's allegations, consistent with *Bunch*, was

---

[4]   Judge Dein found that because State Street's TCE ratio would have fallen below 3% had
consolidation occurred in certain quarters during the Class period, the "question whether the
conduit business posed an extraordinary risk to the financial health of the entire operation" is a
factual issue not for determination at this stage.  Recommendation at 31.

correctly "a" factor.  Recommendation at 33, (citing *Bunch*, 555 F.3d at 7).

The Recommendation noted that other factors, such as a comparison of State Street stock performance compared to its peers and the S&P 500 are factors that should be considered but only as part of a fuller analysis after the parties have had an opportunity to engage in discovery. Recommendation at 33-34, (citing *Bunch*, 555 F.3d at 10) and noting that *Bunch* recognizes "the importance of record development of the facts" in ERISA fiduciary duty cases.

The Recommendation also discussed some of the many "red flags" that are alleged in the Second Amended Complaint, noting the wide reporting of a "crisis in the commercial-paper market", concern about State Street's exposure to the conduits which comprised 17% of the Company's total assets, that State Street had the most exposure to the conduits among its European and American peers, that there was "turmoil in the credit market" which caused 'severe problems" for other sponsors of commercial paper conduits and that there had been adverse impact already on State Street due to concerns about its sponsorship about the conduits. Recommendation at p. 36.The Recommendation also rejected Defendants' assertion that the claim should be rejected because no one could have "predicted the extent of market forces on the conduit assets over the course of 2007 and 2008, the growth in unrealized losses, or the market's adverse reaction to the increase in unrealized losses in the fourth quarter of 2008." Recommendation at 37, (citing Def. Opp. Mem. at 29-30).  As the Recommendation pointed out, the allegations are the markets were in such turmoil as early as August 2007, that "prudent fiduciary would not take the risk of investing a participant's retirement fund in State Street stock that was so exposed to the market turmoil."  Recommendation at 37, (citing Plaintiff Reply Mem. at 19).

In sum, the Judge Dein properly concluded that the allegations set forth in plaintiff's

proposed Second Amended Complaint are adequate to state a claim against the defendants for breach of the duty of prudence.  Recommendation at 4.

## III.   DEFENDANTS' OBJECTIONS TO RECOMMENDATION

### A.   Defendants Improperly Characterized Judge Dein's Impression of Plaintiff's Second Amended Complaint

Defendants' twist the Recommendation to create a misleading impression that Judge Dein sustained the prudence claim despite serious reservations. A fair reading of the Recommendation does not support that view.  For example, defendants disingenuously contend, without a citation to the Recommendation, that Judge Dein "repeatedly expressed skepticism about the claim based on State Street's extensive conduit disclosure, the Company's record financial results and the comparatively strong performance of State Street's stock during the global recession."  Defs. Obj. at 2.  Plaintiff can only guess to what Defendants may be referring. Perhaps the comment about Judge Dein's comment regarding   State Street's "extensive disclosure" is a reference to footnote 2 on page 10 of the Recommendation where in Judge Dein referenced that Plaintiff alleged misrepresentations and omissions, that the court would not evaluate the specific representations and a note that "State Street did make a great number of disclosures concerning the conduits."[5]  But even if that was what they defendants' had in mind, it does not provide a basis to   assert that Judge Dein did not firmly believe the prudence claim should be sustained.[6]

------

[5]  Of course quantity alone does not equate with adequacy.

[6] Defendants fare no better in suggesting skepticism on the part of Judge Dein due to the company's record financial results or stock performance during the global recession, unless a 60% one day drop during the period of the recession is considered a comparatively strong performance.  Although Judge Dein does state that "Kenney's ability to prove his case *may turn out* to be impossible", that is, dependent upon the factual record developed during the discovery phase, something a judge could say about  virtually every case.

**B. Defendants' Cherry Picked Portrayal of Facts Fails to Warrant Overturning the Recommendation**

Although Defendants' Objections contain what appears to be a factual section, the descriptions of the conduits, are either distorted argument or unsupported by the record.  For example, Defendants state that, "Although State Street was a diversified, global financial services company, Plaintiff has focused in isolation one small part of its business, the conduit program." Defs. Obj. at 4.  Defendants cite "R & R [Recommendation] at 8."  Yet, there is nothing on that page of the Recommendation about Plaintiff focusing in isolation on the conduits or that the conduits were one small part of State Street's business. While the conduits did not comprise the majority of State Street's business, they were an indisputably significant to its business.  That fact is made plain by, among other things,  for the quarter ended June 30, 2009, State Street reported a quarterly extraordinary loss of $3.68 billion, that resulted in a reported loss for that quarter of $7.12 per share due to the consolidation of the conduits, compared to reported earnings for the three month period a year earlier of $1.35 per share.[7]  Docket Entry 98. ¶ 45.[8]

**C. Defendants Incorrectly Object to Judge Dein's Findings that the Second Amended Complaint Plausibly Pleads that State Street Stock was an Imprudent Investment**

Defendants assert that Judge Dein should have dismissed the prudence claim based on an application of *Twombly*.  Defs. Obj. at 7.  Defendants state that Judge Saris considered the same prudence claim now before the Court.  *Id.*  But Defendant are completely wrong in describing the claim as the same as in the earlier complaint.  Judge Dein looked at the prudence claim in the

---

[7]  The Second Amended Complaint also alleges that "the aggregate amount of assets held by the conduits totaled $28.76 billion.

[8]  The unprecedented one-day change of State Street stock on July 20, 2009 following the announcement of the addition to the unrealized loss, also belies Defendants' attempt to make it

Second Amended Complaint very carefully and as discussed, *infra*, cited many facts (none of which were in the earlier complaint) related to the riskiness of the investment in State Street stock and she correctly came to the conclusion that the claim was plausible and well pled.. Judge Dein referenced much of the factual detail plead such as the commercial paper crisis turmoil in the credit market, problem of other sponsor of conduits, and the adverse impact on State Street due to concerns about sponsorship of the conduits. Recommendations at 35.

Defendants assert that Judge Dein was in error because "nothing of consequence has changed [since Judge Saris's ruling]. Defs. Obj. at 7. They refer to what they characterize as the dispositive record facts remaining the same but fail to acknowledge that while history does not change, the facts alleged in the Second Amended Complaint have changed. With their usual spin, defendants make assertions about contentions t not found in either version of the complaint. They reference extraneous information which may only be meaningful, if at all, when considered in the context of a full and fair record or expert testimony, and well beyond the scope of this motion. For example, while defendants refer to "record financial results during the putative class period" *Id*.,[9] they are only referring to considerations such as reported revenue and income, which does not address consideration of the health of the company as a whole when the facts about the conduits, and their increasing unrealized losses, and the deteriorated market conditions for conduit assets, are taken into account. This is an area for which discovery and

appear that the conduits were not a significant part of the State Street's business.

[9] On January 20, 2009, State Street issued a press release announcing fourth quarter and full year 2008 results. It stated, among other things, that revenue in the fourth quarter of 2008 was $2.673 billion, up 8% from $2.479 billion in the fourth quarter of 2007, which was the fourth quarter of 2008's contribution to the full 2008 record year. Yet the State Street stock price plummeted almost 60% in one day. Obviously, the market knew that something else other than its record results were what was driving the evaluation of State Street to a large degree that something else was the conduit. *See* January 20, 2009 Press Release. Levine Decl. Ex. A.

possibly expert testimony is needed to fully and fairly develop.

Defendants also refer to State Street's paying "substantial dividends." *Id.* Absent from

the discussion is the fact that on February 5, 2009, State Street filed a Form 8-K with the SEC

announcing that it was reducing its quarterly dividends (which had been $.24 per share) to $.01

per share in order to improve its TCE ratio, as part of a comprehensive plan to improve TCE

ratio.  Defendant Logue commented on the reason for the reduction by stating, "State Street has

among the highest regulatory capital ratios in the industry; however, we are implementing a plan

to alleviate investors' concerns about our *pro forma* TCE ratio,[10] if State Street were to

consolidate the asset-backed commercial paper conduits that we administer.  These are

extraordinary times that require swift action. . . "[11]  Levine Decl. Ex. B.

Defendants also state as a reason that Plaintiff's claim is not plausible was that "State

Street passed the Federal Reserve's stress test.  Defs. Obj. at 7.  But they do not provide the

results of all tests of State Street's capital administered by various government regulators and

they ignore the import of the fact that its TCE ratio would have been 1.6% as of March 31, 2008

(well below the 3% threshold) assuming the conduits had been consolidated,  but for a $2.5

billion equity offering on June 3, 2008.  (Document 98, ¶ 81).[10]  Even with a June 2008 equity

offering, the *pro* forma TCE ratio was a frightening 1.05% on January 21, 2009.  (Document 98,

¶ 88).

Defendants also claim that State Street's stock matched the S&P 500 and beat the S&P

---

(Reference to Levine Decl. __ is to the Declaration of Mark Levine submitted herewith).

[10] The *pro forma* TCE ratio referenced by Logue is assuming conduit consolidation.

[11]  Interestingly, although State Street was at the time of the filing of that Form 10-K over one month closer to the time that it consolidated the conduits, Logue also noted that , " . . the unrealized loss in our conduit assets has improved modestly.  Thus, it is likely that the consolidation did not result from a significant increase in unrealized losses compared to the

Financial Index as a reason that Plaintiff's complaint is not plausible.  Def. Obj. at 7.  But if that were true during some period of time, expert testimony is needed to address, among other things, the propriety of the indexes selected, consideration of how State Street would have performed if saddled with highly volatile, speculative  conduits, the period of time during which to measure stock performance, and how Defendants' and Plaintiff's expert measure damages would undoubtedly differ, taking into account the loss formula recognized by the First Circuit in *Evans v. Akers*, 534 F.3d 65, 74 (1st Cir. 2008) ("Losses to a plan from breaches of the duty of prudence may be ascertained, with the help of expert analysis, by comparing the performance of the imprudent investments with the performance of a prudently invested portfolio.")[12]

Defendants also cite their purported "exemplary disclosures" about its conduits and other risks.[13]  Defs. Obj. at 7.  The absence or presence of disclosures and their quality, however, is not in itself determinative of whether imprudence claims has been plausibly stated.[14]

---

increase in unrealized losses announced in January 2009.

[12]   Defendants cite *In re Huntington Bancshares, Inc. ERISA Litigation*, 620 F. Supp. 842 (S.D. Ohio), as an example of a dismissal when the price of the stock recovered substantially.  But *Huntington* oversimplifies the stock recovery issue and lacked red flags.

[13] The characterization of their disclosures as "exemplary" appears to be their own.  Although the adequacy of these disclosures was not addressed in Judge Dein's recommendation, these are the same disclosures which Judge Saris previously reviewed and had the following comment: "The 'conduits' are complex, non-transparent investment vehicles, and the 'financial models' used to determine when and whether to consolidate their assets and liabilities onto State Street's balance sheet are not well explained by the SEC filings."  Document 56 at 16-17.

[14]   Although lacking clarity, Defendants also seem to suggest that the previous complaint was stronger because Judge Saris left open the possibility of Plaintiff being able to allege improper accounting. According to them it is now clear that the accounting was proper and thus without that avenue of wrongdoing, a prudence claim could not be sufficiently alleged. Defs. Obj. at 7-8. First, Defendants have no basis for suggesting that the propriety of State Street's accounting treatment is clear.  Plaintiff not having sufficient access to non-public facts to plead improper accounting at this juncture is not synonymous with Plaintiff believing that the accounting was appropriate.  Moreover, alleging that the accounting was improper is not a pre-requisite to alleging a prudence claim.

Defendants argue that Judge Dein erred in allowing the prudence claim to go forward because the Second Amended Complaint does not pass *Twombly's* plausibility test.  Defs. Obj. at 7-8.  Yet, Defendants ignore the analysis performed by Judge Dein which she cited many facts that supported a finding of plausibility. Surprisingly the cases that Defendants cite in support are *In re Huntington Bancshares Inc, ERISA Litigation.* 620 F. Supp. 2d at 852, which has a parenthetical suggesting that a theory that is only "conceivable" but not "plausible" is not enough, (which is true by definition), and *Yates v. Dilday*, 2011 WL 797366, at *2 (S.D. Ill. Feb. 28, 2011).  The parenthetical defendants cite from *Yates*, that "record development could yield evidence to support plaintiff's claims, but *Twombly* compelled dismissal", is a higher standard than *Twombly* which held that imposing a plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the improper conduct]".[15]  *Twombly,* 550 U.S.

---

[15] The Eighth Circuit gave consideration to the burden placed on plaintiffs in ERISA actions in view of *Twombly* and reversed a dismissal cautioning about setting the bar too high:

> Congress intended that private individuals would play an important role in enforcing ERISA's fiduciary duties--duties which have been described as "the highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982). In giving effect to this intent, we must be cognizant of the practical context of ERISA litigation. No matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences. Thus, while a plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit, we must also take account of their limited access to crucial information. If plaintiffs cannot state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer. These considerations counsel careful and holistic evaluation of an ERISA complaint's factual allegations before concluding that they do not support a plausible inference that the plaintiff is entitled to relief.

*Braden v. Wal-mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009)

at 556.  The Supreme Court in *Twombly* also cautioned*,* "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.*.  Thus, even if the facts necessary to sustain the claim are not alleged but may discovered, *Twombly* does not mandate dismissal.

Defendants discuss the four non-exclusive factors that Judge Dein mentioned in the context of *Bunch's* requirement of consideration of the "totality of the circumstances" in considering whether a prudence claim is adequately pleaded; plan structure, disclosure to plan Participants, stock price and the nature and extent of the challenges facing the company. Recommendation at 9-10.[16]  In discussing "the nature and extent of the challenges facing the company", defendants again attempt to downplay the significance of the conduits, downplay the importance of TCE ratio and in particular the *pro forma* TCE ratio and try to introduce, out of context, the Federal Reserve's so called "stress test".  Defs. Obj. at 10-11. However, as discussed *infra* they completely ignore State Street's reduction of its dividend in February, 2009, from $.24 per share to $.01 per share to boost its *pro forma* TCE ratio "to alleviate investor concerns about our *pro forma* TCE ratio."  Such a reduction is extraordinary and not consistent with State Street's reflexive specious cry that unrealized losses were of no consequence to the market's assessment of the value of State Street stock.  As acknowledged by State Street's own CEO and by the market unrealized losses were very meaningful to State Street.

---

[16] Defendants suggest that the plan structure which had about twenty investment options including an ESOP that permits up to 25% of the investment in State Street stock cuts against a finding of sufficiency of allegations of lack of prudence.  But the structure is fairly typical and if that structure defeated a claim, it could be impossible to plead a claim.  Similarly, the disclosures of a certain level of risk do not immunize Defendants from liability.  Judge Saris's issue with the disclosures speaks volumes about the lack of transparency.  Nor should the Court accept Defendants' over simplistic assertions of stock price, particularly in a case like this where there is a one day stock drop of almost 60% timed with a news release that focuses heavily on the dramatic increase in unrealized losses of the conduits.

Defendants do credit Judge Dein in requiring the Plaintiff to plead the existence of "red flags" but the red flags cited by Judge Dein that Defendants discuss were not red enough for their taste.  In fact, Judge Dein discussed red flags that she found in the complaint for over three pages, and notes the first one from the beginning of the class period as a warning of a "crisis in the commercial-paper market," the high-level of exposure of State Street's conduits, State Street's disclosure about increasing liquidity risk and rising unrealized losses.  Recommendation at 35.  There are many others cited in the complaint that were not in the brief due to lack of space, such as the re-examination by the Financial Accounting Standard Board reported in February 2008 of off balance sheet assets such as conduits because of the large magnitude of the role they played in the credit crunch (Document 98, ¶ 77), the concern publicly expressed by Senator Jack Reed about off balance sheet assets (Document 98, ¶ 78),  issues regarding the dire financial condition of insurers of so many of State Street's conduits (Document 98, ¶¶ 72-74) and the fact that the equity that State Street held in the conduits was only about 1/10 of 1%. (Document 98, ¶ 63).

## IV.   DEFENDANTS ARE NOT ENTITLED TO A PRESUMPTION OF PRUDENCE

### A.  Even if *Moench* Applies It Should Provide Limited Protection to Defendants

Defendants suggest that there is a link between Congress' goals of encouraging ESOPs with a presumption of prudence in favor of fiduciaries, but the ERISA legislative history makes clear that there is no free lunch given to ESOP fiduciaries.  As the Committee Report accompanying the original House legislation (H.R. 90-1867) (1968) explained:

> . . . this proviso [exempting the diversification requirement for employer stock] was not intended to insulate such plans from other applications of the prudent man rule. Thus, if investment by a profit sharing plain in the employer is completely unsound the prudent man rule should operate to preclude such investment.  All that the proviso says is that if the investment in the employer is sound, no profit sharing or

similar plan shall be precluded by virtue of a diversification requirement from investing part or all of the plan funds in the stock or securities of the employer to the extent the plan so requires.

H.R. Rep. 90-1867, at 7-8 (1968).  Despite Congress' insistence on holding ERISA fiduciaries to the higher standard the term "*Moench* presumption" is thrown around by defendants as if to suggest that if it is a free pass for them out of the case.  But a deeper look reveals that even its application would not provide the level of protection that Defendants have lead a court to believe.  The *Moench* court understood that fiduciaries are not free to do as they pleased and recognized that "ESOPSS are covered by ERISA's stringent requirements." *Moench*, 62 F.3d at 569.  The *Moench* case was decided in the context of a review of summary judgment.      The *Moench* court obviously believed that the district court had not held the fiduciaries feet to the fire because it actually vacated the granting of summary judgment.  The holding of the *Moench* presumption is merely that "in the first instance, an ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision.  However, the plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer securities.  62 F.3d at 571.  *In Moench*, the Third Circuit explained how the presumption may be overcome.  "The plaintiff may introduce evidence that 'owing to circumstances not known to the settler and not anticipated by him [the making of such investment] would defeat or substantially impair the accomplishment.'"  *Moench*, *Id.*, (quoting, *Restatement (Second) §227 comment g*).

In *Moench*, the particular evidence submitted in opposition to summary judgment included a precipitous decline in the price of the company's stock and the investment committee's knowledge of the company's impending collapse.  *Id.*  But while that was the evidence submitted in opposition to summary judgment, nowhere does the *Moench* court suggest

that any particular stock price decline or a pending collapse of the company is necessary. [17] And

it does not address in any way what facts need to be alleged in a complaint to defeat a motion to

dismiss.  And why would it?  It was drafted to address a motion for summary judgment which

was heard after discovery.  The question that is central to *Moench* is in looking at the evidence

submitted, have circumstances changed "to such an extent that the Committee properly could

effectuate the purposes of the trust only by deviating from the trust's direction or by contracting

out investment decision to an impartial outsider.  Id.  That question remains to be answered.

### B.  The *Moench* Presumption Is Never Warranted

The U. S. Department of Labor ("DOL") has taken the position that a resumption of

prudence is inconsistent with ERISA's language and purpose.[18]  As set forth in the brief

submitted by the DOL in the pending appeal in *Gearren v. McGraw-Hill Co*, Nos. 10-792-cv,

10-934-cv (2d Cir.), Levine Decl. Ex. C.

> [N]othing in ERISA supports the judicial creation of a special presumption of
> prudence in favor of employer stock.  As written, the statutory duty to exercise "care,
> skill, prudence and diligence" is neither qualified by a presumption in favor of stock
> purchases nor limited by the settlor's expectations.  Instead, ERISA imposes an
> exacting standard of care on fiduciaries which is unaltered for individual account
> plans, except that such plans are exempt from the duty to diversify and from the
> "prudence requirement (only to the extent that it requires diversification)" with
> respect to the acquisition or holding of employer securities 29 U. S. C. § 1104(a)(2).
> Thus, except for an exemption from the duty to diversify, ERISA fiduciaries of plans

---

[17] Clearly there is nothing in the record to suggest, as Defendants do that Plaintiff has conceded
that Plaintiff can not overcome the *Moench* presumption if it were applied at this stage of the
litigation.  Even cases that have adopted the *Moench* presumption have not required allegations
that the company was on the verge of collapse.  *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d
243, 256 (5th Cir. 2008) ("We do not hold that the Moench presumption applies only in the case
of investments in stock of a company that is about to collapse."); *Edgar v. Avaya, Inc.*, 503 F.3d
340, 349 n.13 (3d Cir. 2007) ("We do not interpret Moench as requiring a company to be on the
brink of bankruptcy before a fiduciary is required to divest a plan of employer securities.").

[18] An agency's construction of a statutory scheme that it administers is entitled to considerable
weight.  *See Delta Traffic Serv., Inc. v. Transtop, Inc*, 902 F.3d 101, 109 (1st Cir. 1990).

allowing for employer stock purchases re subject to ERISA's exacting standard of fiduciary care, which requires far more than fiduciaries refrain from arbitrary conduct.

Not only is the *Moench* presumption unsupported by ERISA's text, there are good policy reasons for this Court to decline to adopt such a presumption . . . [i]n defined contribution plans, such as the Plans at issue here, workers' retirement benefits are not guaranteed, but instead are entirely dependent on the investments earnings on contribution . . . . In this context, strict application of ERISA's other protections, including its standards of prudence and loyalty, are all the more necessary.

## C. The *Moench* Presumption Is Not Appropriate at the Pleading Stage

Almost one and a half years ago, in the context of a motion to dismiss, Judge Saris, the then sitting District Court judge, considered the question of whether the defendants in this case are entitled, at least at this stage of the litigation, to the *Moench* presumption. Although there may be one or two circuits that have adopted the *Moench* presumption at the time of Judge Saris' writing, Judge Saris acknowledged that other circuits had adopted it.[19]  So while Defendants here urge this Court to find reason to depart from Judge Saris' opinion because of the bandwagon effect, the bandwagon, albeit perhaps slightly smaller, was already considered by Judge Saris, and was considered again by Judge Dein.  As Judge Dein did, Judge Saris considered the First Circuit cases that addressed the issue.  Judge Saris considered *LaLonde*, which addressed the granting of a motion to dismiss, which did not have the benefit of discovery.  Judge Saris also discussed the only other First Circuit case that discussed the application of *Moench*. Although *Bunch*, a summary judgment case, was decided five years after *Lalonde*, Judge Saris noted that the First Circuit "reaffirmed *Lalonde's* proposition that record development, not "hard-and-fast" rules, should govern ERISA fiduciary duty cases.  Document 56 at 14.  Judge Dein was

---

[19] Like most circuits that have adopted the *Moench* presumption, the Ninth Circuit in *Quan v. Computer Sciences Corp.,* 623 F.3d (9th Cir. 2010), was considering the issue in the context of a summary judgment motion which was conducted after discovery was completed.

cognizant of the fact that *Moench* was decided at the pleading stage and that several circuits had

adopted it, including the Ninth Circuit which had not adopted it when Judge Saris issued her

decision.  But Judge Dein held onto the fact that "as recently as 2009 [in *Bunch*], the First Circuit

reiterated its resistance to the application of "hard-and-fast rule[s] in ERISA fiduciary duty cases.

 Recommendation at 29, (citing *Bunch*, 555 F.3d at 10).  Thus, even if the First Circuit were

amenable to the *Moench* presumption, there is no reason to apply it at the pleading stage.[20]

Even if the *Moench* presumption were to be adopted by this court or the First Circuit, it

should not apply at this stage of the litigation. Of the courts that held that it applies to ERISA

cases, many courts have held that it is not applicable at the motion to dismiss stage.  See, *In re

Goodyear Tire & Rubber Co. ERISA Litig*., 438 F.Supp.2d 783, 793 (N.D. Ohio 2006*); In re

Ferro Corp. ERISA Litig*., 422 F.Supp.2d 850, 860 (N.D. Ohio 2006); *In Re: Diebold ERISA

Litigation*, 2008 U.S. Dist. LEXIS 42746, at 29 (N. D. Ohio May 28, 2008); In re Regions

Morgan Keegan ERISA Litig., 692 F. Supp. 2d 944, 953 (W. D. Tenn. 2010) ("It is improper, on

a motion to dismiss, for the court to apply evidentiary presumptions"); *In re Pfizer ERISA Litig*,

2009 U.S. Dist. LEXIS, 2263745, at * 33 (S.D.N.Y. Mar. 30, 2009) (application of the *Moench*

presumption at the pleading stage would be inappropriate"); *In re Polaroid*, 362 F. Supp. 2d

---

[20] Frequently, in ERISA cases, defendants try to persuade the Court to apply *Moench* because
otherwise without such protection, the fiduciaries may feel compelled to sell stock which in itself
could lead to a lawsuit if the stock subsequently recovers.  *Moench* itself was cognizant of that
possibility.  *62 F.3d at 572.*  In *Bunch*, the trustee was sued for selling securities.  However, it
was at the summary judgment stage that relief was granted based on a full record including
discovery of reasonable financial analysis of experts hired by the trustee.  Clearly, if the First
Circuit favored putting the burden on plaintiffs at the pleading stage whether in a stock retention
or sale situation and had concerns about causing these defendants to engage in discovery, it
could have dismissed the plaintiff's complaint long before permitting significant discovery.  It
could have created a presumption in connection with fiduciaries that sell stock but it did not do
so. *LaLonde*, which rejected dismissal of a complaint at the pleading stage, and *Bunch*, which
resulted in continuation of the case until discovery was conducted is consistent with the First
Circuit not applying the *Moench* presumption, at least at the pleading stage.

461, 475 (S.D.N.Y. 2005) (whether a plaintiff can overcome the presumption of prudence is an

evidentiary question, ill suited to resolution on a motion to dismiss").

### D. Plaintiff Has Alleged Facts that Are Sufficient to Rebut the Presumption if this Court Rules that it Applies

Even if, as Defendants urge, the *Moench* presumption were applied here, the Complaint

alleges facts sufficient to overcome the presumption.  Courts adopting the presumption have held

that a plaintiff may rebut it "by showing that a prudent fiduciary acting under similar

circumstances would have made a different investment decision."  *Kuper v. Iovenko*, 66 F.3d

1447, 1459 (6th Cir. 1995).  The proposed Second Amended Complaint satisfies this standard.

Defendants assert that overcoming the presumption requires showing that the Company

was in danger of immediate collapse. Defs. Obj. at 17.  This is incorrect.  *Moench* nowhere

suggested, let alone held, that allegations of imminent collapse were necessary to overcome the

presumption. Indeed the Third Circuit itself expressly rejected that reading of *Moench*.  *Edgar v.

Avaya, Inc*, 503 F.3d 340, 349 n. 13 (3d Cir. 2007).  As demonstrated above, there are numerous

ways that company stock can become imprudent.[21]  Likewise, numerous other courts have held

that it is not necessary to plead imminent collapse in order to overcome the presumption.  *See In

re Syncor ERISA Litig.*, 516 F.3d 1095, 1102 (9th Cir. 2008) ("A prudent man standard based

only upon a company's alleged financial viability does not take into account the myriad of

---

[21] *See e.g.*, *Taylor*, 678 F. Supp. 2d at 638-39 (allegations that defendant knew of company's high risk conduct which exposed it to extraordinary risks was sufficient to rebut the presumption); *In re Merck & Co., Inc. Vyoterin ERISA Litig.*, 2009 U.S. Dist. LEXIS 78681, at *7 (D.N.J. Sept. 1, 2009) (finding that plaintiffs alleged sufficient facts to overcome the presumption where plaintiffs alleged that defendants knew, or should have known that sales of Merck's top drug would be decimated upon disclosure of new study results); *In re Sears Roebuck & Co., ERISA Litig.*, 2004 U. S. Dist LEXIS 3241, at *12-13 (N.D. Ill. March 3, 2004) (denying motion to dismiss where fiduciaries knew or should have known of financial problems).

circumstances that could violate the standard"); *Taylor v. KeyCorp*, 678 F. Supp. 2d 633, 639

(N.D. Ohio 2009) (rejecting defendants' argument that plaintiffs must allege "extreme

circumstances such as Key was no longer viable or that it could not weather the economic crisis

in order to overcome the presumption"); *In re Ford Motor Co. ERISA* Litig, 590 F. Supp. 2d 883,

908 (E.D. Mich. 2008) (rejecting "imminent collapse" standard because "[s]uch a standard is

akin to requiring monitoring of a patient only after he is dead"); *In re Goodyear*, 438 F, Supp 2d

at 792-94 ("Plaintiffs need not plead that Goodyear was on the brink of an impending collapse . .

.to overcome the *Moench* presumption").

Defendants make the factual argument that State Street record financial results and

payment or a dividend summarily trumps Plaintiff's right to move forward with the case.  Defs.

Obj. at 2-4.  Such fact intensive argument that relies on facts found no where in the Second

Amended Complaint are inappropriate on a motion to amend.  As discussed *infra*,  the Second

Amended Complaint is chocked full of facts asserting that during the class period, State Street

stock was too risky for fiduciaries to permit continued investment and/or holding,

## V.   THE COURT SHOULD NOT CERTIFY THIS CASE FOR IMMEDIATE APPEAL

While the parties do not disagree as to the general criteria that need to be satisfied in

order to merit certification and an opportunity for an interlocutory appeal, the parties disagree on

whether this case, should the Court overrule Defendants' objections, be certified for immediate

appeal.  Certification "should be used sparingly and only in exceptional circumstances,"

*McGillicuddy v. Clements*, 746 F.2d 76, 77 n.1 (1st Cir. 1984) (citation omitted), and such

appeals "are, accordingly, hen's-teeth rare." *Camacho v. P.R. Ports Auth.*, 369 F.3d 570, 573 (1st

Cir. 2004).  *See also*, *Matamoros v. Starbucks Corporation*, 2011 U.S. Dist. LEXIS 60946 (D.

Mass. May 27, 2011) (declining to certify action where dire circumstances not presented).  In

fact, certification is so rare that in *Lawson v. FMR LLC*, 724 F. Supp. 2d 167, 168 (D. Mass. 2010), although Judge Woodlock certified that case, he noted that it was the first time in twenty four years as a United States District Judge that he found a case appropriate to certify.

The cases cited by Defendants in support of certification are not applicable.  In *Dahl v. Bain Capital Partners, LLC*, 597 F. Supp. 2d 211, 213 (D. Mass. 2009), the court declined to certify the case because it found that there were no substantial grounds for a difference in opinion.  Although in *Dahl*, the relevant questions were settled by prior Supreme Court rulings, here the issue is settled by the mandate in *LaLonde and Bunch* calling for "record development", which to the extent that there could be a serious difference of opinion of the settled law, it would be, if at all, at the summary judgment stage, not at the pleading state.  That would undermine another prong concerning certification because even if the First Circuit believed it need to clarify *LaLonde* and *Bunch,* it would not lead to the termination of the action but at most it would  result in termination only after completion of discovery and a granting of summary judgment. Similarly, *Philip Morris*, *Inc. v. Harshbarger*, 957 F. Supp. 327 (D. Mass.), *aff'd*, 122 F.3d 58 (1st Cir. 1997), does not support certification.[22]   See also*, United Airlines v. Gregory*, 716 F. Supp. 2d 79, 93 (D. Mass. 2010) (rejecting defendants' plea to certify on grounds that it was a case of first impression because it was not based on unique or pivotal question of law).

Finally, even if the First Circuit were to hold that the *Moench,* presumption applied at the pleading stage, which would be contrary to its previous holdings, that would likely not result in termination of the case for at least two reasons.  First, it would be likely that the First Circuit would remand the action back to the District Court to determine if the plaintiff was able to

---

[22] See also*, Muniz v. Winn*, 462 F. Supp. 2d 175 (D. Mass. 2006) (special circumstance existed since petitioners were imprisoned possibly resulting in mooting of claims.)

overcome the presumption.  Second, Defendants' suggestion that it would terminate the action

does not take into account the possibility that the Court will sustain Plaintiff's objections which

would lead to a continuation of the case in the District Court and thus the certification would not

enhance the efficiency of the judicial process.

## VI.    CONCLUSION

It is respectfully requested that Defendants' objections be overruled and the petition for

certifying the action for immediate appeal should be denied.


Dated:  June 16, 2011

Respectfully Submitted:

**STULL, STULL & BRODY**

By:/s/ Mark Levine

Mark Levine
Patrick K. Slyne
6 East 45th Street
New York, NY 10017
Telephone: (212) 687-7230
Facsimile:  (212) 490-2022

**TODD & WELD LLP**
Kevin T. Peters (BBO #550522)
28 State Street
Boston, MA 02109
Telephone: (617) 720-2626
Facsimile:  (617) 227-5777

**MAJOR KHAN, LLC**
1120 Avenue of the Americas
Suite 4100
New York, NY 10036
Tel: (646) 546-5664
Fax: (646) 546-5755

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I, Mark Levine, hereby certify that a copy of the foregoing document, filed through the

ECF system on June 16, 2011, was sent electronically on that date to the registered participants

as identified in the Notice of Electronic Filing.

Dated: June 16, 2011

/s/ Mark Levine_____