# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS U. KENNEY, *on Behalf of Himself and a Class of Persons Similarly Situated*,     Plaintiff,     v.     STATE STREET CORPORATION, et al.     Defendants. | Civ. Action No. 1:09-cv-10750-DJC |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION ON MOTION TO AMEND

Jeffrey B. Rudman (BBO No. 433380)
William H. Paine (BBO No. 550506)
John J. Butts (BBO No. 643201)
Timothy Perla (BBO No. 660447)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000
(617) 526-5000 (facsimile)

June 15, 2011

Defendants respectfully submit, pursuant to Fed. R. Civ. P. 72(b)(2), their Response to Plaintiff's Objections ("Pl.'s Objections") to Chief Magistrate Judge Dein's Report and Recommendation on Plaintiff's Motion For Leave to Amend ("R&R").[1]

## PRELIMINARY STATEMENT

The proposed Second Amended Complaint ("Complaint") does not state a viable disclosure claim under ERISA (Counts II and III) because Plaintiff does not identify an actionable misrepresentation and does not allege detrimental reliance.  Judge Dein correctly dismissed these claims based on the latter, and accordingly did not address the former.  *See* R&R at 41-43.  In response, Plaintiff now relies on *dicta* from a recent Supreme Court case to argue incorrectly that the Complaint states a disclosure claim for equitable (but not other) relief.  Pl.'s Objections at 4-6 (*citing CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011)).  In fact, Plaintiff cannot state a disclosure claim under ERISA absent reliance and, in any event, has not stated such a claim because he has not identified any disclosure defect.

## ARGUMENT

I. **JUDGE DEIN PROPERLY RECOMMENDED DISMISSAL OF ALL DISCLOSURE CLAIMS (COUNTS II AND III).**

A. **Judge Dein's Recommendation Is Consistent with the Law of This and Other Circuits.**

As Judge Dein concluded, the law in this and other Circuits requires a plaintiff seeking to bring an ERISA claim for negligent misrepresentation or nondisclosure to plead and prove detrimental reliance.  *See* R&R at 38 ("plaintiff must prove 'significant or reasonable reliance'" for a negligent misrepresentation claim) (quoting *Kenney v. State Street Corp.*, 754 F. Supp. 2d 288, 291 (D. Mass. 2010) (Saris, J.)); *id.* at 42 ("At least two Circuit Courts of Appeals have

---

[1]    On June 1, 2011, Defendants filed (Docket No. 142) their Objections to the R&R.  For brevity, Defendants incorporate herein by reference that document, including the background section.  As Defendants stated, they endorse the majority of Judge Dein's R&R and object only to her recommendation that the Court allow Plaintiff to assert his claim that State Street's Employee Stock Ownership Plan was an imprudent investment.

ruled that detrimental reliance is an element of an ERISA claim for breach of fiduciary duty based on material omissions."); *Mauser v. Raytheon Co. Pension Plan for Salaried Employees*, 239 F.3d 51, 55 (1st Cir. 2001) (participants must "demonstrate[] significant or reasonable reliance" on the complained-of document in an ERISA claim to recover under ERISA § 502(a)(3)); *Bell v. Pfizer, Inc.*, 2010 WL 3385949, at *8 (2d Cir. Aug. 30, 2010) ("[W]here a plaintiff asserts a breach of fiduciary [duty] claim based on a material misrepresentation or omission, the plaintiff must establish detrimental reliance.").

The Complaint makes no attempt to plead detrimental reliance on the challenged SEC filings. Nor could Plaintiff do so. Judge Saris entered summary judgment for Defendants on Plaintiff's prior negligent misrepresentation claim after Plaintiff admitted at his deposition that he had never read the statement at issue. *See* Dkt. No. 122, at 3–4.[2]

### B.    *CIGNA Corp. v. Amara* Does Not Alleviate Kenney's Obligation to Plead Reliance.

The *dicta* in *CIGNA* upon which Plaintiff now relies does not excuse his obligation to plead reliance. *CIGNA* was a suit "about the terms of a plan" by a beneficiary against a plan fiduciary. 131 S. Ct. at 1879. The fiduciary amended the plan's method for calculating benefits in a way that materially reduced the benefits to which participants were entitled, and the District Court determined after trial that the defendants had made inadequate disclosure of the amendment in violation of three of ERISA's disclosure obligations. *Id.* at 1874-75 (defendants had violated § 102(a) (requiring notice of plan terms and changes thereto), § 104(b) (failing to accurately descibe participants' benefits in summary plan descriptions), and § 204(h) (requiring notice of significant reduction in benefit accruals)). The Supreme Court held that the equitable

---

[2]    In his First Amended Complaint, Plaintiff falsely alleged that he relied upon the challenged statement. *See* Dkt. No. 9, ¶ 80. Judge Saris dismissed his nondisclosure claims on other grounds so Plaintiff's non-reliance on the SEC filings that purportedly omitted information was not at issue on Defendants' motion for summary judgment.

remedy of contract reformation did not apply to these established violations of ERISA, and remanded the case for further proceedings.

In *dicta*, the Court also discussed "general principles" concerning equitable remedies, without applying them. *Id.* at 1880-82 (leaving it to the District Court or the Court of Appeals to determine whether those principles were properly applicable to the facts in *CIGNA*). But regardless of what relief the District of Connecticut or Second Circuit may ultimately decide to grant in that case, those principles make no difference here because absent reliance Plaintiff cannot plead a plausible entitlement to *any* relief, equitable or otherwise.

*CIGNA* and Article III's standing requirements both obligate a plaintiff to plead and prove that a violation of law caused him actual harm. *See Lujan v. Defender of Wildlife*, 504 U.S. 555, 560 (1992) (standing requires injury in fact and "a causal connection between the injury and the conduct complained of"); *CIGNA*, 131 S. Ct. at 1881 (equitable remedy may not be awarded absent causation of actual harm). Detrimental reliance is the only plausible way in which Plaintiff could do so in this case, because his claims are based on alleged misrepresentations and omissions about the risk of investing in State Street's ESOP. *See, e.g.*, *Wright v. Medtronic, Inc.*, 2011 WL 31501, *4 (D. Minn. Jan. 5, 2011) ("This Court cannot fathom . . . how a loss could have resulted from a misrepresentation made to a Plan participant unless that participant read and relied on the misrepresentation."); *Brieger v. Tellabs, Inc.*, 2009 WL 720975, at *1 (N.D. Ill. March 16, 2009) (when "a plaintiff base[s] an ERISA breach of

fiduciary duty claim solely on the defendant's affirmative misrepresentations, it would be difficult, if not impossible, to establish causation without proving detrimental reliance").[3]

It makes no sense for Plaintiff to assert that he was harmed by statements he never saw. For example, Plaintiff asserts that Defendants violated ERISA because the Summary Plan Description ("SPD") incorporated by reference an SEC filing that contained a statement by a non-defendant (Mr. Logue) to the effect that the credit quality of the conduits' assets "remained high."[4] Even if some "information-related" ERISA violations might theoretically cause harm in the absence of reliance, *cf.* CIGNA, 131 S. Ct. at 1882, it makes no sense for Plaintiff to claim harm from statements about the Company's conduits that he did not read and, therefore, could not have affected any investment decision he made with regard to the ESOP.

Plaintiff's theory is that he was harmed when he paid more for ESOP units than he otherwise would have paid because when State Street made this statement to market participants it caused the price of State Street's stock to be artificially inflated. Compl. ¶¶ 148, 158. That cannot serve as the basis for an ERISA claim under *CIGNA* or otherwise because Plaintiff cannot pursue an ERISA disclosure claim for statements State Street made to the market as they were not made in a fiduciary capacity. *See Pegram v. Herdich*, 530 U.S. 211, 226 (2000) (participants can only pursue an ERISA claim where the defendant "was acting as a fiduciary (that is, was

---

[3]    In a variety of information-related contexts indistinguishable from that presented here, Courts have long demanded reliance to show causation of harm. For example, Section 10(b) of the Securities Exchange Act does not expressly require proof of reliance; but the Supreme Court nevertheless concluded that its implied private right, which resembles "common-law tort actions for deceit and misrepresentation," requires reliance. *See Dura Pharm.*, 544 U.S. at 343 (analogizing "[j]udicially implied private securities fraud actions" to the "common law of deceit," which "subjects a person who fraudulently makes a misrepresentation to liability for pecuniary loss caused to one who justifiably relies upon that misrepresentation"). Other courts have done the same in other claims predicated on misrepresentations. *See, e.g., Poulos v. Caesars World, Inc.*, 379 F.3d 654, 664 (9th Cir. 2004) (holding in civil RICO case that "reliance provides a key causal link" and that "misrepresentations standing along have little legal significance"); *In re NM Holdings Co., LLC*, 622 F.3d 613, 619 (6th Cir. 2010) (requiring proof of reliance to demonstrate causation in a professional-negligence case, because, even though "reliance is not per se an element of professional negligence, proof of reliance is necessary here in order to show that Deloitte's allegedly deficient audits were the cause in fact of Venture's tenuous financial position and resulting bankruptcy").

[4]    That statement did not warrant that the market value of the conduits' assets would not decline. Indeed, the statement made clear that the market value had declined by more than $1 billion over the last year.

performing a fiduciary function) when taking the action subject to complaint"); *Gearren v. McGraw Hill Cos.*, 690 F. Supp. 2d 254, 272 (S.D.N.Y. 2010) ("[S]tatements concerning a company's financial condition become subject to ERISA fiduciary duties only if they are made in an ERISA fiduciary capacity, which means that the statements are made by the plan administrator and are intentionally connected to statements regarding a plan's benefits."). Because State Street's statements to the market were not made in a fiduciary capacity, any action by market participants in response to such statements were not caused by any violation of ERISA.

As one court recently held in rejecting the same type of allegation that Plaintiff makes here:

> Medtronic may have lied in its SEC filings, those lies may have caused the market to overvalue Medtronic stock, and thus Medtronic may be liable to plaintiffs (and other investors) under the securities laws. But this is an ERISA action, not a securities-fraud action. To recover under ERISA, plaintiffs must show that a separate, additional, *fiduciary* communication to the Plan participants caused harm to the Plan. Even assuming (without deciding) that Medtronic's SEC filings became fiduciary communications when they were incorporated into the SPD, there is no allegation that these communications had any impact on the price of Medtronic stock.

*Wright*, 2011 WL 31501 at *5 (emphasis added); *see In re Citigroup ERISA Litig.*, 2009 WL 2762708, *23 (S.D.N.Y. Aug. 31 2009) ("SEC filings do not, standing alone, have anything to do with ERISA. Thus, if Citigroup filed 'materially false and misleading' 8-Ks, 10-Qs, and 10-Ks—and if [its CEO] signed those filings knowing them to be false—Citigroup and [its CEO] may have run afoul of the federal securities laws, but Citigroup and [its CEO] did not violate ERISA."). Plaintiff's disclosure claims are futile because he has not—and cannot—plausibly claim that any statement Defendants made to the Plan's participants had any effect on the price of State Street's stock.

**C.      In Any Event, Plaintiff Fails to Plead An Actionable Misrepresentation or Omission.**

The absence of reliance was not the only fatal defect in Plaintiff's disclosure claims. There are a number of others which were unnecessary for Judge Dein to address after she correctly determined that the absence of reliance was dispositive of Plaintiff's disclosure claims.

Most notably, State Street's conduit disclosures were not deficient. Judge Dein summarized in some detail State Street's exemplary disclosures to investors (including Plan participants) about the risks State Street faced with respect to its asset-backed commercial paper conduits. In the context of these disclosures, the challenged statements were neither false nor misleading, and Plaintiff's claims reduce to the inactionable assertion that State Street failed to predict something that it had no duty (or ability) to predict—the extent to which the market value of the conduit assets would decline markedly in the fourth quarter of 2008.

More specifically, State Street disclosed that it had sponsored asset-backed commercial paper conduits, which were entities separate from State Street that issued commercial paper (a form of short term debt that paid a relatively small amount of interest to those who purchased the paper from the conduits) and used the money to buy debt securities (that paid a relatively larger amount of interest to the conduits). *See, e.g.*, R&R at 8 (citing Butts Aff. Ex. G at 11, 71). Accordingly, if the operation of the conduits went according to design, the conduits would earn the difference between the two sets of interest payments, most of which would be paid to State Street for its services in managing the conduits. *See, e.g.*, R&R at 9 (citing Butts Aff. Ex. G at 11).

State Street also disclosed, as the global credit crisis worsened, that the conduits (and therefore State Street) faced considerable risks due to changes in the market values of the conduits' assets. *See, e.g.*, R&R at 11 (citing Butts Aff. Ex. G at 73). This was because even

though the conduits' assets (all debt securities in which the issuer of the security promised to pay a specified amount of principal and interest to the conduits) would continue to generate enough cash to keep the conduits' obligations in balance—unless a substantial number of the issuers of the assets defaulted on their payment obligations—State Street might be required to buy conduit commercial paper, buy conduit assets, or, under the accounting rules, consolidate the conduits' assets onto its own balance sheet. *See, e.g.*, R&R at 11–12 (citing Butts Aff. Ex. G at 73–74).

More specifically, State Street disclosed regularly from the time that the market value of the conduits assets' began to decline that in fact such a decline had occurred; the amount of the decline; that State Street was responsible for providing liquidity to the assets in certain circumstances, which might occur by buying assets at their purchase price (instead of market value) or buying conduit commercial paper; and that if State Street made such purchases or was required under the accounting rules to consolidate the conduits' balance sheets with State Street's own balance sheet, it would be required to take a charge to its earnings in amounts disclosed to the public at the end of each quarter. *See generally* R&R at 11–12 (citing Butts Aff. Exs. G, I, M, P). State Street also disclosed, however, that if it took such a charge and there was not payment default, the charge would be recouped in full (plus interest) over time. *See, e.g.*, Butts Aff. Ex. I at 34. Consistent with the fact that there had been no such default (and, indeed, with the fact that there never was any significant level of defaults), and consistent with a wide variety of information about the assets (such as significant credit enhancement, type of issuer, type of debt at issue, very high ratings that were much higher than those for assets of conduits sponsored by State Street's peers), State Street considered the conduit assets to be high quality. *See, e.g.*, Butts Aff. Ex. P at Ex. 99.1 at 2.

Judge Dein did not overlook these disclosures. She noted that:

- "State Street regularly issued statements about the conduit business in its SEC filings." R&R at 4.

- "State Street did make a great number of disclosures concerning the conduits, and, despite the plaintiff's challenges, State Street's public filings will be cited extensively in this decision." *Id.* at 10 n.2.

- State Street disclosed to investors the circumstances under which it could be required to purchase assets from the conduits. *Id.* at 11.

- "State Street disclosed those declines [in the market value of conduit assets] each quarter throughout the Class Period in its financial statements filed with the SEC. For example, but without limitation, the Company warned investors that if it had been required to consolidate the conduits' assets and liabilities onto its consolidated balance sheet, it would have recognized an after-tax loss of about $215 million as of September 30, 2007. By December 31, 2008, the Company revealed that there were $3.56 billion in after-tax net unrealized losses associated with the assets held by State Street-sponsored conduits." *Id.* at 15 (internal citations omitted).

- "[T]he filings disclose the liquidity, credit and consolidation risks described above with respect to the conduits." *Id.* at 18.

- State Street disclosed the risk that State Street would be required to provide liquidity to the conduits. *Id.* at 10.

- State Street disclosed "credit enhancements" it provided to the conduits. *Id.* at 10.

- State Street disclosed risks in the event of a conduit asset default. *Id.* at 11.

- State Street disclosed risk that, if it was required to purchase a conduit asset with a fair market value below cost, it would be required to recognize a loss. *Id.* at 11.

- State Street disclosed the risk that in the future it would be required to consolidate the conduits in its financial statements; disclosed that consolidation could result in losses; and "repeatedly described the potential magnitude of any such losses." *Id.* at 12.

- State Street "acknowledged the potential losses that would have occurred if it had been required to consolidate the conduits into its consolidated financial statements." *Id.* at 16.[5]

In this context, the statements Plaintiff challenged are neither false nor misleading, and they did not violate any duty of disclosure (including any ERISA-based duty). *See* Defs.' Opp'n

---

[5]     Judge Dein also observed deficiencies in Kenney's allegations. *E.g.*, R&R at 41 n.6 (observing that Kenney cites supposed "omissions" in State Street's SEC filings that were actually disclosed, and cites the disclosures in State Street's 2007 Form 10-K as an example); *id.* at 41 n.6 (observing that Kenney "ignores all the disclosures of risk made throughout State Street's SEC filings").

to Mot. to Amend ("Opp'n Br.") (Dkt. No. 102), at 13–21; Defs.' Sur-Reply in Opp'n to Mot. to

Amend ("Sur-Reply") (Dkt. No. 117), at 11–17.  To the contrary, and as Judge Dein noted, State

Street repeatedly disclosed the status and risks of the conduits.  State Street also expressly noted

that the assets' values had declined, might further decline, and the risks to which State Street was

exposed by declines.  There was nothing meaningful left for State Street to disclose in advance

of further declines (the fact of which were promptly disclosed when they occurred).

Moreover, the statements challenged as negligent misrepresentations were not ERISA-

related.  They had nothing to do with the Plan.  Thus, any deficiency in them was not a violation

of ERISA.  *See Pegram*, 530 U.S. at 226 ("In every case charging breach of ERISA fiduciary

duty . . . the threshold question is . . . whether [the defendant] was acting as a fiduciary (that is,

was performing a fiduciary function) when taking the action subject to complaint."); Opp'n Br.

at 11–13 (citing cases holding that SEC filings are not fiduciary statements regardless of whether

they were shared with participants).

With respect to omissions, ERISA only obligates a fiduciary to provide the specific

information set forth in 29 U.S.C. §§ 1021–31.  *Id.* at 21.  Plaintiff does not challenge

Defendants' compliance with those obligations, but rather asserts that ERISA's general fiduciary

standards silently impose a duty on a company to disclose in real time all material information

about its business just because, consistent with public policy as expressed by Congress, it offers

an ESOP.  There is no such duty.  *See Bd. of Trs. of the CWA/ITU Negotiated Pension Plan v.*

*Weinstein,* 107 F.3d 139, 146-47 (2d Cir. 1997) ("[W]e think it is inappropriate to infer an

unlimited disclosure obligation on the basis of [ERISA's fiduciary standards] that say nothing

about disclosure."); Opp'n Br. at 21–22; Sur-Reply at 13–15.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court adopt Judge Dein's

Report and Recommendation, except for her recommendation on Plaintiff's First Claim, and that

the Court deny the Motion to Amend.

**DEFENDANTS**,

By their attorneys,

 _/s/ Jeffrey B. Rudman_____
Jeffrey B. Rudman (BBO No. 433380)
William H. Paine (BBO No. 550506)
John J. Butts (BBO No. 643201)
Timothy Perla (BBO No. 660447)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
E-mail:  jeffrey.rudman@wilmerhale.com

## CERTIFICATE OF SERVICE

I, Jeffrey Rudman, hereby certify that this document filed through the ECF system will be

sent electronically to the registered participants as identified on the Notice of Electronic Filing

(NEF) dated June 15, 2011.

/s/  Jeffrey Rudman_____
Jeffrey Rudman