# Nos. 10-792-cv (L), 10-934-cv (CON)

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

Patrick L. Gearren, Mary Sullivan, et al.,
on behalf of themselves and a class of persons similarly situated,
Plaintiffs-Appellants

v.

The McGraw-Hill Companies, Inc., et al.
Defendants-Appellees.

───────────────────────────

**On Appeal from the United States District Court
for the Southern District of New York**

───────────────────────────

**BRIEF OF AMICUS CURIAE HILDA L. SOLIS,
SECRETARY OF THE UNITED STATES DEPARTMENT OF LABOR
IN SUPPORT OF APPELLANTS REQUESTING REVERSAL**

───────────────────────────

**M. PATRICIA SMITH**
  Solicitor of Labor

**TIMOTHY D. HAUSER**
  Associate Solicitor for Plan Benefits Security

**ELIZABETH HOPKINS**
  Counsel for Appellate and Special Litigation

**MICHAEL SCHLOSS**
Senior Trial Attorney
U.S. Department of Labor
Office of the Solicitor
200 Constitution Ave., NW  Room N4611
Washington, D.C.  20210
(202) 693-5603

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................iv

STATEMENT OF IDENTITY, INTEREST AND
AUTHORITY TO FILE ................................................................. 1

STATEMENT OF THE ISSUES.................................................... 2

STATEMENT OF THE CASE....................................................... 2

SUMMARY OF ARGUMENT .................................................... 10

ARGUMENT ........................................................................ 11

    I.    The District Court Erred in Dismissing these Cases Based
        On A Presumption That The Fiduciaries Acted Prudently
        In Allowing The Plans To Purchase Employer Stock At
        Allegedly Inflated Prices .......................................... 11

        a.    A presumption of prudence is contrary to ERISA's
            statutory language ……………………………………11

        b.    Dismissal based on the Moench presumption
            is unwarranted given the factual allegations in
            these cases ……………………………………………18

        c.    No presumption of prudence should be applied at the
            pleading stage ……………………………………..21

    II.    The Fiduciaries Had A Duty Not To Mislead Plan Participants
        And To Correct Misperceptions By Disclosing Information
        Necessary To Protect Retirement Benefits……………………23

III.    The Plaintiffs' ERISA Claims Are Not Foreclosed By
        Possible Security Claims Based Upon The Same
        Wrongdoing ................................................................................. 24

CONCLUSION ................................................................................................ 31

# TABLE OF AUTHORITIES

Federal Cases: ..................................................................................................Page

Ashcroft v. Iqbal,
    566 U.S. 129 (2009) ........................................................................................7

Ballone v. Eastman Kodak Co.,
    109 F.3d 117 (2d Cir. 1997)................................................................. 22, 23

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)........................................................................................7

Bixler v. Cent. Penn. Teamsters Health & Welfare Fund,
    12 F.3d 1292 (3d Cir. 1993)..........................................................................24

Bunch v. W.R. Grace & Co.,
    555 F.3d 1 (1st Cir. 2009) ....................................................................... 13 n.2

Canale v. Yegen,
    782 F. Supp. 963 (D.N.J. 1992) ...................................................................20

Central States, SE & SW Areas Pension Fund v. Cent. Transp., Inc.,
    472 U.S. 559 (1985)................................................................................ 6, 12

Chao v. Merino,
    452 F.3d 174 (2d Cir. 2006)........................................................................19

Coleman v. Interco Inc. Divisions' Plans,
    933 F.2d 550 (7th Cir. 1991) .......................................................................12

Condus v. Howard Sav. Bank,
    781 F. Supp. 1052 (D.N.J. 1992) .................................................................27

Devlin v. Empire Blue Cross & Blue Shield,
    274 F.3d 76 (2d Cir. 2001)................................................................... 22, 23

DiFelice v. U.S. Airways, Inc.,
    497 F.3d 410, 420 (4th Cir. 2007) ...............................................................12

Donovan v. Bierwirth,
    680 F.2d 263 (2d Cir. 1982)........................................................................15

Federal Cases--Continued:...................................................................Page

Donovan v. Bierwirth (II),
    754 F.2d 1049 (2d Cir. 1985) ........................................................18

Edgar v. Avaya,
    503 F.3d 340, (3d Cir. 2007)................................................... 7, 22

Gearren v. McGraw-Hill Co., Inc.,
    No. 08 Civ. 7890 (RJS),
    2010 WL 532315 (S.D.N.Y. Feb. 10, 2010).............................. 2, 3 n.1, 7, 22

Glaziers & Glassworkers Union Local 252 Annuity Fund v. Newbridge Sec., Inc.,
    237 F.3d 371 (4th Cir. 2001) .........................................................23

Griggs v. E. I.Dupont de Nemours & Co.,
    237 F.3d 371 (4th Cir. 2001) .........................................................23

Harzewski v. Guidant,
    489 F.3d 799 (7th Cir. 2007) ................................................... 28, 29

Henry v. Champlain Enter., Inc.,
    445 F.3d 610 (2d Cir. 2006)...........................................................19

Hull v. Policy Mgmt.Sys. Corp.,
    2001 WL 1836286 (D.S.C. Feb. 9, 2001)................................... 9, 25

In re Citigroup ERISA Litig.,
    No.07 Civ 9790,
    2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009) ............................................7, 8

In re Dynegy, Inc. ERISA Litig.,
    309 F. Supp. 2d 861 (S.D.Tex. 2004) ............................................26

In re Elec.Data Sys. Corp., ERISA Litig.,
    305 F. Supp. 2d 658 (E.D.Tex. 2004)...........................................21

In re Enron Corp., Sec., Derivative &ERISA Litig.,
    284 F. Supp. 2d 511 (S.D.Tex.. 2003)................................... 21, 22

Federal Cases--Continued: ..................................................................................Page

In re Ford Motor Co., ERISA Litig.,
    590 F. Supp. 2d 883 (E.D.Mich. 2008)...........................................................17

In re Halpin,
    566 F.3d 286 (2d Cir. 2009)...........................................................................19

In re Honeywell Int'l ERISA Litig., No. 03-1214,
    2004 WL 3245931 (D.N.J. June 14, 2004)......................................................22

In re Ikon Office Solutions, Inc. Sec. Litig.,
    86 F. Supp. 2d 481 (E.D. Pa. 2000) ...............................................................22

In re Masters Mates & Pilots Pension Plan and IRAP Litig.,
    957 F.2d 1020 (2d Cir. 1992) ........................................................................29

In re Sprint Corp. ERISA Litig.,
    388 F. Supp. 2d 1207 (D. Kan. 2004)...................................................... 20, 22

In re Syncor ERISA Litig.,
    516 F.3d 1095 (9th Cir. 2008) ................................................................ 13 n.2

In re The Goodyear Tire & Rubber Co. ERISA Litig.,
    438 F. Supp. 2d 783 (N.D. Ohio 2006)...................................................... 20, 21

In re WorldCom, Inc.,
    263 F. Supp. 2d 745 (S.D.N.Y. 2003) ........................................... 8, 26, 27 n.3

In re XCEL Energy Inc., Sec.,Derivative &  ERISA Litig.,
    312 F.Supp.2d 1165 (D. Minn. 2004)...................................................... 21, 22

In re Xerox Corp. ERISA Litig.,
    483 F.Supp.2d 206 (D. Conn. 2007)......................................................... 27 n.3

J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l,
    534 U.S. 124 (2001)............................................................................... 27, 28

John Blair Commc'ns, Inc. Profit Sharing Plan v. Telemundo Group, Inc. Profit
    Sharing Plan,
        26 F.3d 360 (2d Cir. 1994)......................................................................15

Federal Cases--Continued: ...................................................................Page

Kirschbaum v. Reliant Energy, Inc.,
    526 F.3d 243 (5th Cir. 2008) ............................................. 8, 13 n.2

Krishna v. Colgate Palmolive Co.,
    7 F.3d 11 (2d Cir. 1993)...................................................17

Kuper v. Iovenko,
    66 F.3d 1447 (6th Cir. 1995) ........................................ 12, 13, 17

Laborer's Nat'l Pension Fund v. N. Trust Quantitative Advisors, Inc.,
    173 F.3d 313 (5th Cir. 1999) ........................................... 13 n.2

LaLonde v. Textron, Inc.,
    369 F.3d 1 (1st Cir. 2004)..................................................22

Lauder v. First Unum Life Ins. Co.,
    284 F.3d 375 (2d Cir. 2002).............................................17

Martin v. Feilen,
    965 F.2d 660 (8th Cir. 1992) ............................................19

Moench v. Robertson,
    62 F.3d 553 (3d Cir. 1995)............................................ 7 & passim

Morton et. al., v. Mancari,
    417 U.S. 535 (1974)......................................................28

Mullins v. Pfizer,
    23 F.3d 663 (2d Cir. 1994).............................................23

Pugh v. Tribune Co.,
    521 F.3d 686 (7th Cir. 2008) .......................................... 13 n.3

Rankin v. Rots,
    278 F. Supp. 2d 853 (E.D. Mich. 2003).................................. 21, 22

Federal Cases--Continued:.................................................................................Page

Rogers v. Baxter Int'l, Inc.,
    521 F.3d 702 (7th Cir. 2008) ........................................................................28

Secretary of Labor v. Fitzsimmons,
    805 F.2d 682 (7th Cir. 1986) (en banc) ...........................................................1

Shea v. Esensten,
    107 F.3d 625 (8th Cir. 1997) ........................................................................23

Skidmore v. Swift & Co.,
    323 U.S. 134 (1944)......................................................................................19

Stein v. Smith,
    270 F. Supp. 2d 157 (D. Mass. 2003) ...........................................................21

Steinman v. Hicks,
    352 F.3d 1101 (7th Cir. 2003) ................................................................ 13 n.2

Sullivan v. McGraw-Hill Co., Inc., et al.,
    No. 09 Civ. 5420 (RJS),
    2010 WL 532315, (S.D.N.Y. Feb. 10, 2010)............................................ 3 n.1

Swierkiewicz v. Sorema N.A.,
    534 U.S. 506 (2002)......................................................................................21

Varity Corp. v. Howe,
    516 U.S. 489 (1996)................................................................ 1, 23, 24, 25, 26

State Case:

Globe Woolen Co. v. Utica Gas & Elec. Co.,
    224 N.W. 483 (N.Y. Nov. 19, 1918) .............................................................23

Federal Statutes:

    Employee Retirement Income Security Act of 1974 (Title I),
        29 U.S.C. § 1001 et, seq:

        29 U.S.C. § 1001(b) ..............................................................................17

Federal Statutes--Continued: .............................................................................Page

29 U.S.C. § 1002(34) .........................................................16
29 U.S.C. § 1104 ......................................................... 14, 15
29 U.S.C. § 1104(a)(1) ................................................ 22, 25
29 U.S.C. § 1104(a)(1)(A) .................................................12
29 U.S.C. § 1104(a)(1)(B) .................................................12
29 U.S.C. § 1104(a)(1)(D) ............................................. 6, 17
29 U.S.C. § 1104(a)(2) ........................................ 3, 9, 14, 15
29 U.S.C. § 1105(a)(2) .......................................................29
29 U.S.C. § 1106(a)(2) .......................................................15
29 U.S.C. § 1106(a)(1)(E) ...................................................15
29 U.S.C. § 1107(a) ...........................................................16
29 U.S.C. § 1107(a)(1) .......................................................16
29 U.S.C. § 1107(d)(3) .........................................................3
29 U.S.C. § 1109 ...............................................................29
29 U.S.C. § 1132(a)(2) .......................................................29

15 U.S.C.A. § 78u-4(e)(1) ..................................................29
15 U.S.C.A. § 78u-4(f)(2)(A) ......................................... 29, 30

Miscellaneous:                                                      Page

H.R. Rep. No. 93-553
    reprinted in 1974 U.S.C.C.A.N. 4639 .........................................17

H.R. Rep. No. 93-553
    reprinted in 1974 U.S.C.C.A.N. 4655 .........................................17

Fed. R.App. P. 29(a) .........................................................1, 3

Fed. R.Civ. P.

    8(a).............................................................................21
    12(b)(6) .................................................................. 6, 22

Restatement (Third) of Trusts § 205 cmt. e ..........................................19

Restatement (Second) of Trusts § 173 cmt. c-d (1959) .............................2

Miscellaneous--Continued:                                              Page

Restatement (Second) of Trusts 227 comment g ......................................................21

Department of Labor's Field Assistance Bulletin No. 2004-03 ..............................19

STATEMENT OF IDENTITY, INTEREST AND AUTHORITY TO FILE

As the head of the federal agency with the primary responsibility for Title I of ERISA, the Secretary of Labor has a strong interest in ensuring that courts correctly interpret ERISA.  See Secretary of Labor v. Fitzsimmons, 805 F.2d 682, 692-693 (7th Cir. 1986) (en banc).  Although the district court in this case correctly acknowledged that plan fiduciaries could have a duty under some circumstances to override plan provisions mandating investment in company stock, it nevertheless erroneously dismissed the case on the pleadings based on a presumption that it is prudent to invest in employer stock.  The Secretary has a substantial interest in dissuading this Court from adopting this presumption, particularly at the pleadings stage and, more broadly, from applying such a presumption to a fiduciary's knowing purchases of imprudently risky and overpriced investments.  The Secretary also has a substantial interest in establishing that fiduciaries not be able to evade the duty, recognized by the Supreme Court in Varity Corp. v. Howe, 516 U.S. 489 (1996), to speak truthfully to and deal fairly with plan participants and beneficiaries.  Finally, the Secretary has a strong interest in establishing that ERISA's fiduciary duty to speak truthfully to participants is separate from and in addition to securities law obligations to provide truthful information to investors and potential investors.

The Secretary files this brief as amicus curiae pursuant to her authority under Federal Rule of Appellate Procedure 29(a).

## STATEMENT OF THE ISSUES

1.      Whether the district court erred in dismissing the case on the pleadings based on its conclusion that the defendant fiduciaries were entitled to a presumption under ERISA that they acted prudently by continuing to allow their plans to invest in stock of the sponsoring employer, and that the plaintiffs failed to plead facts plausibly overcoming the presumption.

2.      Whether the district court erred in concluding that the fiduciaries had no duty under ERISA to correct misperceptions that they fostered by disclosing inaccurate information about the company's financial condition to participants whose accounts held company stock.

3.      Whether the district court erred in concluding that the plaintiffs had no ERISA claims against the fiduciaries for incorporating by reference into plan documents the company's allegedly misleading securities filings, because the claims were subsumed by securities laws.

## STATEMENT OF THE CASE

These appeals stem from two putative class actions brought by participants in two defined contribution pension plans (the "Plans") offered by The McGraw-Hill Companies, Inc. and its subsidiaries, including Standard & Poor's.   Gearren v.

2

<u>The McGraw-Hill Cos., Inc.</u>, No. 08 Civ. 7890 (S.D.N.Y. Feb. 10, 2010)[1] Special

Appendix for Appellants ("SPA") 1-20.  The putative class consists of persons who

are current or former participants in the Plans and whose accounts held shares of

McGraw-Hill common stock at any time from December 31, 2006 through

December 5, 2008.  <u>Id.</u>  The defendants include various individuals and entities

associated with the Plans, including the individuals charged with administering the

plans and selecting the investment options offered through the Plans (the

Company's Vice-President of Employee Benefits and members of a Pension

Investment Committee).  <u>Id.</u> at 6-7.  The defendants also include the Company's

Board of Directors, the entity responsible for appointing the other defendants to

their fiduciary positions.  <u>Id.</u>

     The Plans are eligible individual accounts plans ("EIAPs") within the

meaning of ERISA section 407(d)(3), 29 U.S.C. § 1107(d)(3), which ERISA

section 404(a)(2) exempts from ERISA's diversification requirements with respect

to employer stock.  29 U.S.C. § 1104(a)(2).  SPA 7.  The Plans offer participants a

set of investment options, including the McGraw-Hill Companies Stock Fund (the

"Stock Fund").  <u>Id.</u> at 4, 7-8.  The Plans each provide that they "shall offer (a) the

---

[1] The district court's decision resolved two cases, the <u>Gearren</u> action and <u>Sullivan</u> <u>v. The McGraw Hill Companies, Inc., et al.</u>, Case No. 09-5450 RJS (S.D.N.Y.). The court's references to the plaintiffs' allegations are to the <u>Sullivan</u> Complaint, A 1551-1594, which the Secretary cites for this purpose as well.

'Stock Fund' which will be invested primarily in the Common Stock of the

Corporation." <u>Id.</u> at 9.  The Stock Fund permits the fiduciaries to hold cash in

addition to shares of McGraw-Hill Stock "to facilitate withdrawals and transfers."

<u>Id.</u> at 8.

The general thrust of the Complaints is two-fold.  First, the plaintiffs argue

that the defendants breached their duties by "misrepresenting and failing to

disclose material facts to the Participants in connection with the administration of

the Plans."  A 1552, ¶ 3.  Second, the plaintiffs argue that the defendants were

imprudent by, among other things, "allowing the Participants to continue to elect to

invest their retirement monies in McGraw-Hill common stock when it was an

imprudent investment."  <u>Id.</u>

During the class period, the Complaints allege that the defendants issued

summary plan descriptions ("SPDs"), each of which incorporated SEC filings that

the defendants allegedly knew, or should have known, "contained materially false

and misleading information" about its subsidiary, Standard & Poor's  A 1568, ¶ 46.

The Complaints state that McGraw-Hill's filings were the subject of an SEC

investigation, which resulted in findings by the SEC in 2008 detailing "'serious

shortcomings' at Standard & Poor's and criticiz[ing] nondisclosure, poor disclosure

practices, undocumented 'out of model adjustments', and poor oversight of

potential conflicts of interests, among other problems."  A 1575, ¶ 68.

The Complaints allege that, during the class period, McGraw-Hill generated much of its profit from the business of rating mortgage-backed securities.  A 1569, ¶ 52.  Because of this, the defendants, who were also corporate insiders, allegedly knew or should have known that its ratings "were not stable, did not reflect current information, and did not reflect the true risks of [rated] investments."  Id. ¶ 54. The Complaints allege specific evidence of knowledge within McGraw-Hill of the flaws in their own ratings derived from documents released by the SEC and New York State Attorney General's investigative teams in 2008.  A 1572-1578, ¶¶ 66-70.

The documents cited in the Complaints include internal emails by Standard & Poor's employees characterizing the rating system as a "monster" and expressing hope that the employees authoring the emails would be "wealthy and retired by the time this house of cards falters."  Id. ¶¶ 69, 70(d).  Another internal email describes a deal as "ridiculous" and states that "we should not be rating it," to which the response was "we rate every deal" and "it could be structured by cows and we would rate it."  Id. ¶¶ 69, 70(a).  Yet another email from a managing director responds to an employee's request for "collateral tapes" needed to evaluate a loan's riskiness by stating "Any request for loan level tapes is TOTALLY UNREASONABLE!!!  Most investors don't have it and can't provide it. Nevertheless we MUST produce a credit estimate."  Id. ¶ 70(e).

5

The Complaints also specifically allege that Company managers were aware that the Company lacked sufficient staff to properly prepare the ratings being produced:  "[o]ur staffing issues, of course, make it difficult to deliver the value that justifies our fees . . . Just too much work, not enough people, pressure from company, quite a bit of turnover and no coordination of the non-deal 'stuff' they want us and our staff to do."  A 1577, ¶ 70(b).

From the beginning of the class period on December 31, 2006 through the end of the period on December 5, 2008, the price of McGraw-Hill stock declined 64% from $68.02 to $24.23.  SPA 4.  "As a result," the plaintiffs whose accounts were invested in McGraw-Hill stock "lost much of their retirement savings."  <u>Id.</u>

The district court dismissed all of the plaintiffs' claims pursuant to Rule 12(b)(6), without leave to amend.  SPA 20.  At the outset, the court concluded that even though the Plans mandated inclusion of a company stock option, "'trust documents cannot excuse trustees from their duties under ERISA'" and "a named fiduciary retains the ability and discretion to ignore the terms of the plan, at least under certain circumstances."  SPA 10 (quoting <u>Central States, SE & SW Areas Pension Fund v. Cent. Transp., Inc.</u>, 472 U.S. 559, 568 (1985) and citing to ERISA section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D)).

The court held, however, that the fiduciaries' decision to offer McGraw-Hill stock as an investment option was entitled to the presumption of prudence first set

forth in Moench v. Robertson, 62 F.3d 553, 571 (3d Cir. 1995).  SPA 14.  In

reaching this conclusion, the district court followed an earlier decision by another

judge in the Southern District of New York, In re Citigroup, ERISA Litig., Inc.,

No. 07 Civ. 9790, 2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009), which had relied

on the Third Circuit's decisions in Moench and in Edgar v. Avaya, 503 F.3d 340,

347 (3d Cir. 2007).  SPA 10-14.

The district court questioned whether the Moench presumption applied only

as an evidentiary matter or whether it applied at the pleadings stage.  SPA 15.

After noting a split on the issue among other courts, the district court concluded

that, in light of the Supreme Court's recent decisions in Bell Atlantic Corp. v.

Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 566 U.S. 129 (2009),

"[w]hen the presumption applies, the factual allegations in the complaint must

make it plausible that the defendants could not have reasonably believed that

continued adherence to the terms of the plan 'was in keeping with the settlor's

expectation of how a prudent trustee would operate.'"  Id. (citations omitted).

The district court then addressed whether the allegations in the Complaints

were sufficient to sustain that burden.  The court concluded that "Plaintiffs'

allegations of a 64% drop in share price, while significant, does not amount to the

sort of catastrophic decline necessary to rebut the presumption" and "there is 'no

indication' that during the class period, [McGraw-Hill's] 'viability as a going

concern was ever threatened.'"  SPA 16 (citing <u>Citigroup</u>, 2009 WL 2762708, at

*18 (quoting <u>Kirschbaum v. Reliant Energy, Inc.</u>, 526 F.3d 243, 255 (5th Cir.

2008)).  Rather than analyze whether the plaintiffs' specific allegations of

knowledge relating to ongoing misconduct within Standard & Poor's plausibly

stated a claim, the district court concluded that the Complaints failed to provide

"persuasive and analytically rigorous facts demonstrating that reasonable

fiduciaries would have considered themselves bound to divest."  SPA 16 (quoting

<u>Kirschbaum</u>, 526 F.3d at 256).

The district court next considered whether the fiduciaries had an affirmative

duty under ERISA to disclose financial information about the company to the

participants and beneficiaries and concluded that they did not.  SPA 17-18 (citing

<u>Citigroup</u>, 2009 WL 2762708, at *21).  The district court then rejected the

plaintiffs' argument that the Plans' fiduciaries violated their duties under ERISA

not to mislead participants when they incorporated by reference the Company's 10-

K and 10-Q SEC filings, which the fiduciaries allegedly knew or should have

known were misleading, into the SPDs that they provided to participants.  <u>Id.</u>

Relying on a district court ruling in <u>In re WorldCom, Inc.</u>, 263 F. Supp. 2d 745,

760, (S.D.N.Y. 2003), the court concluded that "[a]lthough the SPD incorporates

SEC filings by reference and is part of the Section 10(a) prospectus, those

connections are insufficient to transform those documents into a basis for ERISA

8

claims against their signatories." SPA 18. "Thus," the court concluded, "if any of the Defendants violated securities laws, they will be liable to Plaintiffs in their capacities as shareholders under securities laws; they are not additionally liable under ERISA for the same alleged violations." SPA 19 (citing Hull v. Policy Mgmt. Sys. Corp., 2001 WL 1836286, at *8 (D.S.C. Feb. 9, 2001)).

Not surprisingly, the district court also rejected the plaintiffs' argument that the defendants "are liable under ERISA even if they are found not to have violated securities laws." SPA 19. (emphasis in original). In so doing, the court rejected the plaintiffs' argument that "when a company offers its stock to employees, its disclosure obligations [] are governed by ERISA rather than securities law," holding that such a ruling would "either render much of securities law a dead letter, or (more likely) dissuade employers from offering company stock to employees in the first place, in direct contravention of Congress's objectives when it passed ERISA." Id.

## SUMMARY OF ARGUMENT

I.     ERISA does not support application of a presumption of prudence with respect to employer stock held by a defined contribution plan. ERISA section 404(a)(2) exempts fiduciaries from ERISA's prudence requirement "only to the extent that it requires diversification." There is no textual basis for otherwise relaxing ERISA's strict fiduciary obligations with regard to employer stock and,

given Congress's evident concern with the management of employer stock expressed elsewhere in the statute, the district court's application of a presumption relaxing ERISA's prudence standard was inappropriate.

Even if a presumption of prudence were warranted in some situations, application of such a presumption makes no sense in the context of this case. Here, the plaintiffs allege that the defendants were privy to knowledge that McGraw-Hill stock was an imprudent and overpriced investment in light of the Company's misconduct relating to misleading securities filings that failed to disclose the Company's improper and flawed ratings of mortgage-backed securities. It is never prudent to overpay for plan assets and a presumption to the contrary is wholly unwarranted. In any event, allegations of overpayment are sufficient to overcome any presumption of prudence without regard to the financial viability of the Company.

Furthermore, the presumption is an evidentiary matter, and as such, the plaintiffs are not required to plead facts overcoming it in order to survive a motion to dismiss. Therefore, the court additionally erred in granting a motion to dismiss on the pleadings on this basis.

II.     The district court also erred in holding that the fiduciaries had no duty to correct misperceptions, even allegedly fostered by misleading SEC filings that the fiduciaries provided to participants as part of plan disclosures. The fiduciary

duty of loyalty encompasses both a duty to speak truthfully and an affirmative duty to correct known misperceptions when the truth is necessary to protect the interests of the plan participants and beneficiaries.  The plaintiffs' allegations that the defendants had knowledge, as corporate insiders, of specific, misleading statements in the securities filings that they disseminated to the plaintiffs, sufficiently state a claim for disloyalty under ERISA.

III.    Finally, the district court erred in holding that securities laws trump ERISA.  Although securities laws may inform the types of actions that fiduciaries must take to comply with their duties under ERISA, securities laws do not immunize fiduciaries who knowingly incorporate false SEC filings into participant communications from liability under ERISA.  Nor does the availability of certain remedies for securities law violations preclude participants from enforcing ERISA's more stringent duties and obtaining its broader remedies.

## ARGUMENT

I. THE DISTRICT COURT ERRED IN DISMISSING THESE CASES BASED ON A PRESUMPTION THAT THE FIDUCIARIES ACTED PRUDENTLY IN ALLOWING THE PLANS TO PURCHASE EMPLOYER STOCK AT ALLEGEDLY INFLATED PRICES

a.  A presumption of prudence is contrary to ERISA's statutory language

ERISA requires plan fiduciaries to act prudently, even with respect to employer stock that is mandated by the plan terms.  ERISA provides in section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), that statutory duties imposed by Title I of

ERISA override plan terms to the contrary, as the Supreme Court has recognized.

Central States, 472 U.S. at 568 ("documents cannot excuse fiduciaries from their

duties under ERISA"); see also Kuper v. Iovenko, 66 F.3d 1447, 1457 (6th Cir.

1995) ("a fiduciary may only follow plan terms to the extent that the terms are

consistent with ERISA"); Coleman v. Interco Inc. Divisions' Plans, 933 F.2d 550,

551 (7th Cir. 1991) (noting that when ERISA and plan language diverge, "ERISA

is trumps").

Other subsections of 404 impose upon ERISA fiduciaries the familiar trust

law duties of loyalty and care.  Thus, section 404 requires plan fiduciaries to act

exclusively in the interests of the participants and beneficiaries and exercise the

level of "care, skill, prudence, and diligence … that a prudent man acting in a like

capacity and familiar with such matters would use."  29 U.S.C. §§ 1104(a)(1)(A)-

(B).  Together, these provisions require that fiduciaries follow plan terms to the

extent prudent, even where another course of conduct might also have been

prudent, and, conversely, require that plan fiduciaries not follow plan terms where

it would be imprudent or otherwise violate ERISA to do so.  In other words, only

those plan terms that are otherwise consistent with ERISA be given effect, and

ERISA's requirements, including its prudence and loyalty provisions, cannot be

contractually overridden.  See DiFelice v. U.S. Airways, Inc., 497 F.3d 410, 420

(4th Cir. 2007) (recognizing fiduciary duty to consider "removal or closure of a

company fund" that was mandated with regard to company match); Laborer's Nat'l

Pension Fund v. N. Trust Quantitative Advisors, Inc., 173 F.3d 313, 322 (5th Cir.

1999) (investment manager must disregard plan if investing plan assets as required

by plan would violate its duty of prudence).

Although the district court correctly recognized that the Plan fiduciaries

were not excused entirely from their duties with regard to employer stock, the

court erroneously dismissed the case based on its application of the Moench

presumption. [2]  In Moench, a plan participant sued an ESOP committee for breach

of fiduciary duty based on its continued investment in employer stock when the

employer's financial condition deteriorated.  62 F.3d at 558-59.  The Third Circuit

confirmed that ESOP fiduciaries must, like all fiduciaries, act prudently and loyally

when deciding whether to purchase or retain employer securities under such

circumstances.  Id. at 569.  However, based on the diversification exemption

applicable to such stock, the court held that an ESOP fiduciary that invested plan

assets in employer stock is entitled to a rebuttable presumption that he acted

---

[2]  The First, Fifth, and Sixth Circuits have adopted some version of this
presumption.  See Bunch v. W.R. Grace & Co., 555 F.3d 1, 6 (1st Cir. 2009);
Kirschbaum, 526 F.3d at 254; Kuper, 66 F.3d at 1457.  The Seventh Circuit has not
explicitly adopted it but has cited it with approval and agreed with some of its
reasoning.  Pugh v. Tribune Co., 521 F.3d 686, 701 (7th Cir. 2008); Steinman v.
Hicks, 352 F.3d 1101, 1103 (7th Cir. 2003).  The Ninth Circuit has declined to
adopt it.  In re Syncor ERISA Litig., 516 F.3d 1095, 1102-1103 (9th Cir. 2008).

consistently with ERISA.  Id. at 571.  The court concluded that, to overcome the presumption, the "plaintiff must show that the ERISA fiduciary could not have believed reasonably that continued adherence to the [Plan's] direction was in keeping with the settlor's expectation of how a prudent fiduciary should operate." Id.  The court then reversed summary judgment for the defendants because the facts alleged (precipitous drop in stock prices, committee members' knowledge of the impending collapse, and their conflicted loyalties as corporate insiders and fiduciaries), if proven, could overcome the presumption.  Id. at 572.

Contrary to the Moench court's reasoning, nothing in ERISA supports the judicial creation of a special presumption of prudence in favor of employer stock. As written, the statutory duty to exercise "care, skill, prudence, and diligence" is neither qualified by a presumption in favor of stock purchases nor limited by the settlor's expectations.  Instead, ERISA imposes an exacting standard of care on fiduciaries, which is unaltered for individual account plans, except that such plans are exempt from the duty to diversify and from the "prudence requirement (only to the extent that it requires diversification)" with respect to the acquisition or holding of employer securities.  29 U.S.C. § 1104(a)(2) (emphasis added).  Thus, except for an exemption from the duty to diversify, ERISA fiduciaries of plans allowing for employer stock purchases are subject to ERISA's exacting standard of fiduciary care, which requires far more than that fiduciaries refrain from arbitrary conduct.

14

See Donovan v. Bierwirth, 680 F.2d 263, 272 n.8 (2d Cir. 1982) (ERISA's fiduciary obligations are the "highest known to the law").

Reading section 404(a)(2) to relieve fiduciaries of their duty of prudence generally or otherwise to mitigate this duty with regard to company stock (such as by presuming that fiduciaries have acted prudently in overpaying for shares) is inconsistent with the limitation expressed in the "only to the extent" language highlighted above.  And nothing else in the text of ERISA speaks to any presumption of prudence for employer stock investments by plans or indicates that Congress intended to loosen the obligations of fiduciaries in any other way with regard to such investments.

To the contrary, ERISA contains a number of provisions specifically restricting pension investments in employer securities not applicable to any other type of plan investment.  For example, ERISA section 406(a)(1)(E), one of ERISA's "prohibited transaction" provisions, flatly bars plan investments in employer stock that fails to satisfy specified requirements.  29 U.S.C. § 1106(a)(1)(E).  Likewise, ERISA sections 406(a)(2) and 407(a)(1) make the "holding" of non-compliant employer stock per se illegal.  29 U.S.C. §§ 1106(a)(2), 1107(a)(1), while ERISA section 407(a) also limits the amount of employer stock that non-EIAP plans may hold to 10% of their assets.

These prohibited transaction rules specific to employer stock investments indicate that Congress was quite concerned about the dangers of allowing pension plan investments in employer stock and underscore that Congress did not intend to relieve fiduciaries of any obligation (other than diversification) relating to those investments. The district court's conclusion that Congress intended ERISA to otherwise loosen fiduciary protections with regard to employer stock is inconsistent with these stringent statutory provisions uniquely applicable to employer stock. The district court's adoption of the Moench presumption, with its less stringent standard of prudence, thus is not supported by the plain language of ERISA.

Not only is the Moench presumption unsupported by ERISA's text, there are good policy reasons for this Court to decline to adopt such a presumption. First, in defined contribution plans, such as the Plans at issue here, workers' retirement benefits are not guaranteed, but instead are entirely dependent on the investments earnings on contributions. See 29 U.S.C. §1002(34). As the Moench court noted, non-diverse employer stock investments put "retirement assets at much greater risk than does the typical diversified ERISA plan." Moench, 62 F.3d at 568. In this context, strict application of ERISA's other protections, including its standards of prudence and loyalty, are all the more necessary. Second, the Moench presumption erects just the sort of "jurisdictional and procedural obstacles which in

the past appear to have hampered effective enforcement of fiduciary duties," and

which ERISA was expressly designed to eliminate.  H.R. Rep. No. 93-553, Cong.,

(1973), reprinted in 1974 U.S.C.C.A.N. 4639, 4655; see also 29 U.S.C. § 1001(b).

Third, the focus in Moench and its progeny on whether continued investment in

company stock is consistent with the plan sponsor's intent draws on an inapt

analogy to the law of bequests.  Because ERISA, unlike testamentary trust law, is a

federal law designed to protect the benefits that workers have earned, settlor intent

is not preeminent; instead section 404(a)(1)(D) prohibits fiduciaries from following

plan provisions that would violate Title I of ERISA, including their duty of

prudence.  "ERISA would be a dead letter if fiduciaries could simply replace the

actual standards imposed by ERISA with a less onerous one of their own making."

In re Ford Motor Company ERISA Litig., 590 F.Supp.2d 883, 918 (E.D. Mich.

2008) (citing Kuper, 66 F.3d at 1457).

    For these reasons, this Court should not adopt the presumption created as a

federal common law rule in Moench.  See Krishna v. Colgate Palmolive Co., 7

F.3d 11, 14 (2d Cir. 1993) (recognizing that "courts may develop a federal

common law under ERISA" only "[i]n appropriate circumstances"); see also

Lauder v. First Unum Life Ins. Co., 284 F.3d 375, 378 (2d Cir. 2002) (refusing to

adopt an across-the-board federal common law rule of waiver in ERISA but,

instead, choosing to adopt a case-by-case approach).

   b.   <u>Dismissal based on the Moench presumption is unwarranted given the factual allegations in these cases</u>

In this case, the plaintiffs allege that the fiduciaries omitted material information about the Company's improprieties and provided participants with information that was materially false and misleading at a time when "the market price of McGraw-Hill common stock was artificially inflated." A-1564, ¶ 35. Although, in another suit challenging a fiduciary's failure to follow plan terms, the fiduciary might be put in the difficult position of having to show that following those terms would have been imprudent or otherwise violated ERISA, the defendants undoubtedly could meet that burden under the facts alleged here, since it is never prudent to overpay for a plan asset. Thus, whatever the utility of the <u>Moench</u> presumption in some situations, where, as here, the plaintiffs allege that improper behavior by the Company made the employer stock both overpriced and excessively risky, it is entirely unwarranted to presume that retention of an employer stock fund is prudent.

If these allegations are true, the defendants acted imprudently. <u>See</u>, <u>e.g.</u>, <u>Donovan v. Bierwirth (II)</u>, 754 F.2d 1049, 1054-1055 (2d Cir. 1985) ("Defendants' conduct in these cases caused the plaintiffs to sell too cheaply or to buy too dearly; in such instances, it is appropriate to hold such defendants liable for the difference between what the plaintiffs paid or received in payment and what the stock was in fact worth") (citations omitted). Knowingly overpaying for an asset is never

prudent nor in the interest of plan participants and beneficiaries, a principle that this Circuit has recognized in holding ESOP fiduciaries have the duty to pay "fair market value" for plan assets.  Henry v. Champlain Enterprises, Inc., 445 F.3d 610, 618-19 (2d Cir. 2006); see also Martin v. Feilen, 965 F.2d 660, 671 (8th Cir. 1992); Restatement (Third) of Trusts § 205 cmt. e (noting that if a "trustee is authorized to purchase property for the trust, but in breach of trust he pays more than he should pay, he is chargeable with the amount he paid in excess of its value"); cf. Chao v. Merino, 452 F.3d 174, 182 (2d Cir. 2006) ("If a fiduciary was aware of a risk to the fund, he may be held liable for failing to investigate fully the means of protecting the fund from that risk").

Thus, whether a plan fiduciary pays for stock that is worthless or merely not worth the price, the breach is the same.  In either case, the fiduciary has acted in a fundamentally imprudent (and perhaps disloyal) manner.  Cf. Department of Labor Field Assistance Bulletin 2004-03 (Dec. 17, 2004) ("if a directed trustee has non-public information indicating that a company's public financial statements contain material misrepresentations that significantly inflate the company's earnings, the trustee could not simply follow a direction to purchase that company's stock at an artificially inflated price"); In re Halpin, 566 F.3d 286, 290 (2d Cir. 2009) (applying deference under Skidmore v. Swift & Co., 323 U.S. 134 (1944), to Field Assistance Bulletins).

Moreover, even if such a presumption were to be applied, the allegations here of overpayment, if proven, would necessarily overcome any presumption that the fiduciaries acted prudently.  Such allegations therefore suffice to survive a motion to dismiss, and the plaintiffs need not additionally allege "impending collapse" of the company.  See In re The Goodyear Tire & Rubber Co. ERISA Litig., 438 F. Supp. 2d 783, 794 (N.D. Ohio 2006) (allegations that defendants knew of inflated earnings were sufficient to overcome Moench presumption, and there was no need to plead that the company was on the verge of an impending collapse); In re Sprint Corp. ERISA Litig., 388 F. Supp. 2d 1207, 1224-25 (D. Kan. 2004) (rejecting "impending collapse" standard and holding that allegations that the fiduciaries knew that the company had misleadingly announced a merger that it knew would not receive the required regulatory approvals were sufficient to state a claim of fiduciary breach); cf. Canale v. Yegen, 782 F. Supp. 963, 968 (D.N.J. 1992) (concluding that plaintiffs stated a claim "where plaintiffs have alleged that the value of the [ESOP's] investment [in company stock] was impaired by the plan fiduciaries' own fraudulent and illegal acts").  Certainly, nothing in ERISA supports the notion that the duty of prudence applies only to protect participants from the complete loss of their assets in the wake of a company's collapse, while leaving them otherwise unprotected from the careless management of plan assets.

    c.   <u>No presumption of prudence should be applied at the pleading stage</u>

Even assuming that <u>Moench</u> has some applicability in the context of cases such as these, a presumption by its nature involves a shifting burden of proof, which is an evidentiary matter, not a pleading requirement.  <u>See</u> <u>Moench</u>, 62 F.3d at 571 (to rebut the presumption, "plaintiff may introduce evidence that 'owing to circumstances not known to the settlor and not anticipated by him [the making of such investment] would defeat or substantially impair the . . . purposes of the trust'") (quoting Restatement (Second) of Trusts § 227 comment g).  Thus, there is no reason to insert the <u>Moench</u> presumption into the pleading stage, and doing so is generally inconsistent with the notice pleading requirement of Fed.R.Civ.P. 8(a).  <u>See</u> <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 514 (2002).

For this reason, numerous decisions have correctly refused to apply <u>Moench</u> when deciding a motion to dismiss.  <u>See</u>, <u>e.g.</u>, <u>In re Goodyear</u>, 438 F. Supp. 2d at 794; <u>In re Elec. Data Sys. Corp. "ERISA" Litig.</u>, 305 F. Supp. 2d 658, 670 (E.D. Tex. 2004) ("The Court holds that requiring Plaintiffs to affirmatively plead facts overcoming the ESOP presumption violates Rule 8(a)'s notice pleading requirement . . . . Thus, the Court rejects . . . Defendants' argument that Plaintiffs must plead facts rebutting the ESOP presumption."); <u>In re XCEL Energy, Inc. Sec., Derivative & "ERISA" Litig.</u>, 312 F. Supp. 2d 1165, 1179-80 (D. Minn. 2004); <u>Stein v. Smith</u>, 270 F. Supp. 2d 157, 172 (D. Mass. 2003); <u>Rankin v. Rots</u>, 278 F.

Supp. 2d 853, 879 (E.D. Mich. 2003); <u>In re Ikon Office Solutions, Inc. Sec. Litig.</u>, 86 F. Supp. 2d 481, 492 (E.D. Pa. 2000).

Other courts, while stopping short of a categorical rule against applying <u>Moench</u> at the motion to dismiss stage, have correctly found allegations similar to the ones made in these cases sufficient to "clear the Rule 12(b)(6) hurdle." <u>LaLonde v. Textron, Inc.</u>, 369 F.3d 1, 6, 7 (1st Cir. 2004) (plaintiffs alleged that "Textron artificially inflated its stock price by concealing" numerous problems at the company that were also the subject of a shareholders' derivative action against the company); <u>Sprint</u>, 388 F. Supp. 2d at 1223-24; <u>In re Honeywell Int'l ERISA Litig.</u>, No. 03-1214, 2004 WL 3245931, at *11 n.16 (D.N.J. June 14, 2004).  The Third Circuit's decision to the contrary in <u>Avaya</u> – dismissing a case on the pleadings based on the <u>Moench</u> presumption – is in error.  503 F.3d at 349.

## II.   THE FIDUCIARIES HAD A DUTY NOT TO MISLEAD PLAN PARTICIPANTS AND TO CORRECT MISPERCEPTIONS BY DISCLOSING INFORMATION NECESSARY TO PROTECT RETIREMENT BENEFITS

ERISA imposes upon fiduciaries a duty to provide truthful information to participants.  An ERISA fiduciary must "discharge his duties solely in the interests of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1), and must therefore comply with the common law duty of loyalty, including the "duty to deal fairly and honestly with its beneficiaries."  <u>Devlin v. Empire Blue Cross & Blue Shield</u>, 274 F.3d 76, 88 (2d Cir. 2001) (quoting <u>Ballone v. Eastman Kodak Co.</u>, 109 F.3d 117,

123-24 (2d Cir. 1997)); <u>see also</u> <u>Shea v. Esensten</u>, 107 F.3d 625, 628 (8th Cir.

1997) (same, citing <u>Varity</u>, 516 U.S. at 506)).  As this Court has repeatedly

stressed, this duty of loyalty under ERISA includes an obligation not to materially

mislead plan participants.  <u>Devlin</u>, 274 F.3d at 88 (2d Cir. 2001); <u>Mullins v. Pfizer</u>,

23 F.3d 663, 669 (2d Cir. 1994).

Likewise, fiduciaries must affirmatively correct known misrepresentations

made to participants, especially those for which they are responsible, as alleged

here.  <u>See</u>, <u>e.g.</u>, <u>Glaziers & Glassworkers Union Local 252 Annuity Fund v.</u>

<u>Newbridge Sec., Inc.</u>, 93 F.3d 1171, 1181-82 (3d Cir. 1996); <u>Griggs v. E.I. DuPont</u>

<u>de Nemours & Co.</u>, 237 F.3d 371, 381 (4th Cir. 2001) (fiduciaries may not "remain

silent" knowing that the participants "labor[] under a material misunderstanding . .

. especially when that misunderstanding was fostered by the fiduciary's own

material representations or omissions.") (citation omitted).  This duty originates in

the law of trusts.  <u>See</u> Restatement (Second) of Trusts § 173, cmt. c-d (1959)

(beneficiaries are "always entitled to such information as is reasonably necessary to

enable [them] to enforce [their] rights under the trust or to prevent or redress a

breach of trust"); <u>Globe Woolen Co. v. Utica Gas & Elec. Co.</u>, 224 N.Y. 483, 489

(N.Y. 1918) (Cardozo, J.) ("A beneficiary, about to plunge into a ruinous course of

action, may be betrayed by silence as well as the spoken word.").  Thus, the district

court erred in holding that the fiduciaries had no disclosure obligations under the

circumstances alleged.  See Bixler v. Cent. Penn. Teamsters Health & Welfare Fund, 12 F.3d 1292, 1300 (3d Cir. 1993) (recognizing affirmative disclosure duty where plan fiduciary "knows that silence would be harmful").

Nor does it suffice to say that the fiduciaries "did disclose such information, both by emphasizing the riskiness of investing in an undiversified fund and by incorporating the company's SEC filings by reference into the Summary Plan Descriptions."  SPA 18.  Emphasizing this kind of generalized risk of diversification while incorporating misleading SEC filings into ERISA disclosures is not the same as disclosing known misconduct or overpricing.  The plaintiffs allege they were not informed about the Company's own misconduct and the impact it would have on the Company's stock when it became known.  The district court did not question the plausibility of the plaintiffs' allegations that the SEC filings were misleading in very specific ways and that the fiduciaries incorporated them by reference in the Plans' SPDs.  SPA 17-18.  Consequently, the Complaints' allegations sufficiently and plausibly allege that the fiduciaries violated ERISA's duty to correct erroneous information and to provide truthful information to participants.  See Varity, 516 U.S. at 506.

III.   THE PLAINTIFFS' ERISA CLAIMS ARE NOT FORECLOSED BY
       POSSIBLE SECURITY CLAIMS BASED UPON THE SAME
       WRONGDOING

The district court additionally erred by rejecting the plaintiffs' argument that "when a company offers its stock to employees, its disclosure obligations [] are governed by ERISA rather than securities law."  SPA 17-18.   Instead, the district court erroneously concluded, "if any of the Defendants violated securities law, they will be liable to Plaintiffs in their capacities as shareholders under securities law; they are not additionally liable under ERISA for the same alleged violations."  Id. (citing Hull, 2001 WL 1836286, at *8).

The Secretary agrees that a company and its officers do not become ERISA fiduciaries merely by filing SEC forms, such as the Form 10K or Form 10Q.  See Varity, 516 U.S. at 505 (an employer does not become a fiduciary "simply because it made statements about its expected financial condition").  This is true even if the securities filings are distributed by others to plan participants or incorporated by reference into plan documents.  However, when plan fiduciaries distribute SPDs to plan participants, they are acting in a fiduciary capacity, and breach their fiduciary duties to the extent that they know the documents incorporate false and misleading SEC filings.  Whatever the original source of the information or how it is

transmitted, "lying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA." Varity, 516 U.S. at 506.

Thus, fiduciaries "cannot in violation of their fiduciary obligations disseminate false information to plan participants, including false information contained in SEC filings." In re WorldCom, 263 F. Supp. 2d at 766. Where, as alleged here, the SEC filings are incorporated by reference into the plan documents, and the fiduciaries know that the SEC filings are misleading, ERISA requires that the fiduciaries take action to protect plan participants. See, e.g., In re Dynegy, Inc. ERISA Litig., 309 F. Supp. 2d 861, 888 (S.D.Tex. 2004) (finding that when fiduciaries issued a summary plan description and then encouraged participants to review the company's SEC filings, these actions "also triggered an affirmative duty to disclose material adverse information that [they] knew or should have known regarding the risks and appropriateness of investing in company stock").

Moreover, the court below was wrong to assume that any corrective action the fiduciaries could take would violate the securities laws' insider trading prohibition. SPA 19. Indeed, there are a number of actions the defendants could have taken that would be perfectly consistent with the securities laws. For instance, nothing in the securities laws would have prohibited them from disclosing the information to other shareholders and the public at large, or from

forcing the Company to do so.[3]  Second, it would have been consistent with the

securities laws for the defendants to have eliminated Company stock as an option.

See Condus v. Howard Sav. Bank, 781 F. Supp. 1052, 1056 (D.N.J. 1992) (it is

legal to retain stock based on inside information; violation of insider trading

requires buying or selling of stock).  The defendants had no duty under securities

laws to injure the plan by continuing to purchase stock that they allegedly knew or

should have known was artificially inflated.  Yet another option would have been

to alert the appropriate regulatory agencies, such as the SEC and the Department of

Labor, to the misstatements.  See In re Enron Corp. Sec., Derivative & "ERISA"

Litig., 284 F. Supp. 2d 511, 566 (S.D. Tex. 2003).

    Nor was the district court correct that the defendants' possible liability under

securities laws meant that "they are not additionally liable under ERISA for the

same violations."  SPA 19.  For one thing, the securities laws do not regulate the

conduct of ERISA plan fiduciaries, and it is not clear that all of the defendants

were subject to duties to the general investing public under the securities laws.  In

any event, the Supreme Court has consistently held that, where "two statutes are

capable of coexistence, it is the duty of the courts, absent a clearly expressed

---

[3]  Other district courts in this circuit have rejected the notion that the securities
laws immunize ERISA fiduciaries against liability for imprudent investments,
including failing to disclose information to participants.  See In re Xerox Corp.
ERISA Litigation, 483 F.Supp.2d 206, 214 (D. Conn. 2007); In re WorldCom, Inc.,
263 F.Supp.2d at 767.

congressional intention to the contrary, to regard each as effective." J.E.M. Ag
Supply, Inc. v. Pioneer Hi-Bred Int'l, 534 U.S. 124, 143-44 (2001) (quoting Morton
et. al. v. Mancari, 417 U.S. 535, 551 (1974)(internal quotation marks omitted)).
That is the case here.  Nothing in either statute expressly provides that the rights
and remedies available to plan participants under ERISA are superseded or limited
by the existence of possible securities laws claims that they might be entitled to
bring as investors.  See Rogers v. Baxter Int'l, Inc., 521 F.3d 702, 705 (7th Cir.
2008) (holding that ERISA's fiduciary duties must be given effect because nothing
in the 1995 amendments to the securities laws repeals or supersedes ERISA, or
creates inconsistent demands).  And while the same course of conduct might
violate both securities laws and ERISA, any ERISA claims are based upon
violations of obligations that ERISA separately imposes upon plan fiduciaries
acting as such.

Moreover, both the standards of conduct and the measures of liability differ
considerably under the two schemes.  As the Seventh Circuit correctly noted in
rejecting the argument that "plaintiffs don't need a remedy under ERISA because
they can sue the defendants" for fraud under securities laws, "[t]he burden of
proving fraud is heavier than that of proving a breach of fiduciary duty" because
"[s]uch a breach might consist in imprudent management (for example, failure to
diversify), mistake, self-dealing and other conflicts of interest, or failure to remedy

breaches of fiduciary duty by a co-fiduciary – all examples of misfeasance rather than malfeasance, involving no misrepresentations, and in short falling short of fraud." Harzewski v. Guidant, 489 F.3d 799, 805 (7th Cir. 2007) (citations omitted).

Likewise, under ERISA, breaching fiduciaries are liable to restore all losses caused by their breaches, disgorgement of their profits, and other equitable remedies. See 29 U.S.C. §§ 1109, 1132(a)(2). Under the securities laws, however, defendants are not necessarily liable for all the losses they have caused. See 15 U.S.C.A. § 78u-4(e)(1) ("the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market"). Thus, the district court's suggestion that "the Plan's remedy will be same" under securities laws as it would be under ERISA, is simply not correct. SPA 19.

Additionally, under ERISA, breaching fiduciaries are jointly and severally liable for harm they cause. In re Masters Mates & Pilots Pension Plan and IRAP Litigation, 957 F.2d 1020, 1023 (2d Cir. 1992) (citing 29 U.S.C. § 1105(a)(2)). In contrast, under the securities laws, joint and several liability is available "only if

29

the trier of fact specifically determines that such covered person knowingly

committed a violation of the securities laws."  15 U.S.C.A. § 78u-4(f)(2)(A).  None

of this means, of course, that the plan could recover more that 100% of its losses,

but it does mean that, until it is made whole, plan participants can pursue claims

under all laws that were violated.

## CONCLUSION

For these reasons, the district court's decision should be reversed.

Respectfully submitted,

M. PATRICIA SMITH
Solicitor of Labor

TIMOTHY D. HAUSER
Associate Solicitor

ELIZABETH HOPKINS
Counsel for Appellate Litigation


     /s/ Michael Schloss
MICHAEL SCHLOSS
Senior Trial Attorney
United States Department of Labor
Plan Benefits Security Division
200 Constitution Ave. N.W. N-4611
Washington, DC 20210

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rules 32(a)(7)(B) and.(C), Fed. R. App. P., I certify that this amicus brief uses a mono-spaced typeface of 14 characters per inch and contains six thousand, nine hundred and twenty-five (6,921) words.

Dated: <u>June 4, 2010</u>

   <u>/s/ Michael Schloss</u>
      Michael Schloss
      Senior Trial Attorney
      U.S. Department of Labor
      Office of the Solicitor
      Plan Benefits Security Division
      P.O. Box 1914
      Washington, D.C. 20013
      (202) 693-5603

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of June 2010, true and correct copies of the foregoing - Brief of the Secretary of Labor as Amicus Curiae in Support of Appellant for Reversal -were filed electronically with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system and served electronically via email to the following counsel at the addresses set forth below:

| | |
|---|---|
| Myron D. Rumeld<br>Russell L. Hirschhorn<br>Proskauer Rose LLP<br>1585 Broadway<br>New York, NY  10036<br>mrumeld@proskauer.com<br>rhirschhorn@proskauer.com | Howard Shapiro<br>Proskauer Rose LLP<br>650 Poydras Street<br>New Orleans, LA  70130<br>howshapiro@proskauer.com |
| Floyd Abrams<br>Cahill Gordon & Reindel LLP<br>Eighty Pine Street<br>New York, NY 10005-1702<br>fabrams@cahill.com | Edwin J. Mills<br>Michael J. Klein<br>Stull Stull & Brody<br>6 E. 45th St.<br>New York, NY  10017<br>emills@ssbny.com |
| Francis A. Bottini, Jr.<br>Albert Y. Chang<br>Johnson Bottini, LLP<br>501 West Broadway<br>Suite 1720<br>San Diego, CA  92101<br>albertc@johnsonbottini.com | |

____/s/ Michael Schloss_____
Michael Schloss

## ANTI-VIRUS CERTIFICATION FORM
Pursuant to Second Circuit Local Rule 32(a)(1)(E)

CASE NAMES: Gearren, et al., v. The McGraw-Hill Companies, Inc., et al.
Sullivan, et al., v. The McGraw-Hill Companies, Inc., et al.

DOCKET NUMBERS:   10-792-cv(L)
10-934-cv(CON)

I, Michael Schloss, certify that I have scanned for viruses the PDF version of the

_____ Appellant's Brief and Special Appendix
_____ Appellee's Brief
_____ Reply Brief
\_\_\_XX\_\_ Amicus Brief

that was submitted in this case as an email attachment to <civilcases@ca2.uscourts.gov> and that no viruses were detected.

Please print the name and the version of the anti-virus detector that you used:

McAfee VirusScan Enterprise version 8.0 was used.


\_\_\_/s/ Michael Schloss_____
Michael Schloss


Date: June 4, 2010