## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| THOMAS U. KENNEY, *on Behalf of Himself and a Class of Persons Similarly Situated*, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:09-cv-10750-DJC |
| v. | ) ) | |
| STATE STREET CORPORATION, et al. | ) ) | |
| Defendants. | ) ) ) | |

_____

### DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS TO JUDGE DEIN'S REPORT AND RECOMMENDATION

Jeffrey B. Rudman (BBO No. 433380)
William H. Paine (BBO No. 550506)
John J. Butts (BBO No. 643201)
Timothy Perla (BBO No. 660447)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000
(617) 526-5000 (facsimile)

July 8, 2011

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ...........................................................................................1

II.  ARGUMENT .............................................................................................................................2

    A.   Plaintiff's Prudence Claim is Not Plausible...........................................................2

    B.   This Court Should Join What Plaintiff Acknowledges Is Strong Majority
        In Favor Of Applying the Presumption of Prudence ...........................................7

    C.   Plaintiff's Response Confirms That Certification To The First Circuit
        Is Warranted...........................................................................................................10

III. CONCLUSION ........................................................................................................................11

# TABLE OF AUTHORITIES

<u>Federal Cases</u>

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................................... 8

*Borden v. Sec'y of Health and Human Servs.*,
   836 F.2d 4 (1st Cir. 1987)......................................................................... 6, 7

*Bunch v. W.R. Grace & Co.*,
   555 F.3d 1 (1st Cir. 2009)............................................................................ 8

*Cohen v. Brown Univ.*,
   101 F.3d 155 (1st Cir. 1996)....................................................................... 8

*Edgar v. Avaya, Inc.*,
   503 F.3d 340 (3d Cir. 2007)........................................................................ 9

*In re Citigroup ERISA Litig.*,
   2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009) .......................................... 9

*In re Coca-Cola Enters., Inc., ERISA Litig.*,
   2007 WL 1810211 (N.D. Ga. Jun. 20, 2007)........................................... 10

*Kirschbaum v. Reliant Energy, Inc.*,
   526 F.3d 243 (5th Cir. 2008) ...................................................................... 7

*Kuper v. Iovenko*,
   66 F.3d 1447 (6th Cir. 1995) .................................................................... 10

*LaLonde v. Textron, Inc.*,
   *369 F.*3d 1 (1st Cir. 2004)..................................................................... 8, 10

*Moench v. Robertson*,
   62 F.3d 553 (3d Cir. 1995)...................................................................... 7, 10

*Morrison v. MoneyGram Int'l Inc.*,
   607 F. Supp. 2d 1033 (D. Minn. 2009)....................................................... 9

*Pedraza v. Shell Oil Co.*,
   724 F. Supp. 1 (D. Mass. 1989) ................................................................. 6

*Pugh v. Tribune Co.*,
   521 F.3d 686 (7th Cir. 2008) ...................................................................... 9

*Quan v. Computer Sciences Corp.*,
   623 F.3d 870 (9th Cir. 2010) ................................................................... 7, 9

*Wright v. Oregon Metallurgical Corp.*,
   360 F.3d 1090 (9th Cir. 2004) ................................................................................. 10

<u>Federal Statutes</u>

28 U.S.C. § 1292 ................................................................................................... 2, 6, 11

## I.      PRELIMINARY STATEMENT

Plaintiff's Response to Defendants' Objections to Judge Dein's Report and Recommendation ("Response") only serves to confirm the inadequacy of his claim that Defendants should have prevented the Plan's participants from investing in the ESOP during a period he selected in hindsight ("the prudence claim"), and that Judge Dein erred in recommending that he be allowed to move forward on that claim.

To begin with, Plaintiff's claim fails on *Twombly* grounds because he has not pleaded facts supporting a plausible inference that State Street's stock was an imprudent investment. It is telling that Plaintiff barely addresses Judge Dein's analysis under the "totality of the circumstances" test she applied to his claim and that he instead attempts to shore up her recommendation with irrelevant side issues, most of which Plaintiff did not even present to Judge Dein. In any event, nothing in Plaintiff's response changes the fact that over the course of the alleged class period: (i) State Street generated record net income ($1.8 billion), record revenue ($10.7 billion), and record assets ($173.6 billion); (ii) State Street qualified as a "well capitalized" financial institution under the Federal Reserve's regulations; and (iii) State Street's stock outperformed the S&P Financial Index and performed consistently with the S&P 500. Those are anything but the hallmarks of an imprudent investment.

Plaintiff's opposition also confirms that Judge Dein should have applied the well recognized presumption that employer stock held in an ESOP is prudent—a presumption that is dispositive under the facts of this case. More particularly, Plaintiff concedes that there is a growing consensus among courts to apply this presumption—a consensus Plaintiff calls a "bandwagon." Response at 1, 16. He thereby confirms that the First Circuit's decision, in 2004, not to apply the presumption is not controlling. In that decision, the First Circuit explained that it was not applying the presumption because the law at that time was "neither mature nor

uniform" and there were only a few "discordant decisions."  As of today, *five* circuit courts have

adopted the presumption, and none have rejected it on its merits.  Moreover, a more recent

decision from the First Circuit indicates its support for applying the presumption of prudence in

cases like this where a fiduciary is sued for retaining an ESOP.

Finally, in response to Defendants' alternative request that the Court certify an immediate

appeal of the narrow question of whether the presumption of prudence applies, Plaintiff asserts

only that interlocutory appeals are rare.  He is otherwise unable to refute Defendants'

explanation that this case meets the criteria provided in 28 U.S.C. § 1292 because:  (i) whether

the presumption applies is a controlling question of law; (ii) there are, at the very least,

substantial grounds to believe that it applies; and (iii) resolution of this legal issue will materially

advance the ultimate resolution of the case.

## II.    ARGUMENT

### A.    Plaintiff's Prudence Claim is Not Plausible

Plaintiff's response only serves to highlight the fact that Judge Dein should have

recommended dismissal of his prudence claim under a straightforward application of *Twombly*.

In the first place, Plaintiff admits that his claim is based solely upon a hypothetical risk that did

not come to pass during the period in which he claims State Street's ESOP was an imprudent

investment, *i.e.,* the alleged class period.  Specifically, Plaintiff has finally made clear that he is

claiming that the ESOP was imprudent "because State Street was exposed to *potentially* huge

losses *if consolidation occurred.*"  Response at 4 (emphasis added).  That claim cannot stand

because consolidation did *not* occur during the alleged class period, and Plaintiff "is not

asserting" that it should have occurred during that period.  *Id.*  In other words, if Defendants'

class period decisions about the ESOP should have been guided by whether the conduits would

be consolidated (which would have required State Street to recognize the unrealized conduit

losses[1]), Plaintiff has no credible basis to question their judgment.  The mere possibility of consolidation is certainly not enough to plausibly challenge Defendants' class period actions as it cannot be reconciled with Plaintiff's implicit position that State Street's stock was prudent in the four months between the end of the class period and when State Street consolidated the conduits on May 15, 2009—a period in which State Street's stock price increased by 278%.  *See* Defs' Sur-Reply (Dkt. 117) App. Ex. 2.

That Judge Dein should have come to a different result under the "totality of the circumstances" test she applied is also confirmed by the fact that Plaintiff relegates his discussion of the four factors she considered to a single paragraph buried at the end of his response to Defendants' *Twombly* objection.  Response at 12.  In any event, each of the factors Judge Dein considered weighs strongly in Defendants' favor.  *See* R&R at 26 (noting that the analysis includes consideration of the (1) plan's structure, (2) disclosures to participants about the general and specific risks of investing in company stock, (3) the nature and extent of the challenges the company faced, and (4) the market price of the company's stock).

Plaintiff has no substantive response to Defendants' showing that the Plan's structure cuts in Defendants' favor, except to say that the Plan's structure is "fairly typical."  Response at 12 n.16; *see* Defs.' Objections to R&R (Dkt. 142) at 8-9 (explaining, for example, that the Plan was participant-directed, offered a wide variety of investment options, and limited ESOP contributions to 25% of a participant's account).  He is equally unable to dispute that State Street made exemplary disclosures about the risks it faced from the conduits, the general economic turmoil, and from other aspects of its business.  Plaintiff's only response is that "[t]he absence or

---

[1]      Plaintiff wrongly conflates the potential recognition of conduit losses with economic losses.  *Compare* Defs.' Objections (Dkt. 142) at 11-12 (making argument) *with* Response (failing to respond).  If consolidation had been required during the class period, State Street would have recorded a loss equal to the difference between the purchase price and market price of conduit assets on the date of consolidation.  But, because the conduit assets are debt securities, State Street would still receive every dime due (*i.e.*, suffer no economic loss) absent default (which the assets did not).  Thus, the paper loss would accrete back to income.  *See, e.g.*, Defs.' Objections (Dkt. 142) at 6.

presence of disclosures and their quality . . . is not in *itself* determinative" of prudence. Response at 10 (emphasis added); *see id.* at 12 n.16 ("the disclosures of a certain level of risk do not immunize Defendants from liability"); *compare* Defs.' Objections (Dkt. 142) at 5-6, 9. Although those disclosures may not be determinative, they weigh heavily in Defendants' favor.

Plaintiff also has little to say about Judge Dein incorrect decision to defer considering State Street's stock performance in relation to Plaintiff's claim.  More particularly, she recognized that the stock's performance as "compared to its peers and the S&P 500" is important to any consideration of the totality of the circumstances, but deferred the issue until after discovery.  R&R at 33-34.  There is no reason to wait because no amount of discovery will change the fact that State Street's stock provided cumulative returns over the course of the alleged class period that were consistent with the S&P 500 and better than S&P Financial Index. *See* Defs' Sur-Reply (Dkt. 116) App. Ex. 1-2 (comparison charts).

Even Plaintiff does not dispute that performance.  He posits only that "expert testimony is needed" to address the "propriety of the indexes selected," how State Street "would have performed" without the conduits, "the period of time to measure stock performance," and what his expert might concoct as a damage measure.  Response at 10.[2]  Those arguments miss the point.  The S&P 500 is "widely regarded as the best single gauge of the U.S. equities market . . . [and] an ideal proxy for the total market."  Barron's Dictionary of Finance and Investment Terms (8th Ed.) at 631 ("S&P 500 Index").[3]  It simply cannot be that a stock that essentially tracked the market and beat an index of its peers was such an imprudent investment that Defendants were

_____

[2]    As the record indicates, State Street's stock rose dramatically *after* his hindsight-selected class period, so Plaintiff can hardly be heard to complain that State Street has only compared its stock to reputable indices *during* the class period.  Taking a longer view would only bolster Defendants' analysis.

[3]    Similarly, the S&P Financial Index is "a publicly available measure of 78 of the Standard & Poor's 500 companies, representing 27 diversified financial service companies, 16 banking companies, 20 insurance companies and 15 real estate companies."  Butts Aff. Ex. Z at 30 (State Street 2009 Form 10-K).  There is no plausible reason (and Plaintiff offers none) why expert testimony is required to address "the propriety" of this index.  Response at 10.

obligated to disregard the Plan's design and prohibit participants from investing in the ESOP. This fact alone establishes that Plaintiff has failed to state a plausible entitlement to relief.

The rest of Plaintiff's response relates to the remaining factor Judge Dein considered, the nature and extent of the challenges State Street faced during the class period. His response, however, does not address Defendants' arguments head on. Rather, it raises inconsequential side issues that Plaintiff hopes will be enough to muddy the waters. For example, Plaintiff attempts to dismiss State Street's record "revenue and income" during the alleged class period because it supposedly does "not address . . . the health of the company as a whole." Response at 8.[4] That assertion is plainly inaccurate. It also misses the point, which is that *Plaintiff* has not pleaded facts to plausibly call into question the "health of the company as a whole."

The reality is that, notwithstanding Plaintiff's labels and conclusions, he cannot plausibly question that State Street was a healthy company that was performing well in a period of general economic turmoil. And for all of Plaintiff's assertions about State Street's tangible common equity ("TCE") ratio, which is a rough measure of a firm's capital, Plaintiff cannot dispute that, throughout the alleged class period, State Street qualified as a "well capitalized" institution under the Federal Reserve's regulations. *See* Defs' Opp'n to Mot. to Amend (Dkt. 102), App. 2. In fact, State Street would have maintained that status even if the conduits had been consolidated in any quarter during the Class Period, with one immaterial exception. *See id.*[5]

Also demonstrating State Street's financial health is the fact that in the spring of 2009, it passed the Federal Reserve's stress test. *See* Butts Aff. Ex. FF. In that test, the Federal Reserve assumed consolidation of the conduits and nevertheless concluded that State Street had a

---

[4]       In fact, State Street reported in 2008, *record* revenue, *record* net income, and *record* net assets. *See* Butts Aff. Ex. R at 31 (Form 10-K filed Feb. 27, 2009).

[5]       If State Street had consolidated the conduits at the end of the fourth quarter of 2007, one of its capital ratios would have fallen approximately one tenth of one percent below the well capitalized threshold. Defs' Opp'n to Mot. to Amend (Dkt. 102), App. 2.

sufficient capital buffer to withstand a more severe recession than the Federal Reserve anticipated.[6]  *Compare* Butts Aff. Ex. FF at 1 (test results, defining "SCAP" as "how much of an additional capital buffer, if any, each institution would need to establish today to ensure that it would have sufficient capital if the economy weakens more than expected") *with id.* at 34 ("No Need" for State Street to adopt "SCAP Buffer"); *see* Butts Aff. Ex. W at 27 (Form 8-K filed May 18, 2009) (test "assume[ed] consolidation of the conduits onto our consolidated balance sheet"). That conclusion puts to rest any quarrel about the adequacy of State Street's capital.

Moreover, in addition to State Street's record financial results and its strong capital position, the company paid a consistent dividend during the period at issue.  Plaintiff attempts to dilute the significance of State Street's dividend by virtue of the fact that *after* the class period ended, State Street reduced its dividend to add to its TCE ratio.  Response at 12.  To begin with, Plaintiff never made this argument to Judge Dein, and he has therefore waived it.  *See, e.g.*, *Borden v. Sec'y of Health and Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987) ("Parties must take before the magistrate, not only their best shot, but all of their shots.") (internal quotation and punctuation omitted); *Pedraza v. Shell Oil Co.*, 724 F. Supp. 1, 4 (D. Mass. 1989) ("[T]he defendant did not raise the issue . . . before the Magistrate, and accordingly, has waived [it].").  Moreover, this new argument misses the point, which is that State Street was paying dividends.

---

[6]      Plaintiff quibbles that Defendants have taken the results of the stress test out of context by not providing "the results of all tests of State Street's capital administered by various government regulators," but he does not identify any other such tests let alone tests that came to a different conclusion.  Response at 9.  In any event, the fact that State Street's principal regulator—the Federal Reserve—concluded that, even assuming conduit consolidation, State Street had an adequate capital buffer to withstand a more significant recession than the Federal Reserve anticipated eviscerates Plaintiff's argument that State Street's capital was insufficient if consolidation was required.  *See also* Defs.' Opp'n to Mot. To Amend (Dkt. 102) at App. 2; Butts Aff. Ex. FF at 3 ("At year-end 2008, capital ratios at [selected banks including State Street] exceeded minimum regulatory capital standards . . . .") (stress test results).  The Federal Reserve's conclusion also belies Plaintiff's argument that State Street failed to comply with a requirement to maintain a particular tangible common equity ratio.  Response at 9 (arguing that there is a "3% threshold").  The truth is that there is no regulatory requirement that banks maintain a particular TCE ratio, let alone a 3% minimum.  *See* Defs.' Sur-Reply in Opp. to Mot. to Amend (Dkt. 117) at 9 & n.4.  In any event, State Street's TCE was above 3% throughout the alleged class period.  *See, e.g.*, Butts Aff. Ex. T at Ex. 99.2 at 10 (Form 8-K filed Jan. 20, 2009).  Plaintiff's arguments are based on what State Street's TCE ratio would have been *if* the conduits had been consolidated during the alleged class period.  Those arguments are beside the point because Plaintiff has now made clear that he "is not asserting that State Street should have consolidated the conduits sooner."  Response at 4.

The fact that State Street reduced its dividend *after* the class period says nothing about the

company's health *during* the class period.  The same is true of the allegation that the reduction

was intended to further strengthen State Street's TCE ratio, particularly where State Street

nevertheless had "among the highest regulatory capital ratios in the industry."  Response at 9.[7]

### B.     This Court Should Join What Plaintiff Acknowledges Is Strong Majority In Favor Of Applying the Presumption of Prudence

Plaintiff concedes that, in the years following the Third Circuit's decision in *Moench v.*

*Robertson*, 62 F.3d 553 (3d Cir. 1995), a clear consensus—or what he calls a "bandwagon" of

courts—has emerged in favor of applying the presumption that employer stock held in an ESOP

is a prudent investment.  Response at 1, 16.  That concession is, if anything, an understatement

because as of the time of this filing, *five* Circuit Courts of Appeals have adopted the presumption

and "[n]o federal appellate court has rejected the *Moench* presumption on its merits."  *Quan v.*

*Computer Sciences Corp.*, 623 F.3d 870, 880 (9th Cir. 2010); Defs.' Objection (Dkt. 142) at 15.

Plaintiff does not dispute the absence of any appellate decision—including from the First

Circuit—rejecting the presumption on its merits.  He instead relies on Judge Saris's decision not

to apply it on Defendants' motion to dismiss the original complaint.[8]

---

[7]      Plaintiff errs in at least one additional respect.  He acknowledges that he must plead the existence of red flags, but falters in arguing that he has done so.  Response at 13.  He makes no attempt to defend the adequacy of the red flags that Judge Dein found.  *Compare* Defs.' Objections (Dkt. 142) at 12 (showing why red flags Judge Dein found were insufficient) *with* Response (failing to respond).  Plaintiff instead advances arguments that he admits he did not raise "in the brief[ing]" submitted to Judge Dein.  Those arguments should therefore not be considered for purposes of this objection.  *See, e.g., Borden v. Sec'y of Health and Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987) ("Parties must take before the magistrate, not only their best shot, but all of their shots.") (internal quotation and punctuation omitted).  Moreover, they are in any event not nearly enough to satisfy Plaintiff's pleading obligation.  *See, e.g.*, Defs.' Opp'n (Dkt. 102) at 30-31.

[8]      Plaintiff cannot counterbalance the clear trend of courts adopting the presumption with his half-hearted argument that the Department of Labor has taken the position in an amicus brief filed in another case that the "presumption is unsupported by ERISA's text."  Response at 16.  The DOL has made that same argument in a number of other appeals, and it has been soundly rejected.  *See, e.g.*, Brief for Sec'y of Labor, *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243 (5th Cir. 2008) (adopting *Moench* presumption despite DOL briefing), 2006 WL 5952409; Brief for Sec'y of Labor, *Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995), 1994 WL 16012393 (same); *Quan v. Computer Sciences Corp.*, No. 09-56248, Dkt. 47 (9th Cir. 2010) (denying petition for rehearing over Brief for Sec'y of Labor opposing adoption of presumption of prudence at Dkt. 39).

That decision should not prevent the Court from applying the presumption. As Plaintiff acknowledges, since Judge Saris's decision, the law has continued to develop in favor of applying the presumption of prudence. *See* Response at 16. Moreover, Judge Saris's decision was based heavily on *LaLonde v. Textron, Inc.*, in which the First Circuit elected not to apply the presumption because the law in 2004 was "neither mature nor uniform," and the First Circuit did not want to make a decision based only upon a "few and discordant judicial decisions discussing the issue we face." 369 F.3d 1, 6 (1st Cir. 2004). That reasoning no longer holds true because since 2004, courts have lined up behind the presumption and the decisions explaining the sound rationale for doing so are neither few nor discordant. *See* R&R at 28 (recognizing that the First Circuit "has not completely foreclosed the possibility of applying the *Moench* presumption"); Defs.' Objections (Dkt. 142) at 15 n.4 (string cite containing two dozen recent cases applying presumption of prudence). Indeed, the First Circuit has more recently indicated its support for the presumption, describing it as something that "is afforded fiduciaries when they decide to retain an employer's stock in falling markets." *See Bunch v. W.R. Grace & Co.*, 555 F.3d 1, 10 (1st Cir. 2009) (declining to apply the presumption in favor of a *plaintiff* seeking to use it to challenge a fiduciary's decision to *liquidate* an ESOP).[9]

The bulk of Plaintiff's response is geared toward trying to live another day by arguing that if the presumption applies, it should be at the summary judgment stage. That argument cannot be squared with *Twombly*'s requirement that the plaintiff must plead a plausible entitlement to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). If the presumption applies at *any* stage of litigation, it is incumbent on Plaintiff to plead a plausible

---

[9]     Plaintiff suggests that the "law of the case doctrine" ties this Court's hands. Response at 1 n.1. Presumably, he relegates this point to a footnote because his premise (*i.e.*, parties cannot raise any previously adjudicated issue) would be fatal to numerous claims that he seeks to re-litigate (*e.g.*, disclosure claims, which Judges Saris and Dein held require reliance). In any event, the doctrine is "a prudential rule of policy and practice, rather than an absolute bar to reconsideration." *Cohen v. Brown Univ.*, 101 F.3d 155, 168 (1st Cir. 1996) (adding that the doctrine is not "an inflexible straitjacket that invariably requires rigid compliance").

basis on which he can overcome it. *See, e.g.*, *Morrison v. MoneyGram Int'l Inc.*, 607 F. Supp. 2d 1033, 1051 (D. Minn. 2009) ("To say that the presumption of prudence 'applies' at the pleading stage is just another way of saying that plaintiffs must allege sufficient facts to demonstrate that they have a non-speculative claim [to relief] . . . ."); *In re Citigroup ERISA Litig.*, 2009 WL 2762708, at * 16 (S.D.N.Y. Aug. 31, 2009) ("[F]ollowing the Supreme Court's ruling in *Twombly*, courts have regularly applied *Moench* at the motion-to-dismiss stage."). Indeed, since *Twombly*, dozens of courts have either held or made clear that the presumption applies at the pleading stage. *See, e.g.*, *Quan*, 623 F.3d at 882 ("To overcome the presumption of prudent investment, plaintiffs must . . . make *allegations* that clearly implicate the company's viability as an ongoing concern or show a precipitous decline in the employer's stock combined with evidence that the company is on the brink of collapse or is undergoing serious mismanagement.") (emphasis added); *Edgar v. Avaya, Inc.*, 503 F.3d 340, 347-48 (3d Cir. 2007) (presumption applies on motion to dismiss); *Pugh v. Tribune Co.*, 521 F.3d 686, 701 (7th Cir. 2008) (affirming dismissal based on presumption).[10]

Plaintiff's attempt to inflate the First Circuit's *dicta* about the benefits of "record development" should not stop the Court from applying the presumption because no amount of record development will enable Plaintiff to overcome the presumption. Plaintiff has already conceded that he cannot meet the Ninth Circuit's impending collapse standard. *See* Nov. 12, 2009 Hearing Tr., Dkt. 37 at 31 (agreeing that "State Street was not . . . teetering on the edge of going off in abyss"). And, although some courts have set a slightly lower bar, Plaintiff cannot pass those tests either. For example, notwithstanding his argument that it is enough to show that a prudent fiduciary would have acted differently, the lone case he cites as support, *Kuper v.*

---

[10]     *See also* Defs' Objections at 15 n.4 (citing nearly two dozen other cases). Plaintiff's citations to the contrary are either unconvincing or stale—three of the six decisions he invokes were published before *Twombly*, and one appears to represent a minority position within the S.D.N.Y. Response at 19-20.

*Iovenko*, 66 F.3d 1447, 1459 (6th Cir. 1995), actually requires plaintiffs to show that a fiduciary's decision to retain an ESOP was "an abuse of discretion."  *Id.* at 1459.[11]  Plaintiff's claim fails under either standard because he has not pled a plausible basis to overcome, among other things, State Street's record earnings, its strong capital position, its dividend payments, and the fact that its stock kept pace with the market.  *See, e.g.*, *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1098-99 (9th Cir. 2004) (no claim where company was "profitable and paying substantial dividends throughout period"); *In re Coca-Cola Enters., Inc., ERISA Litig.*, 2007 WL 1810211, at *10 (N.D. Ga. Jun. 20, 2007) (no claim where company's "financial information evidences that the company is a robust and viable investment option").

### C.    Plaintiff's Response Confirms That Certification To The First Circuit Is Warranted

Plaintiff's primary argument against certifying to the First Circuit the question of whether a presumption of prudence should apply is that "such appeals are . . . hen's-teeth rare." Response at 19.  The simplest answer is that, if the First Circuit believes that this case does not qualify for interlocutory appeal, it can say so; Defendants seek only leave to make their case for certification to the First Circuit.

More importantly, there are good reasons why this is the unusual case that warrants interlocutory review.  In 2004, the only other time that the First Circuit has addressed whether fiduciaries who retain an ESOP should receive the benefit of a presumption of prudence, the Court made clear what it wanted:  further development of the law.  *See LaLonde*, 369 F.3d at 6. It is now seven years later and, as Plaintiff puts it, a "bandwagon" of its sister circuits and district courts have applied a presumption of prudence with opinions explaining their sound rationale for doing so.  Response at 1, 16.  To the extent a minority position rejects the presumption or holds

---

[11]    Other courts have also used an abuse of discretion standard.  *See, e.g., Moench*, 62 F.3d at 571.

that it should only be applied at summary judgment, that too will aid the First Circuit's

consideration.  However, the salient points are that:  (i) application of the presumption of

prudence is an important issue in this and other cases; (ii) the issue is unresolved in this Circuit;

and (iii) all concerned would benefit from appellate guidance.[12]  *See* Defs' Objections (Dkt. 142)

at 18-19.  Plaintiff does not refute any of those points.

## III.    CONCLUSION

Defendants respectfully request that the Court adopt Judge Dein's Report and

Recommendation, except for her recommendation on Plaintiff's First Claim, and that the Court

deny the Motion to Amend.

**DEFENDANTS**,

By their attorneys,

*Jeffrey B. Rudman*
Jeffrey B. Rudman (BBO No. 433380)
William H. Paine (BBO No. 550506)
John J. Butts (BBO No. 643201)
Timothy Perla (BBO No. 660447)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
E-mail:  jeffrey.rudman@wilmerhale.com

Dated:  July 8, 2011

---

[12]       Plaintiff's argument that the application of *Moench* would "likely not result in termination of the case" is factually incorrect (as discussed *supra*), and it articulates the wrong legal standard.  Under 28 U.S.C. § 1292(b), this Court need only "be of the opinion that . . . the order *may materially advance* the ultimate termination of the litigation."  Guidance from the First Circuit would materially advance the termination of the litigation.  *See* Defs.' Objections (Dkt. 142) at 19-20.

## <u>CERTIFICATE OF SERVICE</u>

I, Jeffrey B. Rudman, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) dated July 8, 2011.

/s/  <u>*Jeffrey B. Rudman*</u>
Jeffrey B. Rudman
