UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Thomas U. Kenney, on behalf of himself and a class of persons similarly situated,  )<br>  )<br>Plaintiff,  )<br>  )<br>v.  )<br>  )<br>State Street Corporation et al.,  )<br>  )<br>Defendants.  )  | Civil Action No. 09-10750-DJC |

**MEMORANDUM & ORDER**

**CASPER, J.**                                                                                   September 15, 2011

**I.   Introduction**

Plaintiff Thomas U. Kenney ("Kenney"), a former employee of Defendant State Street Corporation has filed this putative class action on behalf of himself and other similarly situated participants in the State Street Salary Savings Plan (the "Plan") for whose individual accounts the Plan held shares of common stock of State Street (including in the form of units of the State Street's Employee Stock Ownership Plan ("ESOP")) during the Class Period.[1]  Kenney alleges that Defendants State Street Corporation, North America Regional Benefits Committee of State Street Corporation ("Benefits Committee"), State Street Corporation Committee Investment Committee ("Investment Committee") and various individual members of the Benefits Committee and

---

[1] The "Class Period" was described in the amended complaint as January 3, 2008 to January 20, 2009 and in the (proposed) second amended complaint as August 28, 2007 to January 20, 2009.

Investment Committee (collectively, the "Defendants" or "State Street") breached certain of its fiduciary duties under the Employment Retirement Income Security Act, 29 U.S.C. §§ 1001-1461 ("ERISA") by mismanaging Plan assets, making materially misleading statements and/or omissions and continuing to permit Plan participants to maintain shares of State Street stock and/or continue to invest Plan funds in State Street stock. On July 20, 2009, Kenney filed an amended complaint asserting six claims including, but not limited to, claims that the Defendants had breached their fiduciary duties by continuing to offer State Street common stock as an investment under the Plan and had made negligent misrepresentations and material nondisclosures regarding same. D. 9. On March 15, 2010, the Court (Saris, J.), upon the Defendants' motion, dismissed all, but one of the Kenney's claims in his amended complaint. Kenney v. State Street Corp., 694 F.Supp.2d 67 (D. Mass. 2010) ("Kenney I"). Subsequently, the Defendants moved for summary judgment on the surviving claim–Kenney's claim of negligent misrepresentation–and the Court (Saris, J.) allowed that motion on December 9, 2010. Kenney v. State Street Corp., 754 F.Supp.2d 288 (D. Mass. 2010) ("Kenney II").

On July 16, 2010, Kenney moved for leave to file a second amended complaint. D. 92. In the proposed second amended complaint, Kenney asserts six claims including claims against all the Defendants for lack of prudence in permitting Plan participants to continue to invest in and/or maintain investments in State Street common stock (First Claim), negligent misrepresentation (Second Claim) and material nondisclosure (Third Claim). In this amended pleading, Kenney requests a jury trial "of all issues so triable" and makes claims for equitable relief pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). Defendants opposed Kenney's motion on the grounds that the pleading, as amended, failed to state a plausible claim for relief and, therefore, any amendment

would be futile. The Court referred the matter to Chief Magistrate Judge Dein. After a hearing and extensive briefing from the parties, Chief Magistrate Judge Dein issued her Report and Recommendation ("R&R"), dated May 18, 2011, recommending that the Court grant the motion only in part since the second amended complaint stated a claim for lack of prudence (First Claim), but failed to do as to all of the other claims (Second through Sixth Claims). The R&R also recommends that the Court strike Kenney's demand for a jury trial and the equitable relief that he seeks.

After the issuance of the R&R, the parties engaged in extensive briefing. Kenney and the Defendants have both now filed objections to the R&R, D. 142, 143, and each has responded to the other parties' objections. D. 144, 145, 149, 150. Defendants object only as to the recommendation in the R&R that allows the motion to amend with respect to Kenney's First Claim alleging lack of prudence in the management of the Plan. D. 142. Kenney objects to the R&R only to the extent that it recommends that he not be permitted to assert his claims for negligent misrepresentation (Second Claim) and for material nondisclosure (Third Claim), at least with respect to the granting of equitable relief for these claims. D. 143. For the reasons set forth below, the Court ADOPTS and ACCEPTS the R&R and Kenney's motion for leave to file a second amended complaint is GRANTED in part and DENIED in part. The Court also declines the Defendants' invitation to grant them leave under 28 U.S.C. § 1292(b) to file an immediate appeal.

**II.   Discussion**

A district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). This Court, pursuant to 28 U.S.C. § 636(b)(1), must make "a *de novo* determination of those portions of the report or

specified proposed findings or recommendations to which the parties have objected." Id.; see Fed. R. Civ. P. 72(b)(3).

### A. Defendants' Objections

Defendants object to the portion of the R&R that concludes that the proposed second amended complaint states a claim against State Street for violating their duty of prudent plan management (First Claim). The bases for that objection are that: 1) the First Claim in the proposed second amended complaint does not state a plausible basis for relief and the conclusion to the contrary in the R&R is inconsistent with Judge Saris' earlier decision dismissing the lack of prudence claim in the first amended complaint; and 2) the R&R should have applied the "presumption of prudence." Finally, the Defendants request that if this Court accepts the R&R as to the First Claim, that it certify an immediate appeal to the First Circuit of the issue of whether districts courts in this Circuit should apply the presumption of prudence.

#### 1. The First Claim of the Proposed Second Amended Complaint Does State a Claim for Relief

In considering the Defendants' opposition to a motion to amend on the grounds that amending the complaint would be futile, the Court must apply the standard that applies to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Hatch v. Dep't for Children, Youth and Their Families, 274 F.3d 12, 19 (1st Cir. 2001); Transwitch Corp. v. Galazar Networks, Inc., 377 F.Supp.2d 284, 290 (D. Mass. 2005). Post-Twombly and Iqbal, whether a complaint should survive a motion to dismiss depends upon whether the pleading satisfies the "plausibility" standard. Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). As the First Circuit has made clear, "[i]n resolving a motion to dismiss, a court should employ a two-step approach." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 9 (1st Cir. 2011) (applying Iqbal and Twombly).

"It should begin by identifying and disregarding statements in the complaint that merely offer 'legal conclusion[s] couched as . . . fact[]' or '[t]hreadbare recitals of the elements of a cause of action.'" Id. at 12 (quoting Iqbal, 129 S.Ct. at 1949-50) (further citation omitted). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Id. (quoting Iqbal, 129 S.Ct. at 1950). The remaining "[n]on-conclusory factual allegations in the complaint must be then treated as true, even if seemingly incredible" and assessed to determine whether they, "'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 129 S.Ct. at 1949, 1951). If they do, "the claim has facial plausibility." Id. (quoting Iqbal, 129 S.Ct. at 1949). "The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Id. (quoting Sepúlveda-Villarini v. Dep't. of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010) (Souter, J.)).

Applying this standard, the First Claim states a plausible claim against the Defendants. Under ERISA, fiduciaries are required to "act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." Bunch v. W.R. Grace & Co., 555 F.3d 1, 7 (1st Cir. 2009) (internal quotation marks and citations omitted). In this context, "prudence involves a balancing of competing interests under conditions of uncertainty." Id. (internal quotation marks and citation omitted). The court must review an ERISA fiduciary's conduct in light of "the totality of the circumstances." Id. The totality of the circumstances shall include, but is not limited to, consideration of the "plan structure and aims, the disclosures made to participants regarding the general and specific risks associated with investment in company stock . . . the nature and extent of challenges facing the company that

would have an effect on stock price and viability," DiFelice v. U.S. Airways, Inc., 497 F.3d 410, 418 (4th Cir. 2007), and "the market price of the [company's] stock." Bunch, 555 F.3d at 7; R&R at 26. This, however, is a non-exhaustive test. See Bunch, 555 F.3d at 7; DiFelice, 497 F.3d at 418. The focus of this inquiry is on the conduct of the fiduciary, not on the performance of the investments. Id.

Accepting the properly pled factual allegations, as the Court must, and applying this standard, the allegations in the First Claim sufficiently allege a claim for lack of prudence. First, the structure of the Plan and its aims, including the summary plan description ("SPD") showing that participants had at least twenty investment options to choose from, that the plan is "a tax qualified plan with an employee stock ownership feature" and that the SPD contained a "warning" that "neither State Street nor the Plan fiduciaries are responsible for the consequences of your investment decisions," (D. 142 at 8-9), does not in and of itself defeat Kenney's claim for lack of prudence. Although there were significant risk disclosures in State Street's SEC filings about the fluctuation in the value of the fund "depending on State Street's performance, stock market fluctuations and general economic conditions" and that the fund was one of the "most risky of the Funds offered through the [Plan]," (D. 103 (Ex. A (ESOP Fund fact sheet) attached to John J. Butts' Affidavit)), Kenney's second amended complaint pleads allegations sufficient to support a plausible claim that the objective prudent person who knew what Defendants knew would have ceased to invest in State Street stock because of the riskiness of these portfolio and conduit assets during the Class Period. Compared to Kenney's amended complaint before Judge Saris, (Am. Compl. ¶¶ 42-60), the second amended complaint contains substantial and robust allegations with respect to the riskiness of the portfolio and the conduit assets. For example, the second amended complaint alleges that the

conduits were material to the company's overall financial stability, evidenced by the drop in State Street's Tangible Common Equity ("TCE") ratio that would have occurred if the conduits had been consolidated on State Street's balance sheet (SAC ¶¶ 79-81), that the adverse impact on the conduits caused by turmoil in the financial markets was so significant that it threatened to derail State Street's financial stability and its stock price, and that at a time when the company was facing the prospect of significant losses and declining stock prices from the financial pressures on that risky segment of its investment business, Defendants should have stopped investing in State Street stock.  (SAC ¶¶ 45-64, 141-42).  More specifically, the second amended complaint contains allegations noting when and how Defendants should have recognized the enhanced risks of continuing such investments with significant exposure to conduits as part of the portfolio.  See, e.g., SAC ¶ 58, 63-75.   The Court will not repeat the thorough analysis set forth in the R&R regarding the sufficiency of these allegations as to the First Claim, see R&R, pp. 30-37, but it adopts that analysis.[2]

Defendants argue that the notation in the R&R that Kenney does not allege "the timing of the consolidation was inappropriate under applicable accounting standards," R&R at 20 n.4, should put to rest any concern of improper accounting by Defendants, noted by Judge Saris in Kenney I, 694 F. Supp. 2d at 76.   Def. Obj. 7-8.  The Court does not agree with the Defendants that this notation goes so far as to imply that State Street's accounting was proper with respect to its handling of the conduits and that, as a result, Kenney has not sufficiently alleged a plausible lack of prudence

---

[2]Defendants contend that the magistrate judge "repeatedly expressed skepticism" about the viability of the First Claim in the R&R "based on State Street's extensive conduit disclosures, the Company's record financial results and the comparatively strong performance of State Street's stock during the global recession."  (D. 142 at 2).  To the contrary, the magistrate judge thoroughly considered the Defendants' arguments, but concluded that these considerations did not mean that the First Claim was not a plausible claim for relief.

claim. The R&R noted nothing more than the fact that Kenney does not allege in the second amended complaint that the timing of the consolidation was inappropriate under accounting standards. Moreover, the failure to allege that Defendants' accounting was improper is not a prerequisite to sufficiently allege a prudence claim, particularly here where the Court has found that under the totality of the circumstances, Kenney has stated a plausible claim for relief. Accordingly, reading the allegations in the light most favorable to Kenney as it must, the second amended complaint satisfies the plausibility standard and states a claim upon which relief may be granted.

This ruling is not inconsistent with Judge Saris' ruling in Kenney I. Concluding that the prudence claim is not futile does not contradict Judge Saris' earlier ruling regarding the prudence claim in the amended complaint. First, in dismissing that claim, Judge Saris stated that the "plaintiff must allege sufficient facts to demonstrate that it was imprudent to invest in State Street stock because of the riskiness of these portfolio and conduit assets during the class period." Kenney I, 694 F. Supp. 2d at 76. As discussed above, that is precisely what Kenney has alleged in his second amended complaint. Moreover, the Court's dismissal of the prudence claim in the amended complaint was *without prejudice*, id., which suggests not that there were no set of circumstances under which Kenney could state the claim, but that he had failed to do so in the first amended pleading.

### 2. Failing to Apply the Presumption of Prudence was Not Improper

Defendants do not dispute that the First Circuit has not yet adopted the presumption of prudence articulated in Moench v. Robertson, 62 F.3d 553, 571 (3d Cir. 1995). See D. Objs. at 18-20. In Moench, the court held that "an ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision." Moench,

62 F.3d at 571. To overcome the Moench presumption on a motion to dismiss, a complaint must contain "facts from which it may be plausibly inferred that, by continuing to make the [stock plan] available to plan members, Defendants abused their discretion as fiduciaries." In re UBS AG ERISA Litig., 2011 WL 1344734, at *6 (Mar. 24, 2011) (dismissing plaintiffs' prudence claim for failure to allege facts sufficient to overcome the presumption of prudence). Merely alleging that defendants "were aware of circumstances that may impair the value of company stock" is insufficient. Id. (quoting In re Bear Sterns Co., Inc., Sec., Derivative, and ERISA Litig., 763 F. Supp. 2d 423, 572 (S.D.N.Y. 2011) (internal quotation marks and further citation omitted)). A plaintiff must plead "persuasive and analytically rigorous facts demonstrating that reasonable fiduciaries would have considered themselves bound to divest." In re Bear Sterns, 763 F. Supp. 2d at 572; see In re Lehman Bros. Sec. & ERISA Litig., 683 F. Supp. 2d 294, 301 (S.D.N.Y. 2010) (stating that an abuse of discretion is established only by allegations of "the fiduciary's knowledge at a pertinent time of an imminent corporate collapse or other dire situation") (internal quotation marks and citation omitted).

Several Circuits, including the Fifth, Sixth and Ninth Circuits, have adopted and applied the Moench presumption. See R&R at 27-28 (discussing cases). The First Circuit, however has to date, declined to do so. In LaLonde v. Textron, Inc., 369 F.3d 1 (1st Cir. 2004), the court reversed the district court's dismissal of an ERISA prudence claim where the trial court had applied the Moench presumption. In its reversal, the First Circuit refused to adopt the presumption "[b]ecause the important and complex area of law implicated by plaintiffs' claims is neither mature nor uniform . . . we believe that we would run a very high risk of error were we to lay down a hard-and-fast rule . . . based only on the statute's text and history, the sparse pleading, and the few and discordant

judicial decisions discussing the issue we face." Id. at 6; see Kenney I, 694 F.Supp.2d at 74 (discussing LaLonde). The First Circuit has explained that "further record development," among other things, "seems to us essential to reasoned elaboration of that which constitutes a breach of fiduciary duty in this context." LaLonde, 369 F.3d at 6. Even if, as the Defendants argue, the judicial decisions in this area have become less "discordant" since LaLonde, the First Circuit has still declined to adopt the presumption when the issue was more recently before the Court. In Bunch, 555 F.3d at 10, the First Circuit affirmed a summary judgment ruling for the defendants and declined to adopt and apply the Moench presumption at the urging of the plaintiffs. Although it is true that the First Circuit declined to do so in part because Bunch involved the Moench presumption being applied as a prosecutorial sword by plaintiffs and not as a defensive shield as it had been in the past, id., the court reaffirmed that record development (i.e., "prudent assessment"), not a "hard-and-fast rule" (i.e., "not a presumption of retention") should govern. Id. (citing LaLonde); see Kenney I, 694 F.Supp.2d at 74-75 (discussing Bunch). Even if the First Circuit has not foreclosed the possibility of applying the Moench presumption, see R&R at 28, there is reason not to apply the Moench presumption at this stage of the litigation. Even "[t]hose courts that have adopted Moench have disagreed as to the propriety of applying it at the pleading stage." Kenney I, 694 F.Supp.2d at 75 n. 6 and cases cited. Applying the presumption here, which sets a high bar for Kenney to overcome, would prevent further record development to determine if the allegations rise to a level of a breach of fiduciary duty. As the R&R recommended, Kenney should "be given an opportunity to develop the record as to whether the [D]efendants acted imprudently by continuing to offer State Street stock under the circumstances alleged to have existed during the Class Period." R&R at 27. This Court need not determine whether Judge Saris' declination to apply the Moench presumption

in Kenney I constitutes law-of-the-case, as Kenney argues it does, Pl. Resp. to Def. Objs. at 1, since the Court finds the reasoning of Kenney I and the other cases in this district declining to do the same, see, e.g., Hill v. State Street Corp., 2011 WL 3420439, at *30-31 (D. Mass. Aug. 3, 2011) (declining to apply Moench presumption), persuasive. For the foregoing reasons, this Court declines to apply the Moench presumption in this context. Accordingly, upon *de novo* review of the Defendants' objections, the Court adopts the R&R in regard to allowing the motion to amend in part to allow the First Claim to go forward.

The Court also declines to make a 28 U.S.C. § 1292(b) certification regarding the presumption of prudence as requested by Defendants. Section 1292(b) provides that when, in rendering an order not otherwise appealable under § 1292, a district court "shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," it may certify the question to the Court of Appeals. 28 U.S.C. § 1292(b). The First Circuit has described appeals under § 1292(b) as "hen's-teeth rare," Camacho v. P.R. Ports Auth., 369 F.3d 570, 573 (1st Cir. 2004). District courts in this Circuit have noted that § 1292(b) certifications are "rare" and should be "sparingly applied." Blue Cross & Blue Shield of R.I. v. Korsen, 746 F. Supp. 2d 375, 388 (D.R.I. 2010); see McLellan Highway Corp. v. United States, 95 F. Supp. 2d 1, 13 (D. Mass. 2000) (determining that even when "holding, without an explicit ruling from the Court itself, that prior First Circuit precedent is no longer applicable," the "better procedure . . . is to frame the issue clearly for . . . appellate review of a final decision of this court" rather than using the "artificially cumbersome" interlocutory certification process under 29 U.S.C. § 1292(b)). Indeed, §1292(b) certifications are so uncommon that Judge Woodlock

determined that certification was appropriate in <u>Lawson v. FMR, LLC</u>, 724 F. Supp. 2d 167, 168 (D. Mass. 2010) only "after twenty-four years as a District Judge within this Circuit" and he could not "recall an occasion [during that time] in which [he] was willing to make [such] certification." <u>Id.</u> Against this backdrop, because the First Circuit has provided guidance regarding the <u>Moench</u> presumption in <u>LaLonde</u> and <u>Bunch,</u> and an immediate appeal on this issue would not, in this Court's view, materially advance the ultimate termination of the litigation, this Court declines to make the certification requested by the Defendants.

**B.     Kenney's Objections**

Kenney objects to only so much of the R&R that recommends that he not be granted leave to file his second amended complaint to assert claims for negligent misrepresentation (Second Claim) and material nondisclosure (Third Claim) at least with respect to the granting of equitable relief for these claims.[3] With respect to these objections, Kenney makes two arguments: 1) the Supreme Court's recent decision in <u>CIGNA Corp. v. Amara</u>, __ U.S. __, 131 S. Ct. 1866 (2011) compels this Court to reject the recommendation that his claim for equitable relief under ERISA § 502(a)(3) be stricken; 2) Kenney need not allege actual reliance for his claims for negligent misrepresentation and material nondisclosure and, even if the Court accepts the recommendation that he has failed to make this requisite allegation, then he should still be entitled to equitable relief

---

[3]The parties have not filed any objections to the R&R concerning the magistrate judge's recommendation that this Court dismiss the Fourth through Sixth Claims pursuant to Fed. R. Civ. P. 12(b)(6) and strike Kenney's jury demand. With no objections from the parties, see <u>Thomas v. Arn</u>, 474 U.S. 140, 150 (1985); <u>Keating v. Sec'y of Health and Human Servs.</u>, 848 F.2d 271, 275 (1st Cir. 1988), and in light of the analysis in the R&R regarding the disposition of these Counts and the jury demand, the Court adopts and accepts this portion of the recommendation and DENIES the motion to amend as to the Fourth through Sixth Claims and strikes the jury demand.

under ERISA § 502(a)(3) with respect to those claims. Pl. Objs. at 4.

Addressing the reliance argument first, the Court finds no error in the recommendation that Kenney has failed to allege a requisite element of the Second Claim and Third Claim. The R&R properly concluded that a party seeking such claims for negligent misrepresentation and material nondisclosure, must allege reliance. R&R at 38, 42 and cases cited; see Mauser v. Raytheon Co. Pension Plan for Salaried Employees, 239 F.3d 51, 55 (1st Cir. 2001); Bell v. Pfizer, Inc., 626 F.3d 66, 75 (2d Cir. 2010); see also Kenney II, 754 F.Supp.2d at 291 (granting summary judgment for defendants on Kenney's negligent misrepresentation claim in the amended complaint where he had failed to show his reliance on the statement at issue). "No recovery is possible . . . unless *someone* read or relied on the misrepresentation. If a misrepresentation is made, and that misrepresentation is ignored, then no loss could possibly have 'result[ed] from' the misrepresentation." Wright v. Medtronic, Inc., 2011 WL 31501, at *5 (D. Minn. Jan. 5, 2011) (emphasis in original). Since Kenney has failed to allege detrimental reliance, he cannot recover equitable relief under § 502(a)(3) with respect to his negligent misrepresentation and material nondisclosure claims.

Amara does not, contrary to Kenney's argument, change the Court's analysis in this respect. There is nothing about that opinion that suggests that a plaintiff's burden is lessened in regard to claims for negligent misrepresentation or omission nor that, having failed to allege detrimental reliance, he may still be entitled to equitable relief for such claims under ERISA § 502(a)(3). Nor does Amara change the recommendation that Kenney's request for equitable relief including restitution to the Plan should be stricken. Amara concerned a suit by a beneficiary against a plan fiduciary about the terms of a plan. 131 S. Ct. 1879. The fiduciary amended the plan's method for calculating benefits in such a manner that materially reduced the benefits to which participants were

entitled, and the district court found that the defendant had made incomplete and inaccurate disclosures in its description of the new plan in violation of ERISA's disclosure obligations. Id. at 1874-75. To remedy the false or misleading information the defendant provided to beneficiaries, the district court reformed the terms of the plan itself. Id. at 1875. The Supreme Court remanded and held that § 502(a)(1)(B) does not authorize relief for misrepresentations in a plan description by changing the terms of the plan; that is, plan summaries cannot be enforced under § 502(a)(1)(B) as the terms of the plan itself. Id. at 1876-78.

Relying upon dictum in Amara that addressed the equitable relief available under § 502(a)(3), but left to the lower courts to determine whether such remedies would be appropriate on the facts of the case, id. at 1878-82, Kenney argues that his claim for equitable relief should stand. However, even the Court's discussion in dictum does not support Kenney's argument. Under section 502(a)(3), plan participants may obtain "other appropriate equitable relief" under ERISA. § 502(a)(3); 29 U.S.C. § 1132(a)(3). Kenney requests "appropriate equitable relief, including in the form of restitution to the Plan." (SAC ¶¶ 152, 161). To recover restitution, Kenney must allege that he seeks to restore to the plaintiff particular funds or property in the defendant's possession. Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 214 (2002). Kenney concedes that he has not made this allegation, Pl. Obj. at 3, and Amara's discussion in dictum does not change that requirement. To the extent Kenney suggests that Amara supports his claim for equitable relief, other than restitution, Kenney is mistaken. Kenney does not explain how a loss could have resulted from a misrepresentation where he has not shown he relied on any misrepresentation or document that would have contained a material nondisclosure. As discussed above, even after Amara, Kenney must still plead reliance for the Second and Third Claims. Accordingly, because he has failed to

do so, Kenney cannot state a plausible entitlement to any relief, equitable or otherwise, for his negligent misrepresentation and material nondisclosure claims.

### III.   Conclusion

For the foregoing reasons, the Report and Recommendation is ADOPTED and ACCEPTED. Accordingly, the motion to amend is allowed in regard to the First Claim, but denied with respect to the remaining claims. Kenney's demand for a jury trial and claims for equitable relief pursuant to ERISA § 502(a)(3) are stricken.

**So ordered.**

                                                /s/ Denise J. Casper
                                                United States District Judge