UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| HILL v. STATE STREET CORPORATION | ) | |
| | ) | MASTER DOCKET |
| THIS DOCUMENT RELATES | ) | NO. 09-12146-GAO |
| TO ALL CLASS ACTIONS | ) | |
| _____) | | |
| and | ) | |
| | ) | |
| THOMAS U. KENNEY, on Behalf of | ) | |
| Himself and a Class of Persons | ) | |
| Similarly Situated, | ) | CIVIL ACTION |
| | ) | NO. 09-10750-DJC |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| STATE STREET CORPORATION, et al., | ) | (filed concurrently in both actions) |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF DECISION AND ORDER ON PLAINTIFFS'
MOTION TO COMPEL BASED ON THE FIDUCIARY EXCEPTION TO THE
ATTORNEY-CLIENT PRIVILEGE AND/OR PRESENCE OF THIRD PARTIES**

December 30, 2013

DEIN, U.S.M.J.

## I.  INTRODUCTION

This matter is before the court on the "Plaintiffs' Motion to Compel Defendants to

Produce Documents and to Respond to Deposition Questions Concerning Communica-

tions with Counsel Covered by the Fiduciary Exception to the Attorney-Client Privilege

and/or Where the Privilege is Otherwise Waived."  (Kenney Docket No. 268; Hill Docket

No. 406).  Oral argument on the motion was heard on December 12, 2013, at which time

the parties agreed that the defendants would submit unredacted copies of the documents which remained at issue to the court for an *in camera* review.  The parties further agreed that they would use the court's guidance at argument and in this decision to govern their positions at the upcoming depositions, and that no specific rulings on the challenged deposition objections needed to be made by the court at this time.  The unredacted documents, consisting of minutes of State Street Corporation's Benefit Plans Committee, Plans Investment Committee, and North America Regional Benefit Plans Committee ("NARBC"), were submitted to the court under cover of letter dated December 17, 2013.

After careful consideration of the arguments of counsel, and based on this court's *in camera* review, the plaintiffs' motion to compel is ALLOWED IN PART and DENIED IN PART.  Using the numbering of documents agreed to by the parties, Brown Affidavit Exhibit Nos. 1, 2, 3, 6, 7, 8, 9, 13, 16 and 20 shall be produced in unredacted form.  No further production of Exhibit Nos. 4, 5 and 17 is needed.  The parties have resolved their disagreements regarding the remaining documents that were originally in dispute, so plaintiffs' objections to those original redactions shall be deemed moot.

### III.  ANALYSIS

The motion to compel raises issues regarding the scope of the fiduciary exception to the attorney-client privilege, and when the presence of third parties defeats the attorney-client privilege.  The relevant principles are discussed below.

### A.    The Fiduciary Exception to the Attorney-Client Privilege

The plaintiffs are seeking the production of documents under the fiduciary exception to the attorney-client privilege.  Thus, the initial inquiry with respect to all the challenged documents is whether they are, in fact, covered by the attorney-client privilege.  "The attorney-client privilege . . . protects communications made between an attorney and a client for the sake of obtaining legal advice[.]"  <u>Smith v. Jefferson Pilot Fin. Ins. Co.</u>, 245 F.R.D. 45, 47 (D. Mass. 2007) (quoting <u>City of Worcester v. HCA Mgmt. Co., Inc.</u>, 839 F. Supp. 86, 88 (D. Mass. 1993)).  The party asserting the privilege has the burden of proving that the privilege is applicable.  <u>Id.</u>

If the documents are privileged, the next inquiry is whether they nevertheless must be produced under the fiduciary exception to the attorney-client privilege.  Pursuant to this exception, as applied in the ERISA context, "an employer acting in the capacity of ERISA fiduciary is disabled from asserting the attorney-client privilege against plan beneficiaries on matters of plan administration."  <u>Id.</u> (quoting <u>In re Long Island Lighting Co.</u>, 129 F.3d 268, 272 (2d Cir. 1997)).  The exception has no application, however, in connection with "communications between a fiduciary and its attorneys on non-fiduciary matters."  <u>Id.</u> at 48.  The inquiry is a "fact-specific" one, involving an examination of "both the content and context of the specific communication."  <u>Id.</u> (internal quotations omitted).

As this court previously has explained:

> "The fiduciary exception is rooted in two distinct rationales.  First, some courts have held that the exception derives from an ERISA trustee's duty to disclose to plan beneficiaries all information

regarding plan administration." [*United States v. Mett*, 178 F.3d 1058, 1063 (9th Cir. 1999)] (citation omitted).  These courts reason that "[a]n ERISA fiduciary has an obligation to provide full and accurate information to the plan beneficiaries regarding the administration of the plan[,]" including "any communications with an attorney that are intended to assist in the administration of the plan." *Long Island Lighting,* 129 F.3d at 271-72. Consequently, the "fiduciary cannot use the attorney-client privilege to narrow the fiduciary obligation of disclosure owed to the plan beneficiaries." *Id.* at 272.  *See also Bland v. Fiatallis N. Am., Inc.,* 401 F.3d 779, 787 (7th Cir.2005) (fiduciary exception "is premised on the theory that the attorney-client privilege should not be used as a shield to prevent disclosure of information relevant to an alleged breach of fiduciary duty").  "Other courts have focused instead on the role of the trustee and have endorsed the notion that, 'as a representative for the beneficiaries of the trust which he is administering, the trustee is not the real client in the sense that he is personally being served.'" *Mett,* 178 F.3d at 1063 (quoting *United States v. Evans,* 796 F.2d 264, 266 (9th Cir.1986)).  Under this line of reasoning, "[w]hen an attorney advises a plan administrator or other fiduciary concerning plan administration, the attorney's clients are the plan beneficiaries for whom the fiduciary acts, not the plan administrator." *Wildbur v. ARCO Chem. Co.,* 974 F.2d 631, 645 (5th Cir.1992).  *Accord Washington-Baltimore Newspaper Guild, Local 35 v. Washington Star Co.,* 543 F.Supp. 906, 909 (D.D.C.1982).  Thus, "[t]he very intention of the communication is to aid the beneficiaries" and the fiduciary "cannot subordinate the fiduciary obligations owed to the beneficiaries to their own private interests under the guise of attorney-client privilege." *Washington Star,* 543 F. Supp. at 909.

Jefferson Pilot Fin. Ins. Co., 245 F.R.D. at 48.  Regardless of the rationale, the parties in the instant case agree that the fiduciary exception is applicable in the ERISA context presented here.  However, they disagree as to the scope of the exception as applied to specific documents.

## Fiduciary vs. Settlor Functions

There are several guiding principles that are applicable in the instant case.  As an initial matter, "[t]he plan administrator may assert attorney-client privilege as to communications between the administrator and its attorneys on-non-fiduciary matters, such as when the communications relate to plan sponsor or 'settlor' functions of adopting, amending, or terminating an ERISA plan, and not to fiduciary functions of managing or administering the plan."  Tatum v. R.J. Reynolds Tobacco Co., 247 F.R.D. 488, 493 (M.D.N.C. 2008), and cases cited.  Thus, "settlor acts," which involve the adoption, funding, amendment, modification, or termination of an employee benefit plan, remain privileged and are not subject to the fiduciary exception because such settlor acts "are more akin to those of a non-fiduciary trust settlor than they are to those of a trustee." Cottillion v. United Refining Co., 279 F.R.D. 290, 301 (W.D. Pa. 2011) (quotations and citations omitted).  See also Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 444, 119 S. Ct. 755, 763, 142 L. Ed. 2d 881 (1999) ("ERISA's fiduciary duty requirement simply is not implicated where [employer], acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated."); King v. Nat'l Human Res. Comm., Inc., 218 F.3d 719, 723 (7th Cir. 2000) (it is "clear that the defined functions of a fiduciary do not include plan design, the amendment of a plan, or the termination of a plan.").  On the other hand, "[f]iduciary functions include matters of plan management and administration, such as discretionary decisions regarding investment or liquidation of

plan assets, communications to plan beneficiaries, and plan benefits claim and review[.]"
<u>Tatum</u>, 247 F.R.D. at 496 (internal citations omitted).  <u>See also</u> <u>King</u>, 218 F.3d at 724
("ERISA provides at 29 U.S.C. § 1002(21)(A) that: [A] person is a fiduciary with respect
to a plan to the extent (i) he exercises any discretionary authority or discretionary control
respecting management of such plan or exercises any authority or control respecting
management or disposition of its assets . . . or (iii) he has any discretionary authority or
discretionary responsibility in the administration of such plan").  The fiduciary exception
applies to such fiduciary conduct.

## **Liability Exception**

Another exception to the fiduciary exception that is relevant in the instant case is
the "liability exception."  The liability exception "recognizes that a fiduciary who seeks
the advice of counsel for its own personal defense in anticipation of adversarial proceed-
ings against its beneficiaries retains the attorney-client privilege because, in such situa-
tions, the beneficiaries are clearly not the 'real' client."  <u>Cottillion</u>, 279 F.R.D. at 301.
"The critical inquiry with respect to the liability exception is whether there exists a
'divergence of interests and a threat of litigation' such that it is warranted for the
fiduciary to obtain confidential advice from counsel and assert attorney-client privilege
on the matter against the beneficiary."  <u>Id.</u> (quoting <u>Tatum</u>, 247 F.R.D. at 498).  Advice
rendered simply "for the benefit of the plan, its beneficiaries, or as a matter of plan
administration involving the defendant's role as the beneficiaries' fiduciary" is not
privileged as against the beneficiaries.  <u>Hudson v. Gen. Dynamics</u>, 73 F. Supp. 2d 201,

203 (D. Conn. 1999).  "Thus, the case authorities mark out two ends of a spectrum.  On the one hand, where an ERISA trustee seeks an attorney's advice on a matter of plan administration and where the advice clearly does not implicate the trustee in any personal capacity, the trustee cannot invoke the attorney-client privilege against the plan beneficiaries.  On the other hand, where a plan fiduciary retains counsel in order to defend herself against the plan beneficiaries (or the government acting in their stead), the attorney-client privilege remains intact."  Mett, 178 F.3d at 1064.  In the instant case, while the parties decline to set a precise date when the interests of the plan fiduciaries and the beneficiaries diverged, they all acknowledge that on January 22, 2009 there was an announcement by plaintiffs' counsel that they were investigating the actions of the plans.  Thus, by that date at the latest, the interests were clearly divergent with respect to legal advice concerning the issues challenged in the press release.

**B.      Presence of Watson Wyatt**

The motion to compel also raises the issue as to whether the presence of Watson Wyatt at the Committee meetings defeated the claim of attorney-client privilege. According to the defendants, Watson Wyatt was retained by the plans to provide specialized investment and governance consulting services.  "Generally, the attorney-client privilege applies only to communications between an attorney and the client, and the disclosure of such communications to a third-party undermines the confidentiality of the communications or waives the privilege."  Columbia Data Prods., Inc. v. Autonomy Corp. Ltd., No. 11-12077-NMG, 2012 WL 6212898, at *14 (D. Mass. Dec. 12, 2012)

(citing <u>Cavallaro v. United States</u>, 284 F.3d 236, 246 (1st Cir. 2002)).  There are two

types of exceptions to this general rule on which the defendants rely.  The first relates to

third parties who are employed to assist a lawyer in rendering legal advice.  <u>Cavallaro</u>,

284 F.3d at 247.  To come within this exception, three elements must be satisfied: (1)

"the third-party communications must be necessary, or at least highly useful, for the

effective consultation between the client and the lawyers which the privilege is designed

to permit[,]" (2) the third-party must play "an interpretive role.  In other words, the third

party's communication must serve to translate information between the client and the

attorney[,]" and (3) "the third party's communication must be made for the purpose of

rendering legal advice, rather than business advice."  <u>Dahl v. Bain Capital Partners</u>, 714

F. Supp. 2d 225, 227-28 (D. Mass. 2010) (internal quotations omitted).

The defendants also rely on an "expansive view of protected communications

between independent contractors and counsel" recognized in other jurisdictions, "where

the outside consultant functions like an employee in providing information which

facilitates the obtaining of legal advice."  <u>Cottillion</u>, 279 F.R.D. at 299 (internal

quotations omitted).  Even courts which apply this expansive view recognize that the

attorney-client privilege may nevertheless "be waived in the corporate context if the

communications are disclosed to employees who did not need access to them."  <u>Id.</u> at 298

(internal quotations omitted).  Thus, even assuming that the First Circuit would apply this

expansive view, the disclosure to employees may waive the attorney-client privilege

"when the communications are relayed to those who do not need the information to carry

out their work or make effective decisions on the part of the company." Id. (internal quotations omitted).  In the instant case, the minutes at issue reflect when Wyatt Watson was present at the meeting, and, therefore, the court can determine the context in which the allegedly privileged communications were made.

## C.   **Application to Specific Documents**

Applying these principles to the documents in dispute, this court rules as follows:

**Exhibit 1 (Benefit Plans Committee Minutes of October 28, 2004):**

The first challenged redaction relates to counsel's description of the role and function of the Benefit Plans Committee as reflected in the draft of the Charter for the committee.  In this court's view, this information relates to plan management and administration and is not privileged.[1]  Moreover, to the extent State Street's counsel is providing legal advice, it relates only to the "the defendant's role as the beneficiaries' fiduciary" and is not privileged as against the beneficiaries.  See Hudson, 73 F. Supp. 2d at 203.

---

[1]  The defendant relies on Beesley v. Int'l Paper Co., No. 06-703-DRH, 2008 WL 2323849, at *3 (S.D. Ill. June 3, 2008) (unrep. dec.), where the court held that the creation of a 401(K) Committee constituted an amendment to the plan and not plan management, and, consequently, that the communications relating the reasons for the creation of the 401(K) Committee and the reasons that the Plan Administrator had been replaced were privileged. Id. at *2.  In Beesley, the creation of the Committee was done by way of an amendment to the Plan.  While the court did not find this fact dispositive, it was noteworthy. Id.  In the instant case, however, there is no indication that any amendment to the plan was involved in the creation of the Benefits Committee.  Even more importantly, however, at issue here is not the reason for the creation of the Benefits Committee, but, rather, the Benefits Committee's responsibility vis-à-vis "administering or managing an ERISA plan[,]" i.e., the fundamental fiduciary responsibilities of plan administration. Id.  Thus, this court finds that the fiduciary exception applies.

The remaining redactions also concern the general responsibilities of the Committee members. This information relates to the Plan's administration and is not privileged. There is no divergence of interest between the beneficiaries and committee members, and the committee members were not seeking legal advice for their own personal benefit. This document shall be disclosed *in toto* in an unredacted form. <u>See</u> <u>generally</u> <u>Solis v.</u> <u>Food Employers Labor Relations Ass'n</u>, 644 F.3d 221, 231 (4th Cir. 2011) (Board of Trustee meeting minutes, handwritten notes relating to the meetings and correspondence relating to investments "appear clearly to relate to the Funds' administration, information which ERISA trustees have a fiduciary obligation to disclose in response to a subpoena from plan beneficiaries provided it does not involve a trustee's own legal defense.").

### <u>Exhibit 2 (Plans Investment Committee Minutes of October 28, 2004)</u>:

These minutes are substantially identical to the Benefits Committee minutes (Exhibit 1) discussed above. For the same reasons, this document shall be produced in an unredacted form. The communications relate to administrative functions, the members' interests are aligned with those of the beneficiaries, and only generalized legal information is provided.

### <u>Exhibit 3 (Benefit Plans Committee Minutes of February 15, 2005)</u>:

The defendant has not redacted the fact that the information provided relates to a proposed amendment to the Salary Savings Program. The following information, which has been redacted, relates to trustees' roles in administering the program with the

proposed change in place.  As such, the information relates to administrative functions and the document shall be produced in an unredacted form.

**Exhibit 4 (Benefit Plans Committee Minutes of May 17, 2005):**

This court has confirmed the defendant's characterization of the communication. As agreed, it relates to a settlor function, and is appropriately redacted.

**Exhibit 5 (Benefit Plans Committee Minutes of November 15, 2005):**

This court has confirmed the defendant's characterization of the communication. As agreed, it relates to a settlor function, and is appropriately redacted.

**Exhibit 6 (Plans Investment Committee Minutes of May 11, 2006):**

This relates to general fiduciary responsibilities, discretionary decisions regarding investments, and the information to be provided to investors.  These are fiduciary functions and there is no divergence of interests between the committee members and the beneficiaries.  Therefore, this document shall be produced in an unredacted form.  See Tatum, 247 F.R.D. at 496-97.

**Exhibit 7 (NARBC Minutes of March 14, 2007):**

The redacted material reflects that a proposal was made to establish an ERISA Committee to hear appeals.  The entry, however, does not appear to reflect attorney-client communications but, rather, concerns discussions among committee members only. Where, as here, the document does "not contain confidential information and [does] not

request, convey or describe legal advice" it is not privileged, and shall be produced in an unredacted form.  See Cottillion, 279 F.R.D. at 311.

**Exhibit 8 (NARBC Minutes of December 12, 2007):**

The defendant has characterized paragraph 1 of the redacted portion of the minutes as a "summary of legal advice . . . regarding Plan amendments."  However, this court does not view this paragraph as providing legal advice.  Rather, it is a straightforward report of past events.  It is not privileged and shall be produced in an unredacted form.

The second paragraph refers to the establishment of procedures for handling various matters, and a schedule for training.  This relates to the plan administration and management, and the fiduciary exception applies.  Therefore it shall be produced in an unredacted form.

**Exhibit 9 (NARBC Minutes of January 31, 2008):**

The plaintiffs argue that the presence of Watson Wyatt for the portion of the meeting at issue waives the attorney-client privilege.  This court agrees.  There is nothing in the paragraphs at issue which indicate that Watson Wyatt's presence was needed to assist in the provision of legal advice.  Moreover, even if Watson Wyatt is considered to be an employee, there is no explanation of why it would need to know the information at issue.  Assuming, arguendo, that the redacted information qualifies as privileged communications, the dissemination to Watson Wyatt was beyond the "need to know" circle, and its presence defeats the privilege.

Moreover, this court finds that both paragraphs reflect fiduciary functions, not settlor functions.  The first paragraph relates to a description to the committee members of their obligations under certain plan amendments, which relates to the management and administration of the plan.  It does not relate to the decision to amend the plan in any way.  Similarly, the second paragraph involves the creation of a procedures manual which would detail the steps that the committee members should follow.  This falls into the category of plan administration, and the fiduciary exception applies.  For all these reasons, this document shall be produced in an unredacted form.

### Exhibit 13 (NARBC Minutes of June 26, 2008):

The redacted paragraph relates to the roles and responsibilities of the committee members and the different types of investments which could be considered.  This is general legal advice and does not reflect a request for personal legal advice.  Nor is there any indication of a divergence of interests between the fiduciaries and the beneficiaries.  This document shall be produced in an unredacted form.

### Exhibit 16 (NARBC Minutes of December 18, 2008):

The remaining redaction at issue between the parties concerns a discussion of a proposed amendment to NARBC's charter relating to the procedures for administering the fund.  It does not relate to an amendment of the Plan itself.  The discussion appears to have centered on the administrative and managerial functions of the committee.  This constitutes fiduciary responsibilities and not settlor functions.  The document shall be produced in an unredacted form.

-13-

**Exhibit 17 (NARBC Minutes of January 28, 2009):**

This court has confirmed the defendant's description of the redaction and that it reflects a divergence of interests between the fiduciaries and the beneficiaries in connection with plaintiffs' law firm's press release.  This redaction does not have to be produced as it is privileged and does not fit within the fiduciary exception.

**Exhibit 20 (NARBC Minutes of July 27, 2009):**

Although the redacted paragraph is described as including legal advice regarding this litigation, this court concludes that it does not involve legal advice.  Rather, it is simply a straightforward report on the status of filings in the litigation.  The paragraph does not contain privileged information.  In addition, the presence of Wyatt Watson defeats any privilege that may exist.  As detailed above, there is no indication that Wyatt Watson's presence was necessary to assist in the provision of legal advice.  Moreover, there is no explanation of why Wyatt Watson would "need to know" the information.  For all these reasons, this document shall be produced in an unredacted form.

SO ORDERED.

＿＿＿ / s / Judith Gail Dein ＿＿＿＿＿＿
Judith Gail Dein
U.S. Magistrate Judge